UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HASBRO, INC.,

Plaintiff,

- against -

MGA ENTERTAINMENT, INC.,

Defendant.

C.A. No. 06-262S

**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, RECALL, AND EXPEDITED DISCOVERY**

Pursuant to Fed. R. Civ. P. Rules 26(d) and 65, Plaintiff Hasbro, Inc. ("Hasbro") hereby respectfully moves for a preliminary injunction and recall order against defendant MGA Entertainment, Inc. ("MGA"), and for expedited discovery in advance of the hearing on the motion for preliminary injunction and recall order. As explained in the accompanying Memorandum of Law and Declarations of Mark Stark, Paul N. Vanasse, and Sean Wiggins, preliminary injunctive relief and an order directing the recall of the "MEMORY MATCH-UP™" game is appropriate to halt MGA's blatant infringement of Hasbro's MEMORY® trademark. Hasbro also seeks limited, expedited discovery relevant to this motion. Specifically, Hasbro seeks relief from the stay of discovery prior to the Fed. R. Civ. P. Rule 26(f) conference of the parties to allow for limited written discovery (document requests, interrogatories, and requests for admission) and the deposition of certain witnesses in advance of the hearing on this motion, and an order directing that such written discovery be answered within 20 days of service rather than 30 days as provided in the Rules of Civil Procedure. Pursuant to Local Rule (Civil) 56(e), counsel for Hasbro requests an evidentiary hearing and oral argument on this motion.

Dated: June 29, 2006

Respectfully submitted,

Joseph Avanzato [#4774]
Jeffrey K. Techentin [# 6651]
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel. # (401) 274-7200
Fax # (401) 751-0604

Of counsel:
Kim J. Landsman
Michael D. Sant'Ambrogio
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

Attorneys for Plaintiff Hasbro, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2006 I caused a true and accurate copy of the within to be served on counsel of record as follows:

***Via Hand Delivery***
Brooks R. Magratten, Esq.
George E. Lieberman, Esq.
Vetter & White, Incorporated
20 Washington Place
Providence, RI 02903

Of Counsel:

***Via First Class Mail***
Kent R. Raygor, Esq.
Janene P. Bassett, Esq.
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017

***Via First Class Mail***
Kim J. Landsman
Michael D. Sant'Ambrogio
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

[signature]

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC.,<br><br>Plaintiff,<br><br>- against -<br><br>MGA ENTERTAINMENT, INC.,<br><br>Defendant. | C.A. No. 06-262S |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR A PRELIMINARY INJUNCTION, RECALL, AND EXPEDITED DISCOVERY**

Jeffrey K. Techentin [# 6651]
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel. # (401) 274-7200
Fax # (401) 751-0604

and

Kim J. Landsman
Michael D. Sant'Ambrogio
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel. # (212) 336-2000
Fax # (212) 336-2222

Attorneys for Plaintiff Hasbro, Inc.

## Table of Contents

Page

Preliminary Statement....................1

Facts....................2

A. Hasbro's MEMORY® Games and Trademark....................2

B. Hasbro's Soon-to-Be Introduced SPIDER-MAN & Friends Edition of its MEMORY® Game....................3

C. MGA's Use of the Identical MEMORY® Trademark for a Matching Game, Despite Knowledge of Hasbro's Mark....................4

D. MGA's Continued Infringement After Explicit Notice from Hasbro....................4

E. The Irreparable Harm to Hasbro....................5

I. A PRELIMINARY INJUNCTION SHOULD ISSUE BECAUSE HASBRO IS LIKELY TO SUCCEED IN PROVING MGA'S INFRINGEMENT OF THE MEMORY® TRADEMARK....................6

A. Likelihood of Success Is the Determining Factor of a Preliminary Injunction in this Trademark Infringement Action....................6

B. Hasbro Has Established that MGA's Use of the MEMORY MATCH-UP™ Mark Is Likely to Cause Confusion....................7

1. MGA Is Using an Identical Mark to Hasbro's MEMORY® Mark....................8
2. The Similarity of the Goods....................10
3. The Relationship Between the Parties' Channels of Trade....................10
4. The Relationship Between the Parties' Advertising....................10
5. The Classes of Prospective Purchasers....................10
6. It Is Too Early to Expect Evidence of Actual Confusion....................12
7. MGA Created and Distributed its Infringing Game in Bad Faith....................13
8. The MEMORY® Trademark Is Distinctive, Both Inherently and In The Marketplace....................14

II. A RECALL IS NECESSARY TO STOP THE IRREPARABLE HARM FROM MGA'S INFRINGEMENT....................18

III. DISCOVERY ON THE PRELIMINARY INJUNCTION ISSUES SHOULD BE EXPEDITED....................23

Table Of Authorities

Page(s)

Cases

American Automobile Association v. AAA Automobile Club of Queens, Inc., 97 Civ. 1180, 1999 WL. 97918 (E.D.N.Y. Feb. 8, 1999)....14

Attrezzi, LLC v. Maytag Corp., 436 F.3d 32 (1st Cir. 2006)....10

Beacon Mutual Insurance Co. v. OneBeacon Insurance Corp., 376 F. Supp. 2d 251 (D.R.I. 2005)....9, 12n, 16

Behnam Jewelry Corp. v. Aron Basha Corp., 45 U.S.P.Q. 2d 1078 (S.D.N.Y. 1997)....21

Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112 (1st Cir. 2006)....6, 7, 8, 12, 15, 16, 17, 18

Borinquen Biscuit Corp. v. M.V. Trading Corp., No. 04-2070, 2005 U.S. Dist. LEXIS 41452 (D.P.R. Sept. 2, 2005), aff'd 443 F.3d 112 (1st Cir. 2006)....19, 20, 21

Boston Athletic Association v. Sullivan, 867 F.2d 22 (1st Cir. 1989)....7, 8, 10, 11, 12, 13, 15, 18

Chere Amie, Inc. v. Windstar Apparel, Corp., 191 F. Supp. 2d 343 (S.D.N.Y. 2001)....19, 20

Clinique Laboratories, Inc. v. Dep Corp., 945 F. Supp. 547 (S.D.N.Y. 1996)....20

DeCosta v. Columbia Broadcasting System, Inc., 520 F.2d 449 (1st Cir. 1975)....13

Deere & Co. v. MTD Products, Inc., 41 F.3d 39 (2d Cir. 1994)....12

Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542 (1st Cir. 1995)....8, 15

Eve of Milady v. Impression Bridal, Inc., 957 F. Supp. 484 (S.D.N.Y. 1997)....21

F.T.C. v. Seismic Entertainment Products, Inc., No. Civ. 04-377, 2004 WL. 2403124 (D.N.H. Oct. 21, 2004)....23

Fibermark, Inc. v. Merrimac Paper Co.,
No. 01-CV-11159, 2003 U.S. Dist. LEXIS 26866 (D. Mass. Mar. 11, 2003)............15

Home Shopping Club, Inc. v. Charles of the Ritz Group, Inc.,
No. 92 Civ. 8173, 1993 WL. 228853 (S.D.N.Y. June 13, 1993)...............................21

Howard Johnson International, Inc., v. Craven Properties Ltd, Inc.,
No. 01-CV-1247, 2002 WL.31014858 (M.D. Fla. Jun. 13, 2002) .............................22

Int'l Association of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996).....................................................10

Interface Group, Inc. v. Gordon Publ'ns, Inc.,
562 F. Supp. 1235 (D. Mass. 1983)..........................................................................23

Int'l Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (2d Cir. 1996).............................................................................13n, 14

Lancome Parfums et Beaute & Cie v. L B International Corp.,
No. 86 Civ. 7550, 1986 WL. 13462 (S.D.N.Y. Nov. 19, 1986)................................21

Maple Grove Farms of Vermont, Inc. v. Euro Can Products, Inc.,
974 F. Supp. 85 (D. Mass. 1997)................................................................................8

McNeil-PPC, Inc. v. Merisant Co.,
No. 04-1090, 2004 WL. 3316380 (D.P.R. July 29, 2004)...................................19, 20

Montana Prof'l Sports, LLC v. Leisure Sports Management, Inc.,
422 F. Supp. 2d 1271 (M.D. Fla. 2006)...............................................................20, 22

Morningside Group Ltd v. Morningside Capital Group, LLC,
182 F.3d 133 (2d Cir. 1999).........................................................................................8

Nabisco, Inc. v. PF Brands, Inc.,
50 F. Supp. 2d 188 (S.D.N.Y.), aff'd, 191 F.3d 209 (2d Cir. 1999) ...........................20

In re National Data Corp., 753 F.2d 1056 (Fed. Cir. 1985)...............................................8

New Committee Wireless Services, Inc., v. Sprintcom, Inc.,
287 F.3d 1 (1st Cir. 2002)..........................................................................................23

Paddington Corp. v. Attiki Importers & Distributings, Inc.,
996 F.2d 577 (2d Cir. 1993)........................................................................................13

Perfect Fit Industrial, Inc. v. Acme Quilting Co., Inc.,
646 F.2d 800 (2d Cir. 1981)....................21

Perfumania, Inc. v. Perfulandia, Inc.,
|279 F. Supp. 2d 86 (D.P.R. 2003)....................7, 21

President and Trustees of Colby College v. Colby College-New Hampshire,
508 F.2d 804 (1st Cir. 1975)....................13

Societe Des Produits Nestle. S.A., v. Casa Helvetia, Inc.,
982 F.2d 633 (1st Cir. 1992)....................6

Stuart v. Collins,
489 F. Supp. 827 (S.D.N.Y. 1980)....................14

TeleRep Caribe Inc. v. Zambrano,
146 F. Supp. 2d 134 (D.P.R. 2001)....................18

Veryfine Products Inc. v. Colon Brothers, Inc.,
799 F. Supp. 240 (D.P.R. 1992)....................11

Volkswagenwerk Aktiengesellschaft v. Wheeler,
814 F.2d 812 (1st Cir. 1987)....................7

W.W.W. Pharm. Co. v. Gillette Co.,
984 F.2d 567 (2d Cir. 1993)....................12

Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC,
259 F.3d 25 (1st Cir. 2001)....................17

Plaintiff Hasbro, Inc. ("Hasbro") respectfully submits this memorandum of law in support of its motion for a preliminary injunction, recall order, and expedited discovery against defendant MGA Entertainment, Inc. ("MGA").

**Preliminary Statement**

This case involves a blatant trademark infringement. Since 1966, Hasbro and its predecessor, Milton Bradley Company, have sold a line of card-matching games under the federally registered MEMORY® trademark. Hasbro has done numerous themed versions of its MEMORY® game and it will soon introduce another one under license from Marvel Entertainment, Inc. ("Marvel") featuring SPIDER-MAN & Friends. MGA has recently begun to use Hasbro's MEMORY® trademark, without Hasbro's authorization, for a competing game it calls "MEMORY MATCH-UP™" that also prominently features the SPIDER-MAN & Friends characters. MGA has promoted this game as "All the Fun of the Classic Memory Matching Game, But In 3-D!" MGA's use of the MEMORY trademark for the same type of game, marketed to the same consumers, and sold on the same shelves in the same stores as Hasbro's MEMORY® game is likely to cause consumer confusion and constitutes trademark infringement.

Because this infringement of Hasbro's MEMORY® trademark is blatant, inasmuch as it comes from a principal competitor well aware of Hasbro's trademark rights, Hasbro seeks not just a preliminary injunction against any further shipments or sales of the infringing game, but also an order requiring MGA to recall from distributors and retailers games already shipped.

Finally, Hasbro requests limited expedited discovery to provide the Court with the best record obtainable within a necessarily limited time for the preliminary injunction hearing.

**Facts**

The facts set forth in the accompanying Declarations of Mark Stark, Paul N. Vanasse, and Sean Wiggins are summarized below.

**A. Hasbro's MEMORY® Games and Trademark**

Since its acquisition of Milton Bradley Company in 1984, Hasbro has become the largest distributor of games in the United States. Milton Bradley Company began to sell a card matching game under the name and trademark MEMORY® in 1966. Milton Bradley Company and Hasbro, its successor, have been selling MEMORY® card matching games continuously ever since the first sale in 1966. Hasbro owns an incontestible federal trademark registration for a script stylization of MEMORY® for use on "[e]quipment comprising cards with many matching pairs of designs for playing a matching card game." Hasbro also owns a federal trademark registration for the word alone. Stark Decl. ¶¶ 5-6; Exs. 1 and 2; Vanasse Decl. ¶¶ 3-4.

Hasbro's MEMORY® game consists of a number of pairs of matching cards, typically 36, that feature characters, images, or other artwork on one side. The players mix the cards up and place them in rows on a flat surface, face down. They then take turns turning any two cards picture-side-up. If the two cards a player selects are identical, the player has made a match; the player then removes those cards from play and takes another turn. The process is repeated until the players take all of the cards out of play. The winner is the player who has taken the most matching pairs of cards out of play. Stark Decl. ¶ 7.

In addition to the original MEMORY® game, Hasbro and its predecessor, Milton Bradley Company, have created numerous themed versions of the MEMORY® card matching game. Some of these themed versions feature characters and images from other Hasbro toys, such as MR. POTATO HEAD and TONKA. Other themed versions feature characters and images that

The SPIDER-MAN character is not just the most famous of the Marvel characters, but is also ideally suited to the target age group for the MEMORY® game, which is preschool children. It is therefore hardly surprising that Hasbro plans to introduce a "SPIDER-MAN & Friends" themed version of its MEMORY® game in time for the release of the third SPIDER-MAN movie. In fact, the game will be shown to major retailers in August, with shipments scheduled to begin next spring. Stark Decl. ¶ 15. A color copy of the artwork for the packaging of the SPIDER-MAN & Friends version of the MEMORY® game is attached to the Stark Decl. as Exhibit 6.

### C. MGA's Use of the Identical MEMORY® Trademark for a Matching Game, Despite Knowledge of Hasbro's Mark

MGA is and has been selling a game called MEMORY MATCH-UP™. MGA also apparently has a license from Marvel to use its SPIDER-MAN & Friends trademarks and characters (Hasbro's Marvel license is non-exclusive) because MGA uses the SPIDER-MAN & Friends trademarks and characters in its MEMORY MATCH-UP™ game. See MGA Counterclaim ¶ 15.

MGA was undoubtedly aware of Hasbro's MEMORY® games and mark at the time it undertook its infringing use. The MEMORY® game has been sold for decades, and MGA's own website referred to it in advertising the MEMORY MATCH-UP™ game. Stark Decl. ¶¶ 25-28.

### D. MGA's Continued Infringement After Explicit Notice from Hasbro

Brian Goldner, Hasbro's Chief Operating Officer, called the CEO of MGA after seeing the MEMORY MATCH-UP™ game on MGA's website; he pointed out the issue of infringement of Hasbro's MEMORY® mark and asked MGA to change the name of its game. MGA has refused to do so and continues to ship the infringing game even after Hasbro put MGA on explicit written notice of its claims. Vanasse Decl. ¶¶ 8-9.

partners, inventors, licensors, and licensees.

## Argument

## I. A PRELIMINARY INJUNCTION SHOULD ISSUE BECAUSE HASBRO IS LIKELY TO SUCCEED IN PROVING MGA'S INFRINGEMENT OF THE MEMORY® TRADEMARK.

### A. Likelihood of Success Is the Determining Factor of a Preliminary Injunction in this Trademark Infringement Action.

The "familiar" preliminary injunction factors to be considered in this circuit are:

> (1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest.

Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006). Hasbro satisfies all four elements of this test.

The first factor was recently described as the "cynosure" of the four-part test in trademark cases "because the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement." Id. Where, as we will demonstrate below, a plaintiff has shown likelihood of success on the merits of trademark infringement, irreparable harm inevitably follows. Id. (citing, e.g., I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998)); see also Societe Des Produits Nestle., S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992) ("[I]rreparable harm flows from an unlawful trademark infringement as a matter of law.")

The third and fourth elements also follow from the showing of likelihood of success on the merits. As to the balance of hardships, Hasbro's stake in the reputation of a trademark built up at enormous expense over more than forty years far outweighs MGA's stake in an infringing

mark in use for only a few months. See Perfumania, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 104 (D.P.R. 2003). That MGA deliberately chose a mark that it knew a competitor had long used demonstrates bad faith (see Section I.B.7) and thereby adds to the balance of hardships in Hasbro's favor. As to the public interest factor, the First Circuit has long recognized "the tenet that, as a matter of public policy, trademarks should be protected against infringing uses." Borinquen, 443 F.3d at 115 (citing Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 820 (1st Cir. 1987); Perfumania, 279 F. Supp. 2d at 105 (quoting Jordan K. Rand, Ltd. v. Lazoff Bros., Inc., 537 F.Supp. 587, 597 (D.P.R. 1982)).

**B. Hasbro Has Established that MGA's Use of the MEMORY MATCH-UP™ Mark Is Likely to Cause Confusion.**

When a manufacturer launches a new product into an established market, it has an affirmative duty to avoid causing confusion with existing brands. Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817-18 (1st Cir. 1987). Far from heeding this admonition, MGA has come out with a game using a name that is calculated to maximize consumer confusion with Hasbro's venerable MEMORY® game.

The First Circuit has identified eight factors to be weighed when analyzing whether a defendant's trademark is likely to cause confusion:

(1) the similarity of the marks;
(2) the similarity of the goods;
(3) the relationship between the parties' channels of trade;
(4) the relationship between the parties' advertising;
(5) the classes of prospective purchasers;
(6) evidence of actual confusion;
(7) the defendant's intent in adopting its mark; and
(8) the strength of the plaintiff's mark.

Borinquen, 443 F.3d at 120 (quoting Astra Pharm. Prods, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1205 (1st Cir. 1983)). No one factor is determinative and not every factor must favor the owner of the trademark to support a finding of likely confusion. Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 546-47 (1st Cir. 1995); Maple Grove Farms of Vermont, Inc. v. Euro Can Prods., Inc., 974 F. Supp. 85, 95 (D. Mass. 1997).

**1. MGA Is Using an Identical Mark to Hasbro's MEMORY® Mark.**

The name MGA chose for its matching game is not just confusingly similar to Hasbro's MEMORY® mark, it contains the identical mark, MEMORY. Moreover, MGA's addition of the descriptive phrase MATCH-UP fails to differentiate its mark or to create an even arguably distinct composite mark because the words merely indicate that the product, like Hasbro's, is a matching game.[1]

"Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." Boston Athletic, 867 F.2d at 29 (citations and internal quotation signals omitted). "Meaning alone, without reference to appearance and sound, may be sufficiently close to constitute similarity." Id.; see also In re Nat'l Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark[.]"). Morningside Group Ltd. v. Morningside Capital Group, LLC, 182 F.3d 133, 140 (2d Cir. 1999) (finding "unpersuasive any notion that the two marks are dissimilar" because "[o]nly one word stands out as dominant in the two names, and that–the only arbitrary

[1] In its Counterclaim (¶ 20), MGA states that it removed the ™ notation from MEMORY MATCH-UP™ after Hasbro objected. That misses the point. The notation just confirms the obvious – that MGA is using MEMORY MATCH-UP™ as a trademark for its game, not merely to describe it. Indeed, without that name, the game would have no name at all. Removing the ™ notation is not going to change the overall consumer perception of the name.

word–is "Morningside"); Beacon Mutual Ins. Co. v. OneBeacon Ins. Corp., 376 F. Supp. 2d 251, 259-60 (D.R.I. 2005) (marks "Beacon" and "OneBeacon" were "fundamentally similar, despite different fonts, different colors, and different orientations, because the marks shared the word "Beacon" and incorporated a visual reference to a lighthouse).

Here, the only distinctive part of the mark MGA is using is "MEMORY." It is therefore using an identical mark to Hasbro's.

Upon seeing MGA's infringing "MEMORY MATCH-UP™" game, consumers familiar with Hasbro's MEMORY® mark are likely to assume that MGA's game is created by, affiliated with, or otherwise licensed by Hasbro. The identity in marks is amplified by similarities in the typeface and colors used by MGA in its "MEMORY MATCH-UP™" game to those used on several editions of Hasbro's MEMORY® game. On the Original MEMORY® game, for example, Hasbro's MEMORY® mark is in a simple, block typeface in yellow with a blue outline. See Stark Decl. Ex. 3. MGA also presents the mark in a simple, block typeface in yellow that is outlined. See Stark Decl. Ex. 7. In addition, blue is the dominant background color on both the Original MEMORY® game and the MEMORY MATCH-UP™ game, as well as the SPIDER-MAN & Friends Edition of the MEMORY® game. Compare Stark Decl. Exs. 3 and 6 with Ex. 7.

Moreover, MGA's use of the MEMORY mark in connection with the famous SPIDER-MAN & Friends mark only aggravates rather than lessens the likelihood of confusion. Consumers familiar with Hasbro's MEMORY® game understand that there are various themed versions of the game. Indeed, consumers considering purchasing Hasbro's MEMORY® game will generally choose from among several different editions of the game available in mass merchandisers. They are likely to assume that MGA's "SPIDER-MAN & Friends" MEMORY MATCH-UP™ game is a new themed edition of Hasbro's MEMORY® game.

Accordingly, this factor weighs heavily in favor of a finding of likelihood of confusion.

**2. The Similarity of the Goods**

The more similar the products, the greater the likelihood of confusion. Boston Athletic, 867 F.2d at 30. Both parties' products are matching games for children ages 3 and older, so the goods are not just similar but essentially the same. Indeed, MGA has promoted its game as "All the Fun of the Classic Memory Matching Game, But In 3D!" Stark Decl. ¶ 20.[2] This factor therefore weighs heavily in Hasbro's favor.

**3. The Relationship Between the Parties' Channels of Trade**

**4. The Relationship Between the Parties' Advertising**

**5. The Classes of Prospective Purchasers**

Channels of trade, advertising modes, and prospective customers comprise "a set of factors often considered together." Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 39 (1st Cir. 2006); Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 204 (1st Cir. 1996); Boston Athletic, 867 F 2d at 30. Each of these three criteria supports a finding of likely confusion.

When similarly packaged products are sold in the same retail outlets and advertised by the same methods to the general public, there is a greater likelihood of consumer confusion. Boston Athletic, 867 F.2d at 30. That is the situation here. Hasbro's MEMORY® game and MGA's unauthorized "MEMORY MATCH-UP™" are available at the same stores. Major mass retailers such as Wal-Mart, Kmart, Target, and Toys 'R Us, as well as specialty game stores, sell

[2] MGA alleges in its counterclaim that MGA removed the phrase from its website "[u]pon seeing Hasbro's COMPLAINT." Counterclaim of MGA Entertainment, Inc. ¶ 20. The fact that its lawyers realized that a reference on the website to Hasbro's classic MEMORY game did not serve MGA's litigation strategy does not in the least detract from the fact that it shows MGA's intent to take a free ride on the brand equity for MEMORY game that Hasbro built.

Hasbro's MEMORY® game. These same stores also sell MGA's products. Stark Decl. ¶ 24

Indeed, Hasbro's MEMORY® game and MGA's unauthorized "MEMORY MATCH-UP™" game are currently being stocked not just in the same stores, but side-by-side on the same store shelves, as this photograph recently taken at Target shows:




Wiggins Decl. ¶ 2; Ex. 1.

Consumers are particularly likely to be confused in making quick selections off shelves when products with similar trademarks are placed side-by-side. Veryfine Prods. Inc. v. Colon Bros., Inc., 799 F. Supp. 240, 251-52 (D.P.R. 1992). This factor therefore weighs heavily in Hasbro's favor. Boston Athletic, 867 F.2d at 30 ("The virtual identity between the parties' sales outlets and advertising methods, as well as the purchasing public's lack of opportunity to exercise discrimination in making such purchases, all point toward a likelihood of confusion.").

Likelihood of confusion is also increased by the fact that the products are similarly

priced, are purchased by the same class of consumers,[3] appear in the same stores, on the same store shelves, and have substantially the same game play. Stark Decl. ¶¶ 20-22, 24, 30-31; Wiggins Decl. ¶¶ 2-3; Ex. 1.

The probability of confusion is further enhanced by the fact that the products are impulse purchases: they are inexpensive and are not bought by a sophisticated group of people. See Boston Athletic, 867 F.2d at 30 ("inexpensive items, bought by the casual purchaser, are not likely to be bought with great care"); W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir. 1993) ("Generally, purchasers of small items . . . are considered casual purchasers prone to impulse buying."), limited on other grounds by Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 46 (2d Cir. 1994)).

**6. It Is Too Early to Expect Evidence of Actual Confusion.**

"[A] trademark holder's burden is to show likelihood of confusion, not actual confusion." Borinquen, 443 F.3d at 120. While actual confusion may be highly probative of likelihood of confusion, such proof is not to be expected when the infringing product has been on the market for such a short period of time.

"Historically, [courts] have attached substantial weight to a trademark holder's failure to prove actual confusion only in instances in which the relevant products have coexisted on the market for a long period of time." Id. at 121. This, of course, is not such a case. MGA's product has only been sold for a few months, at most. "There is ample reason, at the incipiency of an alleged infringement, in a suit seeking injunctive relief, for a plaintiff to argue and a court to rule

3 "Confusion is relevant when it exists in the minds of persons in a position to influence the purchasing decision or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of the trademark owner." Beacon Mutual Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 10 (1st Cir. 2004). All are the same here. Both games are bought by parents or other gift-givers for primarily preschool children. Stark Decl. ¶ 30.

that the similarity of marks is such that confusion is all too likely to ensue. Plaintiff should not be expected to stand by and await the dismal proof." DeCosta v. Columbia Broadcasting System, Inc., 520 F.2d 499, 514 (1st Cir. 1975).

**7. MGA Created and Distributed its Infringing Game in Bad Faith.**

Copying another's trademark indicates an intent to trade on that person's reputation and goodwill and may give rise to a presumption of likely confusion. See Boston Athletic, 867 F.2d at 32 (adopting a rebuttable presumption that defendants' intentional reference to plaintiffs' service marks created consumer confusion); President and Trustees of Colby College v. Colby College-New Hampshire, 508 F.2d 804, 812 (1st Cir. 1975) ("A finding of bad faith may give rise to a presumption that the adoption by one enterprise of a name similar to that of another is likely to cause confusion[.]"). Intentional copying, or bad faith, can be inferred from the fact that the junior user is aware of the senior user's mark and, nevertheless, used a mark that is the same or strongly similar. Paddington Corp. v. Attiki Importers & Distribs, Inc., 996 F.2d 577, 587 (2d Cir. 1993).[4]

At any rate, Hasbro explicitly put MGA on notice of its mark and protested MGA's infringement in April 2006. Rather than ceasing its infringing conduct, however, MGA ignored the warning and continued with its plans. Vanasse Decl. ¶¶ 8-9. That failure to take prompt corrective action once put on notice is properly considered evidence of MGA's bad faith. See

---

4 MGA cannot claim that it was unaware of Hasbro's MEMORY trademark. Even if MGA were genuinely unaware of it, however, even the most cursory trademark search would have uncovered its existence because it is federally registered. By performing such a search, MGA would have learned that Hasbro possessed an incontestable registration for the MEMORY mark for very similar goods to what MGA has produced: "equipment comprising cards with many matching pairs of designs for playing a matching card game." See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753-54 (2d Cir. 1996) (defendant's decision to perform only partial trademark search instead of full search likened to "the famous trio of monkeys who, by covering their eyes and ears, neither saw nor heard any evil").

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 754 (2d Cir. 1996) (district court's failure, in analyzing bad faith evidence, to consider defendant's continued unlawful use of mark after plaintiff had filed trademark infringement suit constituted clear error); The American Automobile Ass'n v. AAA Automobile Club of Queens, Inc., No. 97-CV-1180, 1999 WL 97918, at *7 (E.D.N.Y Feb. 8, 1999) (in bad faith analysis, court considered that defendant continued to use infringing marks after receiving plaintiff's cease and desist notice); Stuart v. Collins, 489 F. Supp. 827, 831-32 (S.D.N.Y. 1980) (finding willful infringement when defendant continued to use plaintiff's mark after plaintiff's attorney demanded that it cease).

While the bad faith of the infringer is not necessary to show likelihood of confusion, such bad faith further adds to that likelihood. Here, MGA was explicitly aware of Hasbro's MEMORY® game and trademark, and yet it went ahead with its infringement despite its knowledge of Hasbro's rights. In addition, MGA refused to change course even after Hasbro gave it explicit notice of its trademark infringement.

The worst and most definitive evidence of MGA's bad faith, however, is the promotional message that initially appeared on its website: "All the Fun of the Classic Memory Matching Game, But In 3-D!" This is a clear reference to and attempt to trade off associations with Hasbro's original MEMORY® game, and it deliberately encourages consumers to associate MGA's MEMORY MATCH-UP™ game with Hasbro's original MEMORY® game.

This bad faith supports a preliminary injunction and also provides strong equitable grounds to order a recall of the infringing MGA product already shipped to distributors and retailers but not yet sold to consumers.

**8. The MEMORY® Trademark Is Distinctive, Both Inherently and In The Marketplace.**

The strength of a plaintiff's trade mark is determined in light of: (1) the length of time

the mark has been used; (2) the plaintiff's relative renown in its field; (3) the potency of the mark in plaintiff's field of business, especially by looking at the number of similar registered marks; and (4) the plaintiff's efforts to promote and protect its mark. Borinquen, 443 F.3d at 121; Boston Athletic, 867 F.2d at 32. It is not necessary for the public to be aware of the identity of the product. "It is sufficient if the [public] recognizes the goods as emanating from a single source, 'even if that source is unknown.'" Fibermark, Inc. v. Merrimac Paper Co., No. 01-CV-11159, 2003 U.S. Dist. LEXIS 26866, *23 n.17 (D. Mass. Mar. 11, 2003). Hasbro's MEMORY® mark is an exceptionally strong mark and these factors weigh in favor of a likelihood of confusion.

**a. Hasbro's MEMORY® Mark Is Valid and Inherently Distinctive.**

The federal registration of Hasbro's MEMORY® trademark is prima facie evidence of its validity. Borinquen, 443 F.3d at 117 (citing 15 U.S.C. § 1115(a)). "When, as in this case, the PTO registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled 'to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive.'" Id. (quoting Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 545 (1st Cir. 1995), and citing Quabaug Rubber Co. v. Fabiano Shoe Co. Inc., 567 F.2d 154, 161 n.12 (1st Cir. 1977) ("registration is prima facie evidence that the . . . mark is distinctive per se")).

It is therefore incumbent on MGA to introduce sufficient evidence to rebut the presumption of Hasbro's right to exclusive use. Id. To escape liability, MGA must show lack of inherent distinctiveness (i.e., descriptiveness) by a preponderance of the evidence. Id. at 118. Its burden will be "not simply to show that the mark describes a feature of the trademark holder's product; rather, it must show that consumers regard the mark as merely descriptive of that

product." Id. at 119.

MGA will not meet that burden. It is readily apparent that Hasbro's mark is indeed distinctive, both inherently and in the marketplace. The inherent distinctiveness of a trademark is determined by its classification in one of the categories of generally increasing distinctiveness: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Beacon, 376 F. Supp. 2d at 255. Suggestive marks "'require imagination, thought and perception to reach a conclusion as to the nature of the goods.'" Id. at 256. A descriptive mark, by contrast, "'forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.'" Id. (quoting Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 (2d Cir. 1976)).

The MEMORY® trademark is a suggestive mark for a card matching game. First, the word "memory" does not let consumers know that Hasbro's product is a game. Second, it does not describe any of the characteristics of the game; rather, it merely suggests an element of skill useful in the game (a good recollection). Third, the word "memory" on its own imparts no direct information about the game, such as what it looks like, the equipment for playing it, or how it is played. It does not, for example, indicate that Hasbro's product is a game using cards or one that it involves numerous pairs of matching cards whose locations must be remembered after they have been revealed and then flipped over again.

Because the MEMORY® mark is suggestive, it is inherently distinctive and is entitled to protection without proof of secondary meaning. Id. at 255. Nevertheless, indicia of the mark's secondary meaning in the marketplace lend further support to the strength of the mark.

**b. The MEMORY® Mark Has Acquired Secondary Meaning in the Marketplace.**

Even if the MEMORY® mark were not inherently distinctive, it still would be protectable because it has acquired secondary meaning in the marketplace. A trademark acquires secondary meaning when its primary significance to consumers is to identify the source of the product. Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 43 n.14 (1st Cir. 2001).

Various factors have been held "relevant in ascertaining the strength of a trademark, including the length of time the mark has been used, the trademark holder's renown in the industry, the potency of the mark in the product field (as measured by the number of similar registered marks), and the trademark holder's efforts to promote and protect the mark." Borinquen, 443 F.3d at 121.

The MEMORY® mark's acquisition of market distinctiveness is impressive. Hasbro's MEMORY® mark has been in continuous use on card matching games since 1966. Over the many decades of its use, generations of children have grown up playing it, and generations of parents have purchased it for their children. The revenues from Hasbro's sales of its MEMORY® card matching games since 1966, which exceed $130 million, see Stark Decl. ¶ 10, demonstrate the strength of the MEMORY® mark. Moreover, Hasbro has supported its line of MEMORY® card matching games over the years with substantial advertising and promotions, spending over $20 million in the last eight years to advertise the MEMORY® game separately and along with a group of other Hasbro games collectively called "My First Games®" and as part of the "Games Make Great Gifts" campaign. See Stark Decl. ¶ 10. A survey conducted in 2002 found that sixty-three percent of households with children below the age of thirteen were aware of the Original MEMORY® game. Stark Decl. ¶ 26. These facts are strong evidence that the MEMORY® mark has acquired secondary meaning.

Hasbro has expended considerable resources protecting the equity that it has built in the MEMORY® mark. These efforts include policing infringers that enter the market; monitoring trademark applications in the United States Patent and Trademark Office and opposing applications for infringing marks; and filing a civil action when all other efforts at resolution fail. Vanasse Decl. ¶¶ 6-7. Hasbro's efforts to protect the MEMORY® mark are strong evidence of the secondary meaning that the mark has acquired.[5] Borinquen, 443 F.3d at 121

Secondary meaning may also be inferred from "proof of intentional copying." TeleRep Caribe Inc. v. Zambrano, 146 F. Supp. 2d 134, 140 (D.P.R. 2001). Given the identity between the marks (MEMORY® vs. MEMORY MATCH-UP™), the Court can readily conclude that MGA intentionally copied the Hasbro's mark. See Boston Athletic, 867 F.2d at 32 (defendant's choice of similar designs showed intent to trade on the plaintiff's sponsorship and management of the Boston Marathon).

* * *

In sum, then, all the most significant factors weigh heavily toward finding a likelihood of confusion. Only one factor – actual confusion – is neutral.

## II. A RECALL IS NECESSARY TO STOP THE IRREPARABLE HARM FROM MGA'S INFRINGEMENT.

As shown above, Hasbro has established all of this circuit's elements for a preliminary injunction to halt MGA's trademark infringement. As set out above and in the accompanying

5 MGA contends that there are other "memory" games currently on the market, see MGA Counterclaim ¶¶ 14, 16-18; Ex. A, but a visit to a major retail store on June 23, 2006 revealed only one infringing game—MGA's MEMORY MATCH-UP game. Wiggins Decl. ¶¶ 2-4; Ex. 1. Exhibit A to MGA's Counterclaim is nothing more than a photograph of an artificial scene carefully constructed by MGA's lawyers. Compare MGA Counterclaim ¶ 14; Ex. A with Wiggins Decl. Ex. 1.

Declaration of Mark Stark (at ¶¶ 32-33), the harm from MGA's infringing use of Hasbro's MEMORY® mark is such that a preliminary injunction alone will not sufficiently restore the status quo and prevent irreparable harm. A recall is also needed.

"Where, as here, there is a strong likelihood of consumer confusion, a court may order as part of a preliminary injunction that defendant recall infringing goods, so as to restore the status quo pending a final resolution on the merits." McNeil-PPC, Inc. v. Merisant Co., No. 04-1090, 2004 WL 3316380, at *27 (D.P.R. July 29, 2004) (citing Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 997 (2d Cir. 1997) (affirming preliminary injunction that required defendant to remove all infringing trade dress from retail stores around the world during pendency of action); Chere Amie, Inc. v. Windstar Apparel, Corp., 191 F. Supp. 2d 343, 352 (S.D.N.Y. 2001) (granting preliminary injunction and ordering that defendants recall from all distributors, wholesalers, jobbers, dealers, and retailers any products employing the plaintiffs' trademark)).

Without such relief, Hasbro will continue to be injured by confusingly similar products that remain on store shelves throughout the United States. We therefore respectfully submit that a recall of products bearing the infringing labels should be ordered in this case.

Among the most egregious harm from MGA's infringement is that it sends the message to competitors, eager to gain market share at Hasbro's expense, that there are no legal barriers to introducing their own versions of Hasbro's MEMORY® game. This will likely cause the production of multiple lower-priced knock-off "MEMORY" games that will compete for already limited shelf space, which will result in reduced revenues and profits for Hasbro, increased enforcement costs, or both. Stark Decl. ¶ 32(F).

If MGA's games remain on store shelves, large numbers of MGA's infringing game will end up in the hands of consumers. The value of Hasbro's MEMORY® trademark will be threatened. The existence of so many infringing products and such a high profile infringement amounts to an announcement to the world that Hasbro's trademark is worthless and freely available to all. No amount of money damages will be able to compensate for the harm that message conveys. Only a recall of the packaging bearing the infringing name will begin to ameliorate that irreparable harm.

Cases in which courts have imposed or upheld recalls of infringing products as part of a preliminary injunction include:

- Borinquen Biscuit Corp. v. M.V. Trading Corp., No. 04-2070, 2005 U.S. Dist. LEXIS 41452 (D.P.R. Sept. 2, 2005), aff'd 443 F.3d 112 (1st Cir. 2006) (recall ordered as part of preliminary injunction despite the fact that recalled product made up the majority of the defendant's sales);

- McNeil-PPC, Inc. v. Merisant Co., No. 04-1090, 2004 WL 3316380, *27 (D.P.R. July 29, 2004) (recall of defendant's artificial sweetener packaging that infringed plaintiffs' trade dress ordered as part of preliminary injunction);

- Montana Prof'l Sports, LLC v. Leisure Sports Management, Inc., 422 F. Supp. 2d 1271 (M.D. Fla. 2006) (ordering recall of defendant's infringing product and noting that "any recent investment in the [infringing] name and marks by defendants with full knowledge of the [plaintiff's] federally registered ... marks should not be afforded any weight");

- Nabisco, Inc. v. PF Brands, Inc., 50 F. Supp. 2d 188 (S.D.N.Y.), aff'd, 191 F.3d 209 (2d Cir. 1999) (recall of $3.5 million in snack products that diluted Pepperidge Farm's trademark in its famous "Goldfish" crackers);

- Clinique Labs., Inc. v. Dep Corp., 945 F. Supp. 547 (S.D.N.Y. 1996) (recall of skin care products that infringed trademark and trade dress);

- Chere Amie, Inc., v. Windstar Apparel, Corp., 191 F. Supp. 2d 343 (S.D.N.Y. 2001) (recall of children's clothing that infringed trademarks and copyrights);

- Home Shopping Club, Inc. v. Charles of the Ritz Group, Inc., No. 92 Civ. 8173, 1993 WL 228853 (S.D.N.Y. June 13, 1993) (recall of all cosmetics that infringed trademarks);

- Lancome Parfums et Beaute & Cie v. L B Int'l Corp., No. 86 Civ. 7550, 1986 WL 13462 (S.D.N.Y. Nov. 19, 1986) (recall of infringing handbags manufactured by defendant that bore plaintiff's trademark).

A district court is well within its discretion to order the recall of infringing goods after balancing "the likely burden and expense of a recall" on the defendant against the "benefit" to the plaintiff. Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 807 (2d Cir. 1981); see also Behnam Jewelry Corp. v. Aron Basha Corp., 45 U.S.P.Q.2d 1078, 1094 (S.D.N.Y. 1997). "[G]iven that [Hasbro] has distributed [MEMORY®] products for over [forty] years whereas [MGA] has only utilized the [MEMORY®] mark for [less than] a year, ... the balance of hardships tips in favor of plaintiff [Hasbro]." Borinquen Biscuit Corp., 2005 U.S. Dist. LEXIS 41452 at *16; see also Perfumania, Inc. v. Perfulandia, Inc., 279 F. Supp. 2d 86, 104 (D.P.R. 2003).

A recall is not an undue burden because Hasbro seeks a recall only of the MEMORY MATCH-UP™ games remaining on store shelves or in distribution. The recall would only require MGA to contact its warehouses and distributors and pull product off of the shelves of its known retailers, not out of the homes of consumers. It would not attempt to wrest the infringing products from innocent purchasers. See Eve of Milady v. Impression Bridal, Inc., 957 F. Supp. 484, 491 (S.D.N.Y. 1997) (court limited recall only to infringing bridal gowns that had not yet been purchased by brides); Benham Jewelry Corp., 45 U.S.P.Q.2d at 1094 (court limited recall only to unsold jewelry, not jewelry that had been purchased by end consumers).

We should also emphasize that neither the preliminary injunction nor the recall order would hinder MGA's sale of the product itself. It would be easy for MGA to change the name of

its game. The MEMORY MATCH-UP™ name is not embedded in the product itself. It is only on a cardboard wrapper that is put around the plastic carrying case for the game, on stickers on the cups used in the game, and in the instructions. Changing the name would therefore not require any change in the game itself or in the molds used to manufacture it. The game itself could easily be repackaged with different instructions and redistributed for sale. Stark Decl. ¶ 29.

Moreover, "[d]efendants should not be heard to complain about hardship when their actions were taken with knowledge of [the plaintiff's] trademarks." Howard Johnson Int'l, Inc. v. Craven Properties Ltd, Inc., No. 01-CV-1247, 2002 WL31014858 at *7 (M.D. Fla. Jun. 13, 2002). The investment of a defendant with full knowledge of a plaintiff's federally registered trademark should not be afforded any weight. Montana Prof'l Sports, LLC v. Leisure Sports Mgmt., Inc., 422 F. Supp. 2d 1271, 1282 (M.D. Fla. 2006).

As set out above, MGA had knowledge of Hasbro's MEMORY® game and trademark, yet went ahead with its unauthorized game anyway. And MGA continued its infringing conduct even after Hasbro gave MGA explicit notice of its infringement. Vanasse Decl. ¶¶ 8-9. MGA's decision to continue shipping its MEMORY MATCH-UP™ game has put Hasbro in a situation where a recall is the only effective relief available to it. An injunction against further shipments simply does not fully address the irreparable harm caused by the large number of infringing copies of Hasbro's MEMORY® Game already in stores and available for purchase by the public.

* * *

For all of these reasons, Hasbro respectfully requests that the Court order a recall from distributors and retailers of all as-yet unsold MGA games bearing the infringing MEMORY mark.

## III. DISCOVERY ON THE PRELIMINARY INJUNCTION ISSUES SHOULD BE EXPEDITED.

Hasbro seeks an immediate Rule 16 conference and expedited discovery to ferret out more details about MGA's MEMORY MATCH-UP™ game and its promotion in order to present the Court with a fuller record for ruling on Hasbro's request for a preliminary injunction and recall.

The Court has broad discretion under Fed. R. Civ. P. 16, 26(d), 30(a)(2), 33(a) and 34(b) to order expedited discovery. Expedited discovery has been routine in cases where preliminary injunctive relief is sought. See, e.g., New Comm. Wireless Servs., Inc. v. Sprintcom, Inc., 287 F.3d 1, 8 (1st Cir. 2002); F.T.C. v. Seismic Entm't Prods., Inc., No. Civ. 04-377, 2004 WL 2403124, *1 (D.N.H. Oct. 21, 2004); Interface Group, Inc. v. Gordon Publ'ns, Inc., 562 F. Supp. 1235, 1236 (D. Mass. 1983).

Hasbro seeks expedited discovery by means of requests for production and interrogatories/requests for admissions concerning the following subjects:

- the decision by MGA to use the "MEMORY MATCH-UP™" name;
- the design of the packaging of MGA's MEMORY MATCH-UP™ game;
- the substance and intent of MGA's advertising, marketing, and promotion of the MEMORY MATCH-UP™ game;
- the dates and quantities of MEMORY MATCH-UP™ shipments;
- the actual and projected sales of and profits from the MEMORY MATCH-UP™ game;
- MGA's knowledge of Hasbro's MEMORY® game and trademark;
- third-party use of the word "memory" as all or part of a trademark in connection with a game;
- actual or potential confusion or likelihood of confusion;

- the decision to refer to the "Classic MEMORY" game on the MGA website and subsequent decision to withdraw it;
- the channels of trade for MGA's MEMORY MATCH-UP™ game, to the extent that MGA does not admit that they are identical to that for Hasbro's MEMORY® game;
- the target market for MGA's MEMORY MATCH-UP™ game, to the extent that MGA does not admit that it is identical to that for Hasbro's Memory game; and
- the cost associated with recalling the MEMORY MATCH-UP™ game and substituting a packaging sleeve that does not include the word "memory."

Copies of the proposed document requests and the interrogatories/requests for admission are annexed hereto as Exhibits A and B.

In addition, Hasbro seeks to take the deposition(s) of MGA's principal witnesses and/or the person responsible for MGA's MEMORY MATCH-UP™ game, who are likely to be the same individual.

Hasbro requests that the time to respond to these requests be shortened to 20 days. It is, of course, prepared to reciprocate by providing expedited responses to document requests and interrogatories, as well as the depositions of the persons submitting declarations on this motion. The burden to MGA of this limited discovery on an expedited basis should be slight and the advantage to the Court and parties of a more complete record significant.

**Conclusion**

For the foregoing reasons, Hasbro's motion for a preliminary injunction and recall should be granted, and discovery should be expedited to provide a more informed hearing on the issues.

Dated: June 29, 2006

Respectfully submitted,

Joseph Avanzato [#4774]
Jeffrey K. Techentin [# 6651]
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel. # (401) 274-7200
Fax # (401) 751-0604

Kim J. Landsman
Michael D. Sant'Ambrogio
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

Attorneys for Plaintiff Hasbro, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2006 I caused a true and accurate copy of the within to be served on counsel of record as follows:

***Via Hand Delivery***
Brooks R. Magratten, Esq.
George E. Lieberman, Esq.
Vetter & White, Incorporated
20 Washington Place
Providence, RI 02903

Of Counsel:

***Via First Class Mail***
Kent R. Raygor, Esq.
Janene P. Bassett, Esq.
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017

***Via First Class Mail***
Kim J. Landsman
Michael D. Sant'Ambrogio
PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710