UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HASBRO, INC., Plaintiff, | : | C.A. No. 06-262S |
| - against - | : | |
| MGA ENTERTAINMENT, INC., Defendant. | : | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION AND RECALL**

Joseph Avanzato [#4774]
Jeffrey K. Techentin [# 6651]
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel. # (401) 274-7200
Fax # (401) 751-0604

and

Kim J. Landsman
Michael D. Sant'Ambrogio
Irene Choi
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Tel. # (212) 336-2000
Fax # (212) 336-2222

Attorneys for Plaintiff Hasbro, Inc.

# Table of Contents

**Page**

Preliminary Statement....1

Facts…. ....3

Argument ....3

I. HASBRO HAS A VALIDLY REGISTERED, INHERENTLY DISTINCTIVE TRADEMARK. ....5

A. The File Histories of Both Registrations Support the Inherent Distinctiveness of the MEMORY® Trademark. ....6

1. The Trademark Office Determined that the Mark Was Suggestive. ....6

2. The Incontestable 1967 Registration Is Not Restricted to the Specific Stylization Shown and Remains Valid. ....8

3. Hasbro's Incontestable 1967 Trademark Registration Precludes a Descriptiveness Challenge. ....10

4. The 2003 Registration Was Properly Obtained. ....10

B. The Burden of Showing Distinctiveness Does Not Shift to Hasbro Because MGA Has Not Rebutted the Presumption of Validity. ....11

1. The Mark Was Not Generic at the Time of Registration. ....12

2. MGA Has Not Submitted Evidence of Genericness Sufficient Rebut the Presumption that the Mark Remains Distinctive. ....15

C. That Hasbro Uses MEMORY® As an Adjective Modifying the Generic Word "Game" Shows the Distinctiveness of the Mark. ....16

II. HASBRO HAS NOT ABANDONED ITS MARK. ....16

III. THE PROTECTION OF THE REGISTRATIONS IS NOT LIMITED TO THE SPECIFIC GOODS DESCRIBED IN THE REGISTRATION. ....18

IV. NON-PARTY REGISTRATIONS DO NOT CAST DOUBT ON THE VALIDITY OF HASBRO'S MARK, BUT INSTEAD SUPPORT IT. ....19

1. Trademark Registrations Are Not Evidence Of Use. ....19

2. Registrations of Other Marks for Games Containing "Memory" Show that It Can Be Inherently Distinctive. ....19

3. The Other Registrations Do Not Show That MEMORY MATCH-UP™ Is Not Likely To Cause Confusion. ....20

V. MGA IS USING MEMORY MATCH-UP™ AS A TRADEMARK. ....21

VI. MGA'S ATTEMPTS TO DISTINGUISH THE TYPE OF PRODUCT, THE CLASS OF PROSPECTIVE PURCHASERS, AND THE CHANNELS OF TRADE ARE ALL NONSENSE. ....21

**Table of Contents**
**(continued)**

**Page**

VII. MGA'S PROTESTATIONS OF GOOD FAITH ARE NOT CREDIBLE AND, EVEN IF BELIEVED, DO NOT WEIGH AGAINST A FINDING OF INFRINGEMENT. ....23

VIII. HASBRO HAS SHOWN IRREPARABLE HARM. ....24

A. Irreparable Harm Is Presumed in Trademark Infringement. ....24

B. No Unreasonable Delay Negates the Presumption of Irreparable Harm. ....25

1. MGA's Delay Argument Fails on the Facts. ....25

2. MGA Cites Inapplicable Second Circuit Law In Arguing Unreasonable Delay. ....26

IX. THE EQUITIES FAVOR A RECALL. ....27

Conclusion ....28

## Table Of Authorities

### Cases


Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.,
684 F.2d 1316 (9th Cir. 1982) ..............14, 14n

Beacon Mutual Insurance Co. v. OneBeacon Insurance Group,
376 F.3d 8 (1st Cir. 2004)..............6, 24

Borinquen Biscuit Corp. v. M.V. Trading Corp.,
443 F.3d 112 (1st Cir. 2006)..............7, 10, 13, 15, 19, 25

Boston Athletic Association v. Sullivan,
867 F.2d 22 (1st Cir. 1989)..............23

Boustany v. Boston Dental Group, Inc.,
42 F. Supp. 2d 100 (D. Mass. 1999)..............27

In re CTB Inc.,
52 U.S.P.Q. 2d 1471 (T.T.A.B. 1999)..............9

In re Dillard Department Stores Inc.,
33 U.S.P.Q. 2d 1052 (Comm'r of Patents 1993)..............9

Diomed, Inc. v. Vascular Solutions, Inc.,
No. Civ. A 03-12498, 2006 WL. 516756 (D. Mass. March 2, 2006)..............12

In re Electrolyte Laboratories, Inc.,
929 F.2d 645 (Fed. Cir. 1990)..............8

Equine Techs., Inc. v. Equitechnology, Inc.,
68 F.3d 542 (1st Cir. 1995)..............7

Fritz v. Arthur D. Little, Inc.,
944 F. Supp. 95 (D. Mass. 1996)..............26n

Georgia-Pacific Corp. v. Great Plains Bag Co.,
614 F.2d 757 (C.C.P.A. 1980)..............8

Gimix, Inc. v. JS & A Group, Inc.,
699 F.2d 901 (7th Cir. 1983)..............15n

Heroes Inc. v. The Boomer Esiason Hero's Foundation Inc.,
43 U.S.P.Q. 2d 1193 (D.D.C. 1997)..............15

**Table of Authorities**
**(Continued)**

**Page(s)**

Horizon Mills Corp. v. QVC, Inc.,
161 F. Supp. 2d 208 (S.D.N.Y. 2001)....................12

International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749 (2d Cir. 1996)....................24

McGraw-Edison Co. v. Walt Disney Products,
787 F.2d 1163 (7th Cir. 1986)....................19

Murphy Bed Door Co., Inc. v. Interior Sleep Systems, Inc.,
874 F.2d 95 (2d Cir. 1989)....................14n

Nabisco, Inc. v. PF Brands, Inc.,
50 F. Supp. 2d 188 (S.D.N.Y. 1999)....................17

Nora Beverages, Inc. v. Perrier Group of America, Inc.,
269 F.3d 114 (2d Cir. 2001)....................15n

O.C. White Co. v. Scientific Tech. Electronic Products,
No. Civ. A 03-30190, 2005 WL. 3242358 (D. Mass. Nov 10, 2005)....................11, 14, 16

In re Ohmite Manufacturing Co.,
134 U.S.P.Q. 30 (T.T.A.B. 1962)....................16

Original Appalachian Artworks, Inc. v. Blue Box Factory Ltd.,
577 F. Supp. 625 (S.D.N.Y. 1983)....................22

Pepper Patch, Inc. v. Bell Buckle Country Store, Inc.,
No. 305-0328, 2006 WL. 2037560 (M.D. Tenn. July 18, 2006)....................15

Playboy Enterprises, Inc. v. Checkleberry Publ'g, Inc.,
486 F. Supp. 414 (S.D.N.Y. 1980), aff'd, 687 F.2d 563 (2d Cir. 1982) (same)....................17

Public Service Co. of New Mexico v. Nexus Energy Software, Inc.,
36 F. Supp. 2d 436 (D. Mass. 1999)....................12

Pure Foods v. Minute Maid Corp.,
214 F.2d 792 (5th Cir. 1954)....................18

Retail Services Inc. v. Freebies Publishing,
364 F.3d 535 (4th Cir. 2004)....................14

In re Richards-Wilcox Manufacturing Co.,
181 U.S.P.Q. 735 (Comm'r of Patents 1974)....................9

S.S. Kresge Co. v. United Factory Outlet, Inc.,
598 F.2d 694 (1st Cir. 1979)....................14n

**Table of Authorities**
**(Continued)**

**Page(s)**

Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),
544 F.2d 1167 (2d Cir. 1976)....19

Ex Parte Squire Dingee Co.,
81 U.S.P.Q. 258 ....9

Sweetheart Plastics, Inc. v. Detroit Forming, Inc.,
743 F.2d 1039 (4th Cir. 1984) ....17

Ty Inc. v. Softbelly's, Inc.,
353 F.3d 528 (7th Cir. 2003) ....11

V & S Vin & Spirit Aktiebolag (Publ) v. Absolute Publishing USA Inc.,
No. 05....17

**Statutes**

15 U.S.C. § 1052(e) ....20

15 U.S.C. § 1064(3) ....14n

15 U.S.C. §1127....16

**Other Authorities**

Callmann, Unfair Comp., Trademarks & Monopolies
§ 20.44, 270 (4th ed. 1983)....19

S. Edelman, Delay in Filing Preliminary Injunction Motions: Update 2002.
92 Trademark Rep. 647, 650 (2002)....26

Practitioner's Trademark Manual of Examining Procedure
§ 1609.02(a) (3rd Ed. 2004)....9

McCarthy on Trademarks § 3:6 n.1 ....16

McCarthy on Trademarks § 32:137 .... 18-19

Oxford University Press, The American College Dictionary (2001) ....15n

Random House, Webster's College Dictionary (2001)....15n

Plaintiff Hasbro, Inc. ("Hasbro") respectfully submits this Reply Memorandum of Law in Further Support of its Motion for a Preliminary Injunction and Recall against defendant MGA Entertainment, Inc. ("MGA") and in response to the arguments in MGA Entertainment, Inc.'s Memorandum Of Points And Authorities ("MGA Br.").

**Preliminary Statement**

Hasbro has two registrations for its MEMORY trademark: an incontestable 1967 registration showing MEMORY in a slightly stylized font and a 2003 registration showing MEMORY in block letters. Both cover the trademark at issue. The incontestable 1967 registration precludes an attack on the mark as descriptive, and both registrations put MGA to a high burden it cannot surmount in attacking Hasbro's trademark.

MGA cannot sustain the burden of proving that Hasbro's MEMORY® trademark is a generic term for a type of game. The MEMORY® trademark is not generic for numerous factual reasons discussed below, but the immediate and simplest distinction is that, unlike the generic names Go Fish, Old Maid, or Crazy Eights with which MGA tries lump Hasbro's trademark, MEMORY® has been federally registered as a trademark for card games and has been used by Hasbro as a trademark for games for over forty years.

That MEMORY® is neither descriptive of Hasbro's game, nor generic of a specific type of game, is underscored by the fact that, other than games of pure chance, virtually every game imaginable requires a player to use his or her memory in some way, ranging from those like SIMON that, like the game at issue, use short-term visual recall, to those like TRIVIAL PURSUIT that require a wide range of long-term recall of historical and other facts. The term "memory" simply does not convey how to play Hasbro's game or any aspect of it that distinguishes it from any number of other games.

The other factors weighing toward likelihood of consumer confusion quickly fall into place. MGA is selling a virtually identical game (the only difference being a use of three-dimensional characters rather than cards) under the same mark (with only the addition of the descriptive phrase "match-up" and, more recently, "3D" ) targeted to exactly the same consumers (pre-school children, purchased by adult gift-givers), sold in the same stores on the same shelves (indeed, right in the midst of various versions of Hasbro's MEMORY® game).

In response to the compelling evidence of likely consumer confusion, MGA essentially throws at Hasbro the proverbial kitchen sink consisting of multiple unsubstantiated conclusions and arguments that fly in the face of the facts. MGA will not even admit that it intended the MEMORY MATCH-UP™ name to function as a trademark even though the use of the ™ makes perfectly obvious MGA's initial claim to trademark rights. MGA will not admit that it's MEMORY MATCH-UP™ game moves in the same channels of trade as Hasbro's MEMORY® game, notwithstanding the fact that the respective games sit on the same shelves in the same mass market stores. And MGA even makes the astonishing argument that parents buying a $7 game for their child exercise the level of care expected of serious collectors of rare goods.

The answering papers bemoan at length the supposed burden of a recall but never deal with the simpler preliminary injunction, which could be entered without a recall (though much of the alleged burden is simply that retailers may choose not to cooperate). What is most puzzling in MGA's discussion of the equities is that it never explains why, if it never intended MEMORY MATCH-UP™ to function as a trademark, it has refused to make a simple, running change, principally on a wrapper not part of the game itself, to delete "Memory" from the name.

## **Facts**

Since the parties have agreed to expedited discovery in preparation for an evidentiary hearing, Hasbro would not normally submit reply declarations or recite the facts in this brief. The one exception is the declaration of Millens W. Taft, Jr., a former Milton Bradley officer who negotiated the license from Otto Maier Verlag Ravensburg ("Ravensburg") that granted Milton Bradley the rights to the MEMORY® game.

Mr. Taft states that in 1964, when the license was granted, neither he nor, to his knowledge, anyone else at Milton Bradley was aware of any other use, commercial or otherwise, of the MEMORY name for a game. He is the only factual witness on whether there was a pre-existing game generally known as "Memory." Mr. Taft and the Trademark Examiner were in the best position to know in 1966 whether MEMORY was generic; he would not have been interested in the mark if it were generic and therefore available without taking a license. Taft Decl. ¶ 3.

## **Argument**

There are many mistaken factual and legal points in MGA's 43-page brief. Hasbro will rely principally on the evidentiary hearing to address the factual issues. Accordingly, Hasbro will focus in this reply brief on MGA's principal legal arguments to demonstrate that Hasbro is suffering irreparable harm because of MGA's infringement of Hasbro's MEMORY® trademark.

1. The MEMORY® mark is suggestive rather than descriptive or even generic. The mark is suggestive because the meaning of the word "memory" does not distinguish this particular game from any number of other games that require memory skills. The Trademark Examiners did not consider MEMORY to be generic or descriptive when they approved it for registration in 1966 and 2003. Furthermore, Mr. Taft, a witness in the best

position to know at the time, was not aware of any prior uses of the word "memory" for a game when Hasbro first began using its MEMORY® mark. MGA has failed to meet its burden to prove the mark unprotectible on either descriptiveness or genericness grounds.

2. Hasbro has not abandoned its rights to the MEMORY® trademark by failing to police infringements. In fact, Hasbro has stopped a number of infringements, including a game on the back of Kellogg's cereal boxes and Sababa's Angelina Ballerina Memory Game, and is pursuing another in the United States Patent and Trademark Office ("Trademark Office") to prevent its registration. A trademark owner is entitled to pick its battles strategically and go after those infringements deemed most harmful. The most obvious reason Hasbro is pursuing MGA's infringement is the harm from its being on the same store shelves as Hasbro's game.

3. That Hasbro's MEMORY® registrations are for a card game does not limit its right to stop the use of the same or confusingly similar mark that is used in connection with essentially the same game, but played with cups rather than cards. While trademark registrations simply record the goods in connection with which the registrant was using the trademark at the time the registration was issued, it is black letter trademark law that a trademark owner can obtain relief against confusingly similar uses of the trademark on a broad range of products, especially highly related, if not substantially identical games, like MEMORY® and MEMORY MATCH-UP™. From the standpoint of potential consumer confusion, MEMORY MATCH-UP™ is a not a different product. It is not targeted to different consumers, nor does it travel in different channels of trade. Like Hasbro's game, it is a matching game targeted to preschool children (bought by their gift-givers) sold in the midst of Hasbro's MEMORY games on the same shelves of the same stores.

4. MGA is not using MEMORY MATCH-UP™ in a purely descriptive sense. It is in fact using it as a trademark, as is clear from its declarations, and it is the only

trademark for the *product* (as opposed to the MARVEL name and Spiderman characters) that appears on the product.

5. Adding the purely descriptive, indistinct word "match-up" (or, later, "3-D") does not alter the overall commercial impression of MGA's use of the MEMORY® trademark. It does not distract attention from the MEMORY® trademark that is the dominant component of the name MGA is using. Furthermore, the fact that Hasbro's MEMORY® mark may co-exist with marks consisting of well-known and emotionally evocative phrases like MEMORY LANE and MAKING MEMORIES TOGETHER does not mean it can coexist with the composite of Hasbro's dominant trademark and an entirely indistinctive term that comprises MEMORY MATCH-UP™.

7. MGA's protestations of good faith are factually implausible and legally irrelevant to a defense to trademark infringement.

8. Hasbro did not unreasonably delay challenging MGA's infringement, and there is therefore nothing to rebut or dissipate the presumption of irreparable harm or the favorable balancing of hardships accorded the plaintiff in a trademark infringement case.

9. The alleged burden of a recall is really just the risk that retailers will not cooperate with MGA, but MGA would not be required to do more than request cooperation. Moreover, the equities are against MGA because it easily could have made a running change to avoid infringement long before the complaint or motion was filed.

## I. HASBRO HAS A VALIDLY REGISTERED, INHERENTLY DISTINCTIVE TRADEMARK.

Even without the presumption of distinctiveness (discussed below) that arises from both the 1967 and 2003 registrations, including the incontestable status of the 1967 registration, the MEMORY® mark would not be properly considered generic or descriptive of the

game. MGA contends that Hasbro's mark is descriptive because "the nature of the game is a memory skills game." MGA Br. at 18. Many games, however, require memory skills. That does not distinguish MEMORY® from, for example, SIMON, which also requires short-term recall of light patterns, or TRIVIAL PURSUIT, which requires long-term recall of a large variety of facts.[1]

The MEMORY® game tests very short-term visual recall; long-term memory would only interfere, since it does no good to remember what images were where after a game is over. The word "memory" does not, therefore, "convey[] an immediate idea of the ingredients, qualities, or characteristics of the goods." Beacon Mutual Ins. Co. v. OneBeacon Ins. Corp., 376 F. Supp. 2d 251, 256 (D.R.I. 2005).[2]

### A. The File Histories of Both Registrations Support the Inherent Distinctiveness of the MEMORY® Trademark.

#### 1. The Trademark Office Determined that the Mark Was Suggestive.

MGA's contention that the history of the 1967 trademark registration shows that the Trademark Office "agreed" that "the proposed mark 'Memory' is merely descriptive" (MGA Br. at 18) could not be farther from the truth. The Trademark Office accepted Milton Bradley's argument that the mark was suggestive and accordingly registered it on the Principal Register.

The Trademark Examiner initially rejected registration because, he said,

> The specimens in the case show the type game involved to be a memory card matching game. For such goods, where the memory of the player is relied upon to locate matching cards the trademark 'MEMORY', is held to be merely descriptive within the meaning of Sec. 2(e)(1) of the statute and not subject to registration on the

---

[1] Many more examples could be given. An adept player of Go Fish!, for example, needs to remember what cards have been given up and who has them.

[2] Even if the mark were somehow considered descriptive, it has acquired substantial market recognition (secondary meaning) through over 40 years of sales and advertising. See Hasbro's Opening Brief at 17-18.

> Principal Register [for trademarks that are inherently distinctive or have acquired secondary meaning].

Raygor Decl. Exh. 9, p. 13.

Milton Bradley responded that "the mark is not merely descriptive of the goods within the meaning of the Act. It does not describe the goods, their function or manner of use. It may suggest the type of game involved, but it does not describe them. A purchaser seeing the mark would be unable to determine the nature or manner of use of the goods without additional information." Raygor Exh. 9 p. 15 (emphasis in original). The Trademark Examiner accepted this argument that the mark was suggestive and registered it as such.

The determination that MEMORY is suggestive -- and especially the contemporaneous view of the Trademark Office as to the distinctiveness of the word "memory" (and not just its stylization) -- is entitled to deference from this Court. "When, as in this case, the [Trademark Office] registers a mark without first requiring the applicant to prove secondary meaning, the holder of the mark is entitled 'to a presumption that its registered trademark is inherently distinctive, as opposed to merely descriptive.'" Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006) (quoting Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 545 (1st Cir. 1995)). The Trademark Office has registered the mark twice, first in 1967 upon being convinced that the mark was suggestive, and again in 2003 when the registration sailed through with no initial office action.

That the Trademark Office has required some other registrants using MEMORY as part of a phrase in a trademark to disclaim that term outside of its use with the complete registered phrase, see MGA Br. at 10, only proves Hasbro's point: A word with a dictionary meaning can be descriptive in some contexts and suggestive or even arbitrary in others. That the Trademark Office required disclaimers for some registrations of the word used in a phrase, but

not Hasbro's trademark, adds to the conclusion that the Trademark Office did not consider Hasbro's use of MEMORY to be descriptive.

**2. The Incontestable 1967 Registration Is Not Restricted to the Specific Stylization Shown and Remains Valid.**

The 1967 registration is not a "design registration." MGA Br. at 4. Design marks are marks that cannot be vocalized, while word marks are clearly intended to be. See In re Electrolyte Laboratories, Inc., 929 F.2d 645, 647 (Fed. Cir. 1990) (recognizing design marks and word marks and marks that include elements of both); Georgia-Pacific Corp. v. Great Plains Bag Co., 614 F.2d 757, 760 (C.C.P.A. 1980) (same). Hasbro may have submitted a drawing of its word mark using a particular font, but it registered a word mark nonetheless. The mark does not include any non-vocalized design elements and the font used is not highly stylized.

Furthermore, MGA's argument that the Trademark Office agreed in 1967 that the proposed mark MEMORY was merely descriptive is not only (as discussed in the previous section) erroneous, but contradicts MGA's other argument that the 1967 registration is solely for a design. In looking to the Trademark Office for support of its descriptiveness argument, MGA implicitly accepts that the Trademark Examiner did not restrict his inquiry to whether the specific stylization of the word "memory" was entitled to registration; the issue raised was whether the word itself was inherently distinctive.

There are at least two fatal problems with MGA's argument that the incontestable 1967 registration is no longer valid because, according to MGA, Hasbro submitted a specimen of use in 1987 that was a "material change in the registration" because it did not look exactly like that shown in the registration. MGA Br. at 23-24.

The first fatal problem for MGA is that the 1967 registration was not restricted to the stylization. As discussed above, if the stylization was all that received protection, there

would have been no discussion between Trademark Examiner and Milton Bradley over whether the word mark was suggestive or merely descriptive. The particular font used in Milton Bradley's 1967 registration was simply irrelevant to the question whether the mark was descriptive or suggestive.

The second fatal problem is grounded in the fact that the Trademark Office accepted a specimen of use with the font that MGA characterizes as "materially altered" from what was registered in 1967. The Trademark Office clearly did not regard the change in font as a "material alteration" from the mark as registered. Indeed, "[m]arks entirely composed of words can normally be varied as to their style of lettering, size, and other elements of form without resulting in a material alteration of the mark." Practitioner's Trademark Manual of Examining Procedure § 1609.02(a) (3rd Ed. 2004) (citing Ex Parte Squire Dingee Co., 81 U.S.P.Q. 258, recon. denied, 81 U.S.P.Q. 543 (Comm'r of Patents 1949) (amendment from block lettering to script is not a material alteration)).

The cases cited by MGA do not support its argument. The cases all involve the deletion (and in one case also the addition) of significant design elements of marks that include both words and designs, not a mere change in the font used by a word mark. See In re Richards-Wilcox Mfg. Co., 181 U.S.P.Q. 735 (Comm'r of Patents 1974) (elimination of design elements that were "an integral part of the mark" and gave certain parts of the word "separate significance"); In re CTB Inc., 52 U.S.P.Q.2d 1471 (T.T.A.B. 1999) (elimination of design element, which "is the first thing a consumer would notice when viewing the mark"); In re Dillard Dep't Stores Inc., 33 U.S.P.Q. 2d 1052 (Comm'r of Patents 1993) (elimination and addition of "salient design features apart from the word portion" of the mark). Notably, MGA does not cite a single case holding that a change in the stylization of a word mark constitutes a "material alteration" of the mark, let alone that it renders an incontestable mark invalid.

In sum, Hasbro's incontestable 1967 registration of MEMORY was properly renewed and it is not limited to the exact stylization shown on the registration certificate.

**3. Hasbro's Incontestable 1967 Trademark Registration Precludes a Descriptiveness Challenge.**

The incontestable 1967 registration makes even greater MGA's burden in attacking the validity of Hasbro's MEMORY® mark. As noted above, registration alone carries the presumption that a mark is not descriptive and that "presumption is conclusive" after "the registered mark has become incontestable through the owner's compliance with the applicable statutory formalities." Borinquen, 443 F.3d at 117 (citing 15 U.S.C. § 1115(b)). The incontestable status precludes any challenge to Hasbro's MEMORY® mark as being descriptive.

**4. The 2003 Registration Was Properly Obtained.**

MGA shows the extent to which it will stoop to unsubstantiated mudslinging in its spurious accusation, based on rank speculation, that Hasbro's General Counsel, Barry Nagler, deceived the Trademark Office by stating in 2003 that Hasbro owned the mark and by not disclosing the Ravensburg license. MGA Br. at 6-7, 32. MGA's contention that Hasbro misstated facts to the Trademark Office is demonstrably false.

The agreement with Ravensburg dated as of January 1, 1990, which has been produced in discovery and will be submitted to the Court at the hearing, clearly conveyed ownership of the mark to Milton Bradley (now Hasbro). Paragraph 3(a) gave Milton Bradley

> the right to adopt a name, names, or translation of a name (hereinafter "Name"), or to change the Name of the Licensed Property as [Milton Bradley Company] so elects. Any application for, or subsequent registration of, the Name will be in the name of, and at the expense of, [Milton Bradley Company], **who will be the sole owner thereof** both during and after the Term of this Agreement. However, any Name hereunder which includes or

> consists of the word 'Memory' shall be assigned to Licensor upon Licensor's request after expiration or term hereof."[3]

(emphasis added).

The argument that Hasbro somehow hid the fact of a license from Ravensburg in its filings with the Trademark Office is equally spurious because there was no need or reason to disclose the license. Hasbro owned the mark then and owns it now.

### B. The Burden of Showing Distinctiveness Does Not Shift to Hasbro Because MGA Has Not Rebutted the Presumption of Validity.

Strong evidence is required to demonstrate that a trademark has become generic, because ["]to determine that a trademark is generic and thus pitch it into the public domain is a fateful step." Ty Inc. v. Softbelly's, Inc., 353 F.3d 528, 531 (7th Cir. 2003). Such a decision "penalizes the trademark's owner for his success," and it "may confuse consumers who continue to associate the trademark with the owner's brand." Id. Therefore, "[t]he fateful step ordinarily is not taken until the trademark has gone so far toward becoming the exclusive descriptor of the product that sellers of competing brands cannot compete effectively without using the name to designate the product they are selling." Id. MGA does not even contend that it could not compete effectively without using Hasbro's mark.

"[W]hen a plaintiff has a federally registered mark, the plaintiff enjoy[s] a *strong* presumption that the mark is not generic." O.C. White Co. v. Scientific Tech. Electronic Prods., No. Civ. A 03-30190, 2005 WL 3242358 at *6 (D. Mass. Nov 10, 2005) (emphasis added) (quoting J & J Snack Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d 358, 377 (D.N.J. 2002));

---

[3] The prior, original agreement had different language but, as subsequent events showed, the same intent. The 1964 Ravensburg agreement granted Milton Bradley all rights in the United States to a game called "Original-Memory." It states at paragraph 13 that MB "will not, at any time, except be it on behalf of OTTO MAIER and then only, make any claim of ownership, right, title or interest in and to OTTO MAIER's . . . trademarks . . . ." As explained by Millens Taft, Milton Bradley's registration of the MEMORY® mark was intended to benefit Ravensburg as licensor to Milton Bradley, and Ravensburg was aware of and approved that registration.

see also Diomed, Inc. v. Vascular Solutions, Inc., No. Civ. A 03-12498, 2006 WL 516756 at *2 (D. Mass. March 2, 2006). The burden lies on the defendant to produce evidence sufficient to overcome this presumption, see, e.g., Public Service Co. of New Mexico v. Nexus Energy Software, Inc., 36 F. Supp. 2d 436, 438 (D. Mass. 1999), which MGA has failed to do.

"A generic term is one that is commonly used as the name of a kind of goods . . . . Unlike a trademark which identifies the source of a product, a generic term merely identifies the genus of which a particular product is a species." Diomed at *2 (quoting Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 936 (7th Cir. 1986)). Courts have deemed terms to be generic under two principal circumstances: "where a seller appropriates an existing generic term and claims exclusive rights in it," and "where a seller establishes trademark rights in a term which a majority of the relevant public then appropriates as the name of a product." Horizon Mills Corp. v. QVC, Inc., 161 F. Supp. 2d 208, 213-214 (S.D.N.Y. 2001). MGA has not shown that "Memory" is generic under either circumstance.

**1. The Mark Was Not Generic at the Time of Registration.**

MGA acknowledges that courts first consider "PTO and TTAB decisions related to the mark at issue" when evaluating genericness. MGA Br. at 16.[4] The Trademark Examiner who dealt with the 1967 registration determined that the mark was suggestive and did not raise any issue of genericness. See pages 6-8 above. That is the most powerful and authoritative evidence that the mark was not generic when adopted.

If the Trademark Office considered MEMORY a generic term for a game, it would have refused to register the mark either in 1967 or 2003. Also, if the Trademark Office

[4] The other factors listed are "(2) dictionary definitions; (3) media usage such as newspapers or magazine articles; (4) the alleged owner's efforts at policing the mark; and (4) consumer surveys." MGA Br. at 16. Dictionary definitions do not support MGA's argument, and it relies primarily on the incorrect assertion that Hasbro has "utterly failed" to police the mark. See id., discussed at pages 16-18 below.

considered the mark descriptive rather than suggestive, it would have refused to register the mark without secondary meaning. It did neither. In fact, Hasbro's application culminating in the 2003 registration for the word alone sailed through the Trademark Office. The decision to register the mark was a determination of its inherent distinctiveness and protectibility, and that determination certainly "suggests that [MGA] is unlikely to rebut the presumption of distinctiveness arising from [Hasbro]'s contestable [and incontestable] mark." Borinquen, 443 F.3d at 120.

Hasbro is also submitting the testimony of Millens Taft, who was in charge of research and development at Milton Bradley at the time Milton Bradley acquired the license form Ravensburger. As the then-head of R&D for one of the largest game companies in the United States, Mr. Taft was, like the Trademark Examiner, in a position to know whether MEMORY was a generic term for a genus of game. Mr. Taft states that Milton Bradley was interested in the license from Ravensburg because of the name, that he was not aware of any other use, commercial or otherwise, of MEMORY as the name of a game, and that, obviously he would not have committed Milton Bradley to license the name if it were already freely available. Taft Decl. ¶¶ 2-4.

The only evidence put forth by MGA regarding the use of "Memory" prior to 1966 are two references to the game "Concentration," with "Memory" and "Pelmanism" given as possible alternate names, in two editions of the same book. MGA Br. at 8. MGA has not submitted any evidence regarding other, more widespread use of the term. Given that at least one compendium of games from the same timeframe makes no mention of "Memory," see R.F. FOSTER, FOSTER'S COMPLETE HOYLE: AN ENCYCLOPEDIA OF GAMES (J.B. Lippincott Co. 1953), the materials submitted by MGA fall short of demonstrating that "a substantial majority of the public" considered the term generic in 1966 (or now, for that matter). As was held of the "MONOPOLY" mark:

> MONOPOLY was not the generic or common descriptive name of an article or substance when registered. Plaintiff [attacking the mark] introduced uncontested testimony at trial that, prior to Parker Brothers' acquisition and manufacturer of the game, a real estate trading game was played in various parts of the country and that it was sometimes called "Monopoly." This, however, is insufficient to prove that the term was the common descriptive name of all real estate trading games.

Anti-Monopoly, Inc. v. General Mills Fun Group, Inc., 195 U.S.P.Q. 634, 638 (N.D. Cal. 1977), rev'd on other grounds, 611 F.2d 296 (9th Cir. 1979).[5]

MGA has supplied no dictionary definition of the game "Memory" from the relevant (pre-1966) time period. O.C. White Co. v. Scientific Tech. Electronic Prods. Inc., No. Civ. A. 03-30190, 2005 WL 3242358 at *6 (D. Mass. Nov. 10, 2005).[6] While not dispositive, "'dictionary definitions are relevant and sometimes persuasive' on the issue of genericness based upon the assumption that dictionary definitions usually reflect the public's perception of a word's meaning and its contemporary usage."[7] Retail Services Inc. v. Freebies Publishing, 364 F.3d 535, 810, 544-45 (4th Cir. 2004).

---

[5] The ultimate appellate decision in Anti-Monopoly, Inc. v. Gen. Mills Fun Group, Inc., 684 F.2d 1316 (9th Cir. 1982), that held the MONOPOLY® mark generic is both bad law and without any precedential value. The decision was almost universally condemned by trademark lawyers, see, e.g., 2 McCarthy on Trademarks and Unfair Competition, § 12:7 (describing the Anti-Monopoly decision as "bizarre and aberrational"), and the Court's rationale for its holding was expressly repudiated by Congress in a subsequent amendment to the federal trademark statute. See 15 U.S.C. § 1064(3) ("The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.").

[6] While MGA has cited a single dictionary reference to "memory," under the entry for "concentration," the dictionary cited was published in 1986 -- too early to be probative of the term's meaning in 2005, especially in the absence of any more contemporary entries.

[7] Many other courts have also emphasized the importance of dictionary entries in a determination of genericness. See, e.g., S.S. Kresge Co. v. United Factory Outlet, Inc., 598 F.2d 694, 696 (1st Cir. 1979) (basing finding of genericness on survey of "well-known dictionaries"); Murphy Bed Door Co., Inc. v. Interior Sleep Systems, Inc., 874 F.2d 95 (2d Cir. 1989) ("While dictionary definitions are not conclusive proof of a mark's generic nature, they are influential because they reflect the general public's perception of a mark's meaning and implication.");

### 2. MGA Has Not Submitted Evidence of Genericness Sufficient Rebut the Presumption that the Mark Remains Distinctive.

MGA acknowledges that "[t]o prove a term generic, one must show that to 'a substantial majority of the public,' the mark refers to a genus of product, rather than any specific product or brand." MGA Br. at 13 (quoting Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc., 874 F.2d 95, 101 (2d Cir. 1989)). That standard obviously calls for the person attacking the mark to submit a survey, which MGA has not done. See, e.g., Borinquen, 443 F.3d at 118 n. 4 ("The preferred form of proof" for an infringer challenging a trademark is "direct evidence (such as consumer surveys) suggesting that the average purchaser actually regards the mark as merely descriptive of the plaintiff's product."); Heroes Inc. v. The Boomer Esiason Hero's Foundation Inc., 43 U.S.P.Q.2d 1193 (D.D.C. 1997) (rejecting claim of genericness where challenger provided no consumer surveys and no dictionary definitions of the challenged term).[8]

Furthermore, a survey of contemporary dictionaries reveals no references to a "memory" game, but numerous references to "poker," "blackjack," and "old maid,"[9] thus belying MGA's claim that Hasbro's use of Memory "is akin to calling a blackjack card game 'Blackjack' or '21', a poker game 'Poker', or an Old Maid children's card game 'Old Maid.'" MGA Br. at 5.[10]

---

Gimix, Inc. v. JS & A Group, Inc., 699 F.2d 901 (7th Cir. 1983) (finding that a dictionary is "an especially appropriate source of evidence" in determinations of genericness).

[8] The relevant timeframe for assessing consumer perception is the date on which the accused infringer entered the market with the allegedly infringing designation. Nora Beverages, Inc. v. Perrier Group of America, Inc., 269 F.3d 114 (2d Cir. 2001).

[9] See, e.g., RANDOM HOUSE, WEBSTER'S COLLEGE DICTIONARY (2001) ("blackjack", "21", "poker", "old maid"; no reference to "memory" game under "memory" or "concentration"); OXFORD UNIVERSITY PRESS, THE OXFORD AMERICAN COLLEGE DICTIONARY (2001) ("blackjack", "21", "poker", "old maid"; no reference to "memory" game under "memory" or "concentration").

[10] MGA's attempt to elevate Google searches to legal status, MGA Br. at 8, have been rejected in the only court decision of which Hasbro is aware. See Pepper Patch, Inc. v. Bell Buckle Country Store, Inc., No. 305-0328, 2006 WL 2037560 at *2, 6 (M.D. Tenn. July 18, 2006) (rejecting claim of genericness where defendant's evidence consisted of internet search for

Ultimately, MGA falls far short of overcoming the strong presumption that a registered trademark is distinctive -- a presumption that takes on particular importance for a mark that was "first registered . . . nearly one-half century ago." O.C. White Co. v. Scientific Tech. Electronic Prods., Inc., No. Civ. A 03-30190, 2005 WL 3242358 at *6 (D. Mass. Nov. 10, 2005).

### C. That Hasbro Uses MEMORY® As an Adjective Modifying the Generic Word "Game" Shows the Distinctiveness of the Mark.

It is absurd for MGA to contend that the fact that Hasbro refers to "MEMORY® brand games" "ensur[es] that the term is purely generic or descriptive." MGA Br. at 22. Trademarks are ordinarily used as adjectives and not as nouns "'[C]onsidering that trademarks are ordinary commercial adjectives, not nouns, it is natural to have these terms precede the name by which the goods are known.'" McCarthy on Trademarks § 3:6 n.1 (quoting In re Ohmite Mfg. Co., 134 U.S.P.Q. 30 (T.T.A.B. 1962)).

## II. HASBRO HAS NOT ABANDONED ITS MARK.

Hasbro has not "utterly failed to police" its trademark. See MGA Br. at 16. It has sued and pursued infringers. In fact, as we will show at the hearing, Hasbro has stopped Mattel, Kellogg's, Sababa, and others from using the MEMORY trademark.[11]

A defendant trying to prove abandonment has a very high burden of proof. A mark is only deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use." 15 U.S.C. §1127. To prove that a mark has been abandoned through failure to police

---

term, which yielded "thousands of 'hits'"; "anecdotal evidence, in light of failure to introduce scientific survey evidence … [is] insufficient" for a finding of genericness). It is, at any rate, not unusual for a famous trademark to garner large amounts of "hits." A Google search of "Barbie" gets 61 million. Even Bratz, MGA's most successful toy, gets 17,900,000 hits on Google even though it has only been around for a few years.

[11] Throughout MGA's papers there are references to sales of Sababa's Angelina Ballerina Memory Game on the same shelves as the MEMORY game and the contention that this shows Hasbro's indifference to its mark. In, fact, Hasbro not only got Sababa to cease using the MEMORY mark, but also received compensation for past infringement. The Toys "R" Us infringement also ceased.

infringements, a challenger must provide "proof that the mark has lost all significance as an indication of origin. That is, the mark is completely without signs of life." Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1047 (4th Cir. 1984). This requirement would, again, generally require a survey.

The law does not require Hasbro to dissipate time and resources to prevent every infringement in order to retain its ability to sue a major infringer. Hasbro is entitled to pick and choose its battles. "The owner of a mark is not required to police every conceivably related use thereby needlessly reducing non-competing activity and encouraging litigation in order to protect a definable area of primary importance." V & S Vin & Spirit Aktiebolag (Publ) v. Absolute Publishing USA Inc., No. 05 Civ 4429, 2005 WL 3272828 at *4 (S.D.N.Y. Nov. 28, 2005) (internal quotation signals and citation omitted); Nabisco, Inc. v. PF Brands, Inc., 50 F. Supp. 2d 188, 203 (S.D.N.Y. 1999) (same); Playboy Enterprises, Inc. v. Checkleberry Publ'g, Inc., 486 F. Supp. 414, 422 (S.D.N.Y. 1980), aff'd, 687 F.2d 563 (2d Cir. 1982) (same).

In Playboy, the court approved the owner's decision to enforce its "right to protection against use of marks with the prefix 'play' in areas of direct competition, the areas most crucial to maintaining its mark's commercial value." 486 F. Supp. 422-23. Similarly, in V&S Vin & Spiriti, 2005 WL 3272828, at *4, the court concluded that the well-known mark used with vodka, Absolut, was not weakened by the owner's decision not to litigate against "the many other companies which use the word." The court was not concerned by the "common usage of the word 'absolute'" and noted that the focus should be on "areas of direct competition." Id. & n.1.

MGA points to a number of infringements being sold, but the only one that still appears on the store shelves next to the Hasbro game is Sababa's Angelina Ballerina Memory

game. As we will show at the hearing, Hasbro stopped that infringement and obtained compensation for it from Sababa.[12]

MGA makes the tired argument of the infringer who has gotten caught that the trademark owner is trying to stifle competition, MGA Br. at 2, but the trademark laws protect legitimate competition by preventing consumer confusion. The real answer to the question of why Hasbro has "attack[ed] MGA's use" is that its product is in the midst of Hasbro's on the shelves at Target, one of Hasbro's largest customers.

## III. THE PROTECTION OF THE REGISTRATIONS IS NOT LIMITED TO THE SPECIFIC GOODS DESCRIBED IN THE REGISTRATION.

MGA points to Hasbro's registrations as being for card games and appears to make the strange argument that Hasbro somehow disclaimed other goods or is limited to pursuing only an infringer using the mark for card games and not for a closely related good, such as MGA's MEMORY MATCH-UP™. MGA Br. at 4. "The remedies of an owner of a registered trade-mark … are not limited to the goods specified in the certificate but extend to any goods on which the use of an infringing mark is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods." Pure Foods v. Minute Maid Corp., 214 F.2d 792, 796 (5th Cir. 1954) (citation and internal quotation signals omitted). As a leading authority notes: "A contestable registration is prima facie evidence of the exclusive right to use only as to the goods specified in the registration. However, while the presumption of validity is limited, the remedies of the Lanham Act are not: they apply even though the infringing goods or services are not the same as those specified in the registration. McCarthy on Trademarks

12 MGA's Br. at 6 mentions a "*Dora the Explorer*-themed 'Memory Match' card-matching game from Cardinal Industries" but a search of that company's website shows no such game. Moreover, Toys "R" Us has stopped selling a "Memory" game under its Pavilion house mark.

§ 32:137 (citing Louis Rich, Inc. v. Horace W. Longacre, Inc., 423 F. Supp. 1327 (E.D. Pa. 1976)).

## IV. NON-PARTY REGISTRATIONS DO NOT CAST DOUBT ON THE VALIDITY OF HASBRO'S MARK, BUT INSTEAD SUPPORT IT.

### 1. Trademark Registrations Are Not Evidence Of Use.

"The significance of third-party trademarks depends wholly upon their usage." Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.), 544 F.2d 1167, 1173 (2d Cir. 1976). The Second Circuit's Scarves by Vera opinion reversed the district court's holding that plaintiff's mark was weakened by multiple third-party registrations that included plaintiff's mark "Vera" because defendant "introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers." Id. Third-party registrations are "not evidence of what happens in the marketplace or that customers are familiar with [the marks.]" Id. See also McGraw-Edison Co. v. Walt Disney Prods., 787 F.2d 1163, 1171 (7th Cir. 1986) (third party registrations of trademarks are material in determining the strength of the mark only to the extent that the similar marks are promoted by their owners or recognized by the consuming public); Callmann, Unfair Comp., Trademarks & Monopolies § 20.44, 270 (4th ed. 1983) ("A trademark which is found only in the records of the Patent and Trademark Office does not materially affect the distinctiveness of another's mark which is actively used in trade.").

### 2. Registrations of Other Marks for Games Containing "Memory" Show that It Can Be Inherently Distinctive.

MGA's argument that Hasbro's mark is weakened or proven generic by other federal registrations for games of the word "memory" in combination with one more or other names was rejected by the First Circuit's recent decision in Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112 (1st Cir. 2006):

> [Defendant] adduced considerable evidence of the successful registration of other marks including the word "rica." Although [Defendant] introduced this evidence in an apparent effort to show that Borinquen's mark is weak, it tends to undercut [Defendant]'s contention that the term is, as a matter of law, merely descriptive of Borinquen's product. After all, the [Trademark Office] requires an applicant to demonstrate that its mark is distinctive before it will approve a registration. See *15 U.S.C. § 1052(e).* Courts frequently have accorded weight to these kinds of [Trademark Office] determinations in evaluating whether a mark is descriptive or inherently distinctive. [citation omitted] Given the [Trademark Office]'s expertise in the field, we are inclined to do so here. To that extent, then, the [Trademark Office] 's acceptance of these other marks for registration supports the idea that "rica" can be an inherently distinctive term.

Id. at 119-20.

MGA's argument about the legal effect of the Trademark Office having registered other marks containing the word "memory" applies equally here. The Trademark Office's acceptance of other marks for games using the word "memory" shows that it can indeed be an inherently distinctive term.

**3. The Other Registrations Do Not Show That MEMORY MATCH-UP™ Is Not Likely To Cause Confusion.**

That Milton Bradley distinguished the pre-existing registration for a MEMORY LANE trademark in the process leading to the 1967 registration shows nothing about the ability of MEMORY® and MEMORY MATCH-UP™ to coexist. Such registrations as MEMORY LANE and MAKING MEMORIES TOGETHER have wholly different connotations from MEMORY alone, because they are evocative phrases that will have a different meaning to the public.[13] It is absurd to call those evocative phrases "*a composite name akin to that being used by MGA*." MGA Br. at 10 (emphasis in original).

[13] Mattel's MATCHIN' MIXIN' MEMORY FUN! also has a different connotation than MGA's mark and, at any rate, is not used as the trademark for a product but is instead used as a small tagline. Raygor Decl. Exhibit 5.12 at 672-673.

Related to this argument is MGA's attempt to exaggerate Hasbro's claim to make it look overreaching. Hasbro does not contend "that only it can use the word ["memory"] in connection with *any* game." MGA Br. at 2. Hasbro's claim is limited to use of that term as a trademark, and especially in connection with related products. Furthermore, as MGA points out, Hasbro has not attempted to interfere with use of "memory" as a composite phrase when the phrase itself has independent and quite different meaning, such as MEMORY LANE or MAKING MEMORIES TOGETHER.

## V. MGA IS USING MEMORY MATCH-UP™ AS A TRADEMARK.

MGA tries in numerous ways to assert that it is not using MEMORY MATCH-UP™ as a trademark, but none work. The simple fact of its having put the ™ after the name is enough to refute the argument that the name is used in a "purely descriptive" sense. MGA Br. at 3. The only reason to put a ™ is to put the world on notice of your claim to trademark rights.

The statements of its own witnesses confirm that MGA did indeed intend the two words to function as a trademark. MGA started out with names that included Marvel in them: MARVEL MATCH-UP, MARVEL MEMORY GAME, and MARVELOUS MARVEL MEMORY game. The proposed name was changed upon being informed that Marvel would not let MGA register a phrase that included its trademark. Zimmer Decl. ¶ 5. There would, of course, have been no need to change or to delete the Marvel part of the trademark if MGA did not intend the name it ultimately chose to function and be registered as a trademark.

## VI. MGA'S ATTEMPTS TO DISTINGUISH THE TYPE OF PRODUCT, THE CLASS OF PROSPECTIVE PURCHASERS, AND THE CHANNELS OF TRADE ARE ALL NONSENSE.

The core fact is that both parties' products are games for pre-school children that involve visual recall and matching. The importance of that fact to a finding of confusing

similarity is not minimized because Hasbro has usually (though not exclusively) used the mark for a game involving cards, while MGA uses three-dimensional figures.[14]

MGA does not dispute that its MEMORY MATCH-UP™ game is sold on the same shelves at most of the same stores as Hasbro's MEMORY® game. Nor does it dispute that the two products' channels of trade overlap almost completely. It simply makes the trivial, utterly irrelevant point that "MGA and Hasbro do not sell their products at ***all*** the same stores." MGA Br. at 28 (emphasis added). It then states the *non sequitur* that "even when they are sold together, MGA's packaging is distinctive." Id. This (a) has nothing to do with similarity of channels of trade but is instead directed to the similarity of the marks and (b) as to that point, is also wrong, as shown above.

MGA then notes that "the two sets of products are both age-rated for the children 3 and up," further notes that they will therefore be bought by those giving presents to the ultimate consumers, and then leaps to the unwarranted conclusion that those people (often parents) "will shop with care." MGA Br. at 28.[15] The New York case it cites, Original Appalachian Artworks, Inc. v. Blue Box Factory Ltd., 577 F. Supp. 625, 632 (S.D.N.Y. 1983), did not hold that parents "shop with care"; it credited testimony "that parents contemplating the purchase of a relatively expensive, highly-promoted doll shop with care in the self-help toy shops where most sales now occur."

---

[14] Furthermore, Hasbro has used the MEMORY® mark on a matching game that, like MEMORY MATCH-UP™, involves matching three-dimensional figures hidden beneath cups. At the hearing we will a game Hasbro sold from 1984 to 1988 called TWELVE TEEPEES MEMORY® game, which is a three-dimensional, molded plastic game that consists of a spinner board, three-dimensional playing pieces ("Indian pawns"), and cone-shaped cups ("teepees") that are placed over the Indian pawns and hide them from view during game play.

[15] At one point, MGA's brief tries to assert that its game "is primarily targeted to older children." MGA Br. at 4. This is unsubstantiated by any of MGA's many declarations and contradicted by an e-mail from MGA to Marvel stating that its game "is designed as a preschool game play item." MO 190.

None of this applies here. The MEMORY MATCH-UP™ is not relatively expensive, but in fact sells at the same low price (about $8) as Hasbro's game. It is not highly promoted; MGA represents it has not been advertised or promoted at all other than on its website. See MGA's Responses to Hasbro's Interrogatory No. 1(f) and (g), attached hereto as Exhibit A. And the two products are sold together in mass market retail stores.

At any rate, MGA does not dispute that the products are purchased by the general public, not consumers with specialized knowledge, in mass market stores, and that they are inexpensive impulse purchases (since MEMORY MATCH-UP™ is not advertised, it could not be anything but an impulse purchase). This is more than sufficient to establish that they are not likely to be purchased with care. See, e.g., Boston Athletic Association v. Sullivan, 867 F.2d 22, 30 (1st Cir. 1989) ("[i]nexpensive items, bought by the casual purchaser, are not likely to be bought with great care").

## VII. MGA'S PROTESTATIONS OF GOOD FAITH ARE NOT CREDIBLE AND, EVEN IF BELIEVED, DO NOT WEIGH AGAINST A FINDING OF INFRINGEMENT.

MGA's non-lawyer witnesses declaim at length that they were unaware of Hasbro's MEMORY® game. It is simply not credible for persons working for a major toy and game company, presumably sophisticated in the design of such products, to claim ignorance of a game of exactly the same genre that has been sold for forty years by their principal competitor. Indeed, Bo Lumabao claims to have looked "around in stores for any competing three-dimensional matching games" and to have found the Angelina Ballerina one that Hasbro recently stopped. Lumabao ¶ 6. Is it really conceivable that the most popular of all the matching games and the one next to which MGA's game would appear was not found?

This is made all the more implausible by MGA's own argument about mass market retailers' plan-o-grams, in which products are placed on a mock-up of a store shelf. If

MGA did indeed put its product in a Target plan-o-gram in summer 2005, Lumabao Decl. ¶ 12, how could its employees have missed the fact that the MGA game was to be placed in the midst of Hasbro's?

More importantly, however, there is a crucial piece of the puzzle ignored in the protestations of good faith: It is the corporation's good faith in going forward that matters, not whether any specific person was aware of Hasbro's product, and the corporation knew about Hasbro's MEMORY® game. MGA's legal department did a trademark search in August 2005 (before the company decided on the MEMORY MATCH-UP™ name), that, of course, turned up Hasbro's federal registrations for the MEMORY® trademark. Khare Decl. ¶¶ 3-6. MGA does not reveal why a search was conducted or what the advice was. The decision to go forward notwithstanding that knowledge, or even after Hasbro explicitly put MGA on notice of the infringement, is considered bad faith. See, e.g., Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 754 (2d Cir. 1996) (clear error, in analyzing bad faith evidence, not to consider defendant's continued unlawful use of mark after plaintiff had filed trademark infringement suit).

Finally, as a legal matter, good faith, even if believed, is of little avail to an infringer. "Under this circuit's precedents . . . this factor usually matters only where an alleged infringer copied a mark in bad faith; a converse finding of good faith carries 'little weight.'" Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F.3d 8, 19 (1st Cir. 2004).

## VIII. HASBRO HAS SHOWN IRREPARABLE HARM.

### A. Irreparable Harm Is Presumed in Trademark Infringement.

Although this circuit has a four-factor preliminary injunction standard, the Court of Appeals has made clear that in trademark cases the key is likelihood of success on the merits "because the resolution of the other three facts will depend in large part on whether the movant is

likely to succeed in establishing infringement." Borinquen, 443 F.3d at 115. More specifically, "irreparable harm can be assumed if a trademark holder demonstrates" likelihood of success on the merits. Id. (citing I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27. 33 (1st Cir. 1998)). MGA's contention that Hasbro must somehow specifically prove irreparable harm by evidence of lost sales, MGA Br. at 37, is clearly wrong.[16]

Ultimately, MGA implicitly accepts this undeniable legal principle and admits that it is really just rearguing the merits in arguing against irreparable harm. MGA Br. at 36, 38 (arguing no irreparable harm and no favorable balance of hardships because no likelihood of success on the merits). Its only other argument -- alleged unreasonable delay -- is, as shown below, factually and legally incorrect.

**B. No Unreasonable Delay Negates the Presumption of Irreparable Harm.**

**1. MGA's Delay Argument Fails on the Facts.**

MGA engages in speculation that Hasbro must somehow have known "no later than Summer 2005" that it was marketing the MEMORY MATCH-UP™ game and somehow converts the time from that vague, three-month-long period until April 19, 2006, to "almost a year later" when Hasbro contacted MGA to object. MGA Br. at 7. MGA admits that it did not even receive final approval from Marvel on its game until "late August 2005," Zimmer Decl. ¶ 7, and did not finish work on the product until late August or Fall 2005. Werner Decl. ¶ 6, Keossian Decl. ¶ 4. MGA did not finish its packaging until September 2005, so it did not start making the game until some unspecified time in Fall 2005. Keossian Decl. ¶ 8; Werner Decl. ¶ 11. Its witnesses are quite vague as to when the name for the game was chosen. See, e.g., Zimmer Decl. ¶ 7 (decided on the name "[s]ometime during the approval process"). At any time

---

[16] MGA's argument is also contradictory. On the one hand it contends that Hasbro should prove "past or future lost sales," but then contends that such losses would be compensable in money damages. MGA Br. at 37.

up until it shipped, therefore, the offending name could have been changed or the product not even sold.

Even if one accepts as true what MGA states, there was only a seven-month period (from the end of August 2005 to the beginning of April 2006) from the time Hasbro "should have known" of the infringement and notified MGA of its claim. But the earliest that MGA contends that the product was on the shelves was December 2005. Lumabao Decl. ¶ 11; Howard Decl. ¶ 2. That would make the alleged delay only four months.

At any rate, Hasbro immediately gave notice of its claim in April 2006 when it learned that MGA was selling the MEMORY MATCH-UP™ game. From April to the time Hasbro filed the motion, the parties were trying to settle the dispute. Time spent in settlement does not, of course, count in looking at delay. See, e.g., Sandra Edelman, Delay in Filing Preliminary Injunction Motions: Update 2002, 93 Trademark Rep. 647, 656 (2002) (courts have "consistently . . . accepted the explanation that a plaintiff delayed because it was attempting to negotiate a settlement").

**2. MGA Cites Inapplicable Second Circuit Law In Arguing Unreasonable Delay.**

Every case cited by MGA for the proposition that Hasbro unreasonably delayed in seeking a preliminary injunction and that the fact of delay alone is sufficient to deny the motion is from the Second Circuit. MGA Br. at 32-34.[17] It is well known among trademark lawyers and in general that the Second Circuit is aberrational in the very short time periods said to constitute unreasonable delay. See, e.g., S. Edelman, Delay in Filing Preliminary Injunction Motions: Update 2002. 92 Trademark Rep. 647, 650 (2002) (articulating two sets of general rules, one for cases within the Second Circuit and the other for cases in the rest of the federal circuits).

[17] The only case within the First Circuit cited by MGA is Fritz v. Arthur D. Little, Inc., 944 F. Supp. 95 (D. Mass. 1996), which involved a delay of at least two years.

The First Circuit simply does not require a plaintiff to move for a preliminary injunction within the space of a few months or risk its motion being denied. E.g., id. at 650 (outside Second Circuit "[a] delay of less than six months is usually considered acceptable," and "it is not uncommon to see preliminary injunction motions granted notwithstanding delays of eight to twelve months"); Boustany v. Boston Dental Group, Inc., 42 F. Supp. 2d 100 (D. Mass. 1999) (preliminary injunction granted notwithstanding delay of 8 months).

**IX. THE EQUITIES FAVOR A RECALL.**

The arguments made against the preliminary injunction are almost all directed against the recall, not the injunction itself. And the gist of the argument is that a recall should not be ordered because it might not perfectly succeed. For example, MGA "notes" that once its games leave China, the buyers own them. "Any recall or repackaging could therefore only be done *if* those buyers permit MGA to do so." MGA Br. at 40 (emphasis in original). If the buyers balk, then, of course, MGA will not have disobeyed the recall order, which only requires that it try to recall the product from retailers. The potential unwillingness of retailers to give back merchandise to a manufacturer, however, has never been a proper excuse for not trying.

MGA's arguments are almost entirely conclusory and lack any evidentiary support. It contends that the cost of complying with an injunction and recall order (again conflating the two) "could exceed hundreds of thousands of dollars," but no evidentiary support is cited. MGA Br. at 40.[18]

Nowhere does MGA present any facts about the cost of a preliminary injunction alone. Its witnesses confirm, however, how easy it would be (and always has been) for MGA to avoid infringement. Nothing in Hasbro's motion or in the litigation as a whole seeks to require

[18] MGA later cites Lumabao Decl. ¶ 17 and the entire Daniels Decl. for the contention that the cost of recall "could exceed hundreds of thousands of dollars," MGA Br. at 41, but there is no such quantification in either declaration.

MGA to change its product. All it has to do is change the name of it, which appears only on a cardboard sleeve cover to the carrying case, some stickers on the pieces, and the instruction manual. Daniels Decl. ¶ 5. MGA notes that it recently made a "running change" to add "3-D" to the product's name. MGA Br. at 3 n.2. Making a running change to delete the word "MEMORY" would have been easy enough to do in April when Hasbro first protested to MGA. That it may now be more expensive to do so immediately because of an injunction is entirely due to MGA's flouting of the trademark laws and hardly gives it the equitable high ground.

## Conclusion

For the reasons stated above, in its moving papers, and on the evidence to be presented at the hearing, Hasbro respectfully requests that a preliminary injunction and recall order be entered.

Dated: August 3, 2006

Respectfully submitted,

/s/ Jeffrey K. Techentin
Joseph Avanzato [#4774]
Jeffrey K. Techentin [# 6651]
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel. # (401) 274-7200
Fax # (401) 751-0604

and

Kim J. Landsman
Michael D. Sant'Ambrogio
Irene Choi
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222

Attorneys for Plaintiff Hasbro, Inc.

**CERTIFICATE OF SERVICE**

TO:

Brooks R. Magratten, Esq.
George E. Lieberman, Esq.
Vetter & White, Incorporated
20 Washington Place
Providence, RI 02903

Kim J. Landsman
Michael D. Sant'Ambrogio
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

I hereby certify that I filed the within Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for A Preliminary Injunction And Recall through the ECF system on the 3rd day of August, 2006, and that notice will be sent electronically to the above-named counsel who are registered participants identified on the Mailing Information for Case No. 06-262S. I further certify that I caused to be served the within Plaintiff's Reply Memorandum of Law in Further Support of Its Motion for A Preliminary Injunction And Recall on the following counsel on the 3rd day of August, 2006, by electronic mail.

Kent R. Raygor, Esq.
(kraygor@sheppardmullin.com)
Janene P. Bassett, Esq.
(jbassett@sheppardmullin.com)
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017

Irene Choi
(ichoi@pbwt.com)
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036-6710

/s/ Jeffrey K. Techentin____________

*389375_1*