# EXHIBIT A

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

July 7, 2006

***BY E-MAIL AND U.S. MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Jeffrey K. Techentin, Esq.
ADLER POLLOCK & SHEEHAN PC
2300 Financial Plaza
Providence, Rhode Island 02903

Re: Hasbro v. MGA; MGA v. Hasbro

Dear Kim and Jeffrey:

Further to the discussion that George Lieberman and I had with you Thursday afternoon, following is a proposed schedule for the preliminary injunction motion and expedited discovery by both parties. Because of the 4th of July holiday, the elements statement both parties have to file with the Court on July 11, the protective order we need to work up, and our having to travel to Rhode Island for the July 13 conference (which will take me out of commission for two full days), would you please agree that MGA can serve and file its opposition to Hasbro's PI motion by Monday, July 17 instead of Friday, July 14?

The schedule assumes that we will both be reasonable in limiting the scope of discovery to just what is needed for the injunction motion, that we will not have to engage in any motion to compel efforts, and that we will do what we can to get an early ruling from the Court:

| | |
|---|---|
| MGA serves written discovery requests on Hasbro | Friday, July 7 |
| The parties provide their elements statements to the Court | Tuesday, July 11 |
| Pre-trial conference before the Court | Thursday, July 13, 2:00 p.m. |
| The parties submit a protective order for confidential information | By Friday, July 14 |
| MGA files its opposition to Hasbro's injunction motion | Monday, July 17 |
| Objections to each other's written discovery requests served | Wednesday, July 19 |
| The parties serve responses to the written discovery | Friday, July 21 |
| The parties produce responsive documents for Monday delivery (July 24) | Friday, July 21 |
| Time window for taking depositions | Monday, July 24 – Friday, August 4 |
| The parties simultaneously file supplemental briefs, if needed | Tuesday, August 8 |
| Hearing on Hasbro's preliminary injunction motion | On or about Monday, August 14, subject to the Court's approval |

Some other housekeeping matters:

1. Any service of the above-identified documents should be by e-mail and/or next-business-day courier service, as appropriate and as previously agreed.

2. We have agreed that there is no need to depose each other's senior executives, at least for this initial round of expedited discovery.

3. Depositions should be taken by each party where the deponents reside. We assume that Hasbro's witnesses will all be in Rhode Island and we will depose them there. MGA's witnesses are all here in Los Angeles.

4. I spoke with Daphne Gronich about your desire for a single-tier stipulated protective order for confidential information (it goes to in-house and outside counsel, only, and not to any business people at our respective clients). Given the involvement of in-house counsel at both companies in many areas, MGA wants a second tier for very limited, confidential material, which would go to outside counsel only. We will look at your proposed protective order more closely today.

5. We are willing to allow discovery into MGA's clearance efforts for the game at issue in this action (they were done by in-house counsel) under limited conditions, as we discussed. You indicated that you generally are willing to agree to limit the scope of the waiver of the privilege in connection therewith to those specific clearance efforts relative to the name of MGA's product and that the waiver would not extend to any litigation-related communications or work product, but you wanted to think about it some more. MGA is not prepared to have the scope of the waiver extend to discussions and communications by counsel during the product development process or in connection with the development of packaging for the product *except* to the extent any such discussions specifically related to the placement and/or use of the name of the product.

6. We agreed not to exchange Rule 26(a)(1)(B), (C), and (D) initial disclosures at the present time, but agreed to reserve the right to ask each other for an exchange of Rule 26(a)(1)(A) witness lists some time in the future. We should include in that reservation the right to require the Rule 26(a)(1)(C) damages calculation.

7. We agreed to inform the Court that the parties have already tried to settle their dispute and that the preliminary injunction papers will adequately identify the facts and legal issues in dispute.

8. We agreed to work together to try to avoid any authentication issues.

I think that covers everything that the four of us discussed, but let me know if anything else comes to mind.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400031659.1

cc: George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: 310-228-3730
kraygor@sheppardmullin.com

July 21, 2006

Our File Number: 03FD-125329

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA – Expedited Discovery Scheduling

Dear Kim:

I was able to speak with Daphne Gronich, and got her comments on the proposed Stipulated Protective Order ("PO") and the discovery schedule. I will forward a revised proposed PO separately.

At this point, we were not able to pull MGA's documents together for an early production today. We can do it by next Friday, July 28, and might be able to do it earlier, subject to finalizing the PO. We also are finalizing MGA's responses to Hasbro's interrogatories and RFAs, but they are not ready to be delivered today. So here is what I suggest for a stipulation:

1. The parties exchange responses to each other's Rule 33 interrogatories, Rule 34 document requests, and Rule 36 requests for admission on Friday, July 28. The parties also produce documents responsive to the Rule 34 requests so they each have them in hand by no later than Friday, July 28.

2. Rule 30 depositions will be taken between August 1 and 18. We will need to tell each other by no later than, say, July 31 who we each want to depose so we can try to get those witnesses prepared and made available for the desired deposition dates, subject to work and vacation schedules.

3. We will collectively ask the Court to set the evidentiary hearing for some time on or following September 11, at its convenience. (Because it looks like we will collectively need three days for the hearing, it probably will not work during the week of September 5, September 4 being a holiday, my not being back from out of the country until September 3, and MGA having to bring its witnesses from California.)

4. If the Court asks for it, or a party requests it and the Court allows it, we can each file short post-hearing briefs or post-hearing findings of fact and conclusions of law.

5. If the parties elect to take the court up on its proposal of having an early trial on the merits, we would obviously need to discuss alternate scheduling.

Does this work for you?

Very truly yours,

Kent R. Raygor

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:LRI\400042226.1

cc: Jeffrey K. Techentin, Esq.
George E. Lieberman, Esq.
Janene P. Bassett, Esq.

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]
**Sent:** Monday, August 28, 2006 1:41 AM
**To:** Mike Daly; Beth Richmond
**Cc:** George Lieberman; Brooks Magratten; Janene Bassett; Daphne Gronich; gronich@aol.com; Sam Khare
**Subject:** FW: Hasbro v. MGA - Discovery Responses

---

**From:** Kent Raygor
**Sent:** Friday, July 28, 2006 3:37 PM
**To:** 'Landsman, Kim J. (x2980)'; 'mdsantambrogio@pbwt.com'
**Cc:** Techentin, Jeffrey; George Lieberman; Janene Bassett
**Subject:** Hasbro v. MGA - Discovery Responses

<<7.28 MGA Rog Responses.pdf>> <<7.28 MGA Doc. Req. Responses.pdf>> <<7.28 MGA RFA responses.pdf>>

Kim,

Attached are unsigned copies of our responses to Hasbro's written discovery. The originals have been served on Jeff Techentin. Some information and documents will be supplemented once the Protective Order is entered, as indicated in the responses. The following shows which documents are responsive to which document requests (as required by the last paragraph of Fed. R. Civ. P. 34(b)):

| Document Production Numbers | Produced In Response To Request Number |
|---|---|
| M4 | 2 |
| M190-268 | 3 |
| M1-3 | 4 |
| (*awaiting entry of PO*) | 5 |
| (*awaiting entry of PO*) | 6 |
| M5-M22 | 7 |
| M23-M189 | 8 |
| M23-M189 | 10 |
| (*awaiting entry of PO*) | 11 |
| (*awaiting entry of PO*) | 12 |

I have to provide a privilege log, which I will work up over the weekend and provide to you next week, along with color copies of the B&W documents we produced today.

Kent R. Raygor
Intellectual Property and Media Law

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]
**Sent:** Monday, August 28, 2006 1:43 AM
**To:** Mike Daly; Beth Richmond
**Cc:** George Lieberman; Brooks Magratten; Janene Bassett; Daphne Gronich; gronich@aol.com; Sam Khare
**Subject:** FW:

---

**From:** Kent Raygor
**Sent:** Monday, July 31, 2006 9:27 PM
**To:** 'Landsman, Kim J. (x2980)'
**Cc:** Techentin, Jeffrey; 'George Lieberman'; Janene Bassett; 'mdsantambrogio@pbwt.com'
**Subject:**

ATTACHMENTS CONTAIN MATERIAL DESIGNATED **CONFIDENTIAL - OUTSIDE COUNSEL ONLY** PURSUANT TO THE 07.31.06 CONFIDENTIALITY PROTECTIVE ORDER IN HASBRO V. MGA ENTERTAINMENT, U.S. DISTRICT COURT, DISTRICT OF RHODE ISLAND

Kim,

Now that the Confidentiality Protective Order has been entered, attached are the following:

1. MGA documents numbered M269-283 (designated CONFIDENTIAL - OUTSIDE COUNSEL ONLY);

2. MGA document numbered M284-287 (designated CONFIDENTIAL - OUTSIDE COUNSEL ONLY); and

3. Supplemental responses to Hasbro's interrogatories, which include the previously omitted confidential information. Documents numbered M269-283 are attached to these supplemental responses. The supplemental responses are designated or refer to something designated CONFIDENTIAL - OUTSIDE COUNSEL ONLY. I have placed those designated responses on separate pages so they are not on pages that contain material that is not designated under the Confidentiality Protective Order.

I will forward a verification for the supplemental responses to George Lieberman tomorrow (August 1) and then have George sign and serve these responses on you.

Kent R. Raygor
Intellectual Property and Media Law
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Phone: (310) 228-3700
Direct Phone: (310) 228-3730
Fax: (310) 228-3701
Direct Fax: (310) 228-3930
E-mail: kraygor@sheppardmullin.com

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 1, 2006

***BY E-MAIL AND U.S. MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA; MGA v. Hasbro

Dear Kim:

This letter responds to your July 31 and August 1 letters to me. With regard to your July 31 letter, it was sent to me via an e-mail from Michael Sant'Ambrogio of your office and was picked up by my spam filter, so I never saw it. I have cleared his address to ensure that I receive his e-mails in the future.

**1. DEPOSITION SCHEDULING.**

As I have previously requested of you, I need to know who you want to depose, and how much time you need with that person, so I can make arrangements for his or her attendance.

You state that it is "likely" that you will not depose MGA witnesses **David Oakes** and **Bill Howard**. I need your commitment. Are you then planning on deposing all of the following persons who submitted declarations: **Yuval Caspi, Courtney Werner, Alex Keossian, Kristen Zimmer, Bo Lumabao, Jeremy Anderson, Sam Khare, Nick Contreras,** and **Richard Daniels**?

I previously informed you, *on more than one occasion*, including when we were discussing scheduling with Judge Smith on July 13, that one or more witnesses might not be available when you wanted to depose them (recall that you were first proposing depositions during the week of July 31 and now want the week of August 7), and asked you to let me know as soon as possible whom you wish to depose and exactly when. Today's letter is the first formal notice I have received from you as to whom you are thinking of deposing and when. Note that Mr. Lumabao is not available next week. I will have to confirm with the others that they are still available in case you intend to depose all of them, but again please let me know exactly who you want and for how long.

We are not presently in a position to commit to deposing all of the necessary Hasbro employees and/or witnesses on just August 17 and 18 as proposed by you. We presently expect to depose **Paul Vanasse, Mark Stark**, and **Barry Nagler**. You have stated that Hasbro's documents will likely dissuade MGA from deposing Mr. Nagler. I have reviewed them. They do not. We also intend to serve a Rule 30(b)(6) notice concerning some of the matters mentioned in Hasbro's motion and discovery responses, and in particular Hasbro's communications with third parties, including Marvel, about this dispute and Hasbro's knowledge through Hasbro's Target and Wal-Mart category managers, or similar such employees, of MGA's game. We also will likely want to depose several witnesses mentioned in Hasbro's discovery responses served on July 28, including, but not limited to, **Jason Eastman, Darrell Merino, Robert Ellis, Cathy Meredith, Eric Nyman**, and **Jill Hambley**. Once we see Hasbro's reply papers, we will be in a position to let you know exactly who we will depose. Hasbro and its counsel should make plans to be available for depositions during the week of August 14-18, or during the week of August 7-11 for deposition at the same time that Hasbro is deposing MGA's witnesses, or both.

2. **DEPOSITION LOCATION.**

To ensure maximum efficiency and the least disruption to the witnesses, I offer you the use of our offices in Century City. MGA's offices are about 30 to 40 minutes away so witnesses can be on call and then get here somewhat readily. There also are a couple of good hotels a block from us. If you have a relationship with another firm you would prefer to use, I urge you to use someone in Century City. Conducting the depositions in downtown Los Angeles could add an hour to the commute for the witnesses. I will have our witnesses on call so that as soon as one deposition is over, we can immediately start the next one without any delay. Depending on how long you take with a witness, we then can try to go through several in a day.

3. **YOUR STATEMENT THAT YOU INTEND TO DEPOSE ME.**

You state that you intend to depose me. That appears to be nothing more than a harassment tactic. Please state exactly what you intend to depose me about so we can decide whether we need to seek the Court's intervention.

I suggest that you and I should not be taking each other's depositions in this case. If the purpose of your threatened deposition is to explore the authenticity of the extensive evidence of third-party use of the term "memory" that MGA submitted in opposition to Hasbro's motion for a preliminary injunction, we have now asked you on several occasions to work with us to avoid having to produce the myriad witnesses who acquired all of that evidence. Recall also that Judge Smith stated during our July 13 conference that he expected counsel to work out between them any authentication issues. There is no need for you to depose me or for me to depose you in order to authenticate each other's documents and tangible items, and I am quite

certain that Judge Smith will not be pleased at having to rule on a motion for a protective order for such matters.

**4. <u>CONFIDENTIALITY DESIGNATIONS</u>.**

The designations on the four documents that we produced to you yesterday after entry of the Confidentiality Protective Order meet the standard set forth in Paragraph 2 of that Order:

> "Any party to this action . . . may designate more limited types of Discovery Materials as "CONFIDENTIAL – OUTSIDE COUNSEL ONLY" if they: (a) satisfy the requirements for a confidentiality designation set forth in Paragraph 1, above, and (b) contain or constitute confidential information that is especially sensitive such that, given its nature, if disclosed to inside counsel . . . could reasonably surrender a competitive advantage, disclose trade secrets, or foster a competitive disadvantage, including, but not limited to, disclosing confidential licensing agreement terms and the parties' negotiations with Marvel. "

Those four documents are the only documents we have designated confidential in this matter to date. They contain information concerning the volume of sales of MGA's game, MGA's customers for that game, MGA's customers' sales data for the game, projections for future shipments of the game, and information about future product being developed by MGA.

**5. <u>MGA'S DOCUMENT PRODUCTION</u>.**

Despite your repeated characterization of MGA's document production as "meager," MGA has produced what Hasbro asked for, subject to our agreement to limit the scope of the expedited discovery to issues of liability and non-infringement and/or MGA's defenses, as opposed to damages, which would be addressed later (if and when the issue is reached). It is not MGA's fault if Hasbro now wished it had asked for more than it did or had framed its requests better.

Contrary to the suggestion in your letter, there is far more than "only a single email concerning the conception and selection of the name of MGA's Memory Match-Up game". As MGA stated in its responses, there are additional responsive documents, but they are privileged and we are producing a privilege log for them.

You have changed your position several times concerning these privileged documents. Recall that it is Hasbro that asked MGA to produce them in discovery. But now that it appears to you that, as you said in our July 24 conversation, the documents you asked for might actually be helpful to MGA, you apparently no longer want to see them unless MGA waives any and all privilege and work product protection. I have discussed with you *on several*

*occasions* our request for a stipulated agreement on the scope of the waiver that would flow from producing these documents, including in our first conversation about Hasbro's injunction papers and request for expedited discovery on July 6. You initially stated that you could agree to a subject matter limitation focused on MGA's clearance efforts for the game that is the subject of this lawsuit. Now you state that you want to see the subject documents *before* you will agree to *any* limitation. Furthermore, while you initially stated that you could agree that any waiver would not extend to any communications or work product after the initial cease-and-desist communication from Hasbro in this case, sent on April 19, 2006, you now want all such communications and work product logged and will not agree to *any* limitation until you first see the privileged communications. And even then, you are not willing to commit to any actual agreement! That is an unreasonable position. Showing you the documents before working out such an agreement would necessarily waive the privilege. Therefore, we now have to log the privileged communications, object at the deposition of Mr. Khare (MGA's in-house counsel who was involved in the clearance work concerning the name) and instruct him not to answer if you ask questions directed at privileged communications, object at the depositions of others involved in those communications and instruct them not to answer, and then seek a ruling from the Court allowing disclosure of these communications—that Hasbro itself requested in discovery—under appropriate subject matter and temporal limitations. Your decision in this regard will unnecessarily prolong the depositions and the proceedings and is designed to impede, rather than facilitate, the Court's review of these issues.

With regard to the Marvel Style Guide, we are not permitted by Marvel to copy it for you, *and none of your document requests, including Document Request No. 3, asked for it in any event*. We note that Hasbro's license with Marvel, posted online with Hasbro's SEC filings, references Marvel's Style Guide and we are informed that Marvel sends it to all of its licensees, so we do not see why you would need to see another copy when you can get it from your client. In any event, even though we are not at liberty to copy it for you, if you want to see the Style Guide that MGA received from Marvel to ensure that it is the same as the one Marvel gave to Hasbro, I can show it to you in my office, under a CONFIDENTIAL designation, when you are here for depositions.

With regard to MGA's license agreement with Marvel, again, *none of your document requests, including Document Request No. 3, asked for it*. It is a standard form agreement prepared by Marvel. We can produce those portions of the agreement that concern approvals and use of the Style Guide, under the Confidential - Outside Counsel Only restriction, but are not at liberty to copy more of it for you, and we do not rely on such other portions in any event.

**6. <u>DOCUMENT REQUEST NO. 10</u>.**

The documents that MGA produced in response to Hasbro's Document Request No. 8 show extensive current and historical use of the word "Memory" to refer to the classic

card-matching game. As shown in those documents, the "Memory" name for that classic game *predates Hasbro's decision to also use it to refer to Hasbro's card-matching game.* It is that historical, classic pre-Hasbro Memory game to which MGA's website text referred at one time. Therefore, the documents responsive to Hasbro's Request No. 8 are also responsive to Hasbro's Request No. 10. Any decision to refer to the classic, historical card-matching "Memory" game, which predated Hasbro's first use, is supported by those documents showing extensive third-party use of "Memory" to refer to the classic children's card-matching game. No amount of use by Hasbro will be sufficient to wrest that term from the public's ownership of it for the classic card-matching game. *There are no other documents concerning MGA's decision to use that generic, descriptive phrase to refer to the classic, historical card-matching game.*

**7. <u>SUPPLEMENTATION OF INTERROGATORY NO. 6</u>.**

We will provide a supplemental response concerning the cost of the threatened recall. Rich Daniels, who is providing the information, is on vacation this week. It will be provided before you take his deposition.

**8. <u>PRIVILEGE LOGS</u>.**

Here is another example of where you have changed your position. You earlier agreed with me (during our July 6 conversation) that it made sense for neither of us to have to provide privilege logs for attorney-client communications and attorney work product following the initial cease-and-desist demand from Hasbro to MGA that occurred on April 19, 2006. Now it appears that you have changed your mind. You now want both of us to log the myriad conversations and communications with our respective clients, as well as all of our respective clients' work product, concerning this case. That is unreasonable and unduly burdensome. Please explain the rationale for demanding such logs so we can decide whether it will be necessary to seek the Court's intervention. Additionally, if you are going to maintain this position, we will expect you to include in Hasbro's log (until the Court rules on the issue), *all* communications regarding the information MGA has produced to Hasbro concerning third-party uses of "memory", and all related communications between you and Hasbro concerning what steps you and Hasbro may be taking as a result of MGA's discovery responses and allegations of, among other things, abandonment and lack of enforcement of Hasbro's marks.

**9. <u>DELAY</u>.**

You now on several occasions have written self-serving statements to me complaining about alleged delays and alleged position-changing by MGA. I will not outline here all of the delays and changes of position you have made in your communications with me. I have previously written to you about some of them. But you have to bear a lot of responsibility for any delays and have to accept that your position on many items discussed by us is a continual moving target.

For example, in addition to the changes of position outlined above, we proposed using the form of a protective order *that both Hasbro and Judge Smith, as well as your local Rhode Island counsel and MGA's local Rhode Island counsel, had already approved in another case*. You even warned us (on July 11) *not* to use that protective order (entered in the *Mikohn* case) and demanded that we instead use your form, most of which then had to be rewritten, and which did not even comply with the Rhode Island Court's Local Rules and which contained many definitional and other ambiguities. You then further delayed the entry of that order to fight over whether a phrase I had included that simply confirmed that confidential information should not be provided to persons not permitted by the protective order to see it, should be taken out. You then took additional time to fight over whether expert witnesses' employees and copy services' employees should be asked to sign a statement that they agree to be bound by the protective order.

Your July 28 responses to MGA's discovery also evidences your intent to delay, if not outright interfere with, MGA's ability to defend itself against Hasbro's motion for an injunction and recall. Despite your earlier agreement that you would respond to MGA's expedited discovery in good faith, it appears that you no longer feel bound by that obligation.

For example, in Hasbro's moving papers it relies on "[a] survey conducted in 2002 [that] found that sixty-three percent of households with children below the age of thirteen were aware of the Original MEMORY® game." STARK DECLARATION, ¶ 26. We therefore asked you to produce it. You did, but redacted almost everything in it. Out of a 151-page report, you redacted 112 pages, essentially leaving in the cover, some chapter title pages, and some definitional pages. How is that meeting your discovery obligations in good faith?

In another example, we propounded the following requests for admission:

<u>REQUEST FOR ADMISSION NO. 24</u>:
Admit that PERSONS other than YOU are currently using, without YOUR authorization, the term "memory" in connection with a card-matching game.

<u>REQUEST FOR ADMISSION NO. 25</u>:
Admit that PERSONS other than YOU are currently using, without YOUR authorization, the term "memory" in connection with a game that requires the player to try to match a pair of identical images.

<u>REQUEST FOR ADMISSION NO. 26</u>:
Admit that PERSONS other than YOU and MGA are currently using, without YOUR authorization, the term "memory" in connection with a toy.

> REQUEST FOR ADMISSION NO. 27:
> Admit that PERSONS other than YOU are currently using, without YOUR authorization, the term "memory" as the name or as part of the name for a card-matching game.
>
> REQUEST FOR ADMISSION NO. 28:
> Admit that PERSONS other than YOU are currently using, without YOUR authorization, the term "memory" as the name or as part of the name for a game that requires the player to try to match a pair of identical images.
>
> REQUEST FOR ADMISSION NO. 29:
> Admit that PERSONS other than YOU and MGA are currently using, without YOUR authorization, the term "memory" as the name or as part of the name for a toy.

In response to *each* request, you stated:

> "Hasbro lacks knowledge or information sufficient to admit or deny this request."

*First*, that response fails to comply with the Federal Rules. FED. R. CIV. P. 36 requires the following response:

> "An answering party may not give lack of information or knowledge as a reason for failure to admit or deny *unless the party states that the party has made reasonable inquiry and that the information known or readily available by the party is insufficient to enable the party to admit or deny*."

(Emphasis added.) *Second*, how can you credibly take that position in light of all the evidence of third-party games using the term "memory" that we have supplied to you, and which seems to have given you an opportunity to send out at least one recent cease-and-desist letter? A simple Internet search, or even of toy stores within just a few blocks of your office, will show *many* uses of the word "memory" in connection with card-matching games. How can Hasbro itself state in its preliminary injunction and recall motion that it assiduously polices third-party use of "memory" in the face of all of this evidence? How can you take this position when the very documents that you produced with your responses to these requests for admission show that you have recently sent cease-and-desist demands on behalf of Hasbro? In fact, you even produced a June 29, 2006 letter from your own firm to Briarpatch, a games manufacturer, demanding that it cease using "Memory" on an I SPY MEMORY GAME, a card-matching game.

In another example, we asked the following in MGA's Request for Admission No. 32:

> "Admit that PERSONS other than YOU have obtained registrations from the United States Patent and Trademark Office ('USPTO') for the use of a trademark or service mark that contains the term 'memory' in connection with a game."

Hasbro's response was: "Admitted." How is that answer consistent with your professed inability to admit or deny the other requests quoted above? You are a trademark specialist. You and Hasbro, which has an in-house trademark group, can look at the online and archived USPTO records and see specimens and statements of use supporting each such registration. You also can conduct a simple Internet search, as we did, to confirm that the products described in those registrations are being marketed. MGA provided you and Hasbro with hundreds of pages of evidence giving you the "knowledge and information" sufficient to be able to investigate and properly respond to the above-quoted requests for admission.

I will not take the time to go further with outlining everything showing your delays and your changes of position. If, however, you continue to put self-serving statements in your communications with me that try to make it look like it is MGA, and not Hasbro, that is guilty of delays and changes in position, we will make a full and complete record that will rebut such statements and will present it to the Court if and when necessary. I suggest that engaging in such efforts, on either side, is not productive for a resolution of the substance of our respective clients' concerns and that we should instead focus on more productive communications.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400045459.2

cc: Jeffrey K. Techentin, Esq.
George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 3, 2006

***BY E-MAIL AND U.S. MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA; MGA v. Hasbro

Dear Kim:

This letter responds to your August 2 letter to me, which responded to my August 1 letter to you, our August 2 telephone conversation, and your August 2 e-mail to me purporting to confirm that conversation.

**1. DEPONENTS.**

Contrary to your letter, we have *not* "[f]rom the beginning [] agreed to depose the witnesses who submitted declarations and would therefore be part of the hearing". Even if that was our agreement (which it was not), I note that you do not state that we agreed that *only* such persons would be deposed. You and I have always contemplated deposing persons who might not be used as declarants or affiants in the parties' written submissions to the Court. You and I also have discussed our mutual intention to leave open the possibility of deposing such other persons. You and I on several occasions have spoken about MGA's intention to depose Barry Nagler, and you have never maintained that his deposition is not *permitted*. You have only stated that, once I saw Hasbro's documents, I would not *want* to depose him. As you know, I still want to depose him, including about the affidavit he signed in support of the 2003 registration that MGA contends is invalid and that MGA has asserted is being improperly relied upon by Hasbro as "proof" of its alleged exclusive rights. Hasbro is relying upon the 2003 registration in its preliminary injunction motion and MGA is entitled to depose Mr. Nagler about the papers he filed in support of the application.

During our July 6 discussion, you and I addressed deposing each other's witnesses, *as well as other persons that the parties believe might have pertinent information, even if not disclosed in declarations or affidavits.* You stated that after seeing our opposition papers, you might want to depose MGA's witnesses whom you believe had relevant knowledge and that MGA might not have disclosed. That led to an agreement that we would not take "apex" depositions of each other's senior executives who had no involvement with the

trademarks or games at issue (we expressly discussed Isaac Larian of MGA and Al Verrechia of Hasbro as falling within that category). I confirmed this in my July 7 letter to you.

On July 11, you wrote to me. Your August 2 letter, however, now mischaracterizes what you wrote in your July 11 letter. Your July 11 letter stated:

> "As discussed last week, the parties will take the depositions of the witnesses that the adverse party intends to bring to the hearing, *with the possibility of a deposition [*sic*] one or more additional witnesses if the opposing party thinks it necessary to depose someone else with pertinent knowledge*."

(Emphasis added.) The italicized text shows that you acknowledged that the parties may depose persons who might not be declarants or witnesses at the evidentiary hearing, but who might have pertinent knowledge of the matters that will be the subject of that hearing.

I then wrote to you on July 21 about depositions, generally. You responded in a July 24 letter, in which you *again* confirmed that persons other than declarants may be deposed. In fact, you asked me to let you know "if there is a declarant you do not want to depose *and if there is anyone else you do*." (Emphasis added.)

Finally, it was always contemplated by both of us that we would be conducting mutual expedited discovery directed at matters raised by Hasbro's preliminary injunction motion and MGA's response thereto. On July 28, Hasbro responded to MGA's written discovery and identified additional people (**Jason Eastman, Darrell Merino, Robert Ellis, Cathy Meredith, Brian Goldner**, **Eric Nyman,** and **Jill Hambley**) who have pertinent knowledge of the matters at issue in the motion. Hasbro's documents disclose other potential witnesses. Even if Hasbro elected not to provide declarations from these Hasbro employees and has no present plans to have them testify at the hearing, MGA is entitled to present its defense to Hasbro's motion, MGA does not have to rely on just whom Hasbro elects to present, and MGA can present these and other employees of Hasbro as adverse witnesses at the hearing, if it chooses. In order to make that decision, MGA may need to depose them first to learn what the scope of their knowledge is. (Please note that in deference to his position, MGA did not suggest that it might wish to depose Mr. Goldner at this time.)

## 2. <u>DEPOSITIONS OF MGA EMPLOYEES</u>.

We will make arrangements to have MGA employees **Yuval Caspi**, **Courtney Werner**, **Alex Keossian, Kristen Zimmer**, **Jeremy Anderson**, **Sam Khare**, **Nick Contreras**, and **Richard Daniels** available for deposition by you next week in Los Angeles. Your August 2 letter confirms that you do not expect any deposition to last more than about three hours, and that we can sequence them so that another witness is brought in as soon as you are done with one. I will let you know when Mr. Lumabao will be available.

You and I have confirmed that you will depose MGA's employees in my office in Century City. We will set aside a conference room and office for you. We will provide a high-speed line for your temporary office. You may send your documents to yourself, care of me at my office, and we will leave them sealed and unopened for your arrival.

**3. DEPOSITIONS OF HASBRO EMPLOYEES.**

Once we analyze Hasbro's reply papers, that are being served and filed today, we will let you know whom we intend to depose. Yes, we will depose Messrs. Vanasse and Stark on August 17 and 18. We might be able to do others on those days, but will likely also need you to make August 14-16 available for other witnesses. While you have indicated that you are not available on those three days, one of your co-counsel—Messrs. Sant'Ambrogio, Avanzato or Techentin or Ms. Choi—could defend them.

With respect to your statement to me yesterday about Mr. Stark's absence during the week of September 11, unfortunately his declaration is the key declaration that Hasbro submits in support of its injunction motion so he is going to have to appear. We note that Hasbro's July 28 letter to Judge Smith, *in which Hasbro asked that the hearing take place during the week of September 11*, did not mention anything about Hasbro's key witness not being available that week. You are the one who requested the date—MGA should not be penalized by your chief witness being unavailable for cross-examination. Hopefully, we can get him off the stand on the first day, so he can go on his anniversary trip, but we will expect him to be there if the hearing indeed proceeds on September 11.

Incidentally, the written scheduling proposal that you gave to George Lieberman before the July 13 conference with Judge Smith proposed two *to three* days for the evidentiary hearing. *See* the attachment to your July 19 e-mail to me.

**4. AUTHENTICATION OF DOCUMENTS AND TANGIBLE THINGS.**

On several occasions, we have tried to get you to address evidence authentication issues. We even discussed this in front of Judge Smith on July 13 after our prior discussions. He told us that he expected counsel to work out any authentication issues themselves.

To recap: During my July 6 conference with you, you and I discussed authentication of the evidence to be submitted by the parties. You agreed to work with me to handle authentication before the evidentiary hearing so we would not have to burden the Judge with it. I confirmed that in my July 7 letter to you, in which I stated: "We agreed to work together to try to avoid any authentication issues." You responded in a July 11 letter to me: "As to the 'housekeeping matters' on page 2 of your letter, we are generally in agreement, with the

following exceptions . . . ." *None* of your exceptions disputed our agreement to work together on authentication issues.

MGA submitted a statement to the Court with MGA's opposition papers in which it reiterated our obligation to work out any authentication issues:

> "As part of MGA's search for evidence of third-party use of the terms 'memory' or 'memory game', as well as use (or lack thereof) by Hasbro, lead counsel for MGA (Kent R. Raygor, who submits the attached declaration) supervised, or conducted himself, searches of various retail store locations, the Internet, libraries, U.S. Patent and Trademark Office records, and other locations for such evidence. Mr. Raygor supervised approximately 15-20 lawyers, paralegals, and staff for his firm, MGA's Rhode Island firm, and MGA who participated in these searches. In order to avoid having to inundate the Court with 15-20 declarations directed at authentication and related evidentiary issues concerning all of the evidence collected, all of which was publicly available but widely dispersed, MGA is hopeful that it can negotiate a stipulation with Hasbro's counsel directed at stipulating to authentication, foundation, and best evidence exceptions for this evidence. In the event that MGA is unable to obtain Hasbro's stipulation concerning these evidentiary matters, and if the Court so desires or Hasbro demands, MGA will submit the appropriate evidentiary declarations from everyone involved in the above-described searches. MGA is confident, however, that Hasbro's counsel will not require such a showing for what should be non-controversial matters.
>
> In the interim, MGA hereby provides the declaration of its lead counsel concerning the documents found as a result of these searches."

To date, however, you are refusing to cooperate in that effort.

We will have the original games, books, and other items, photocopies of which were submitted to the Court with MGA's opposition papers, as well as others that we have acquired in the interim, available for your inspection and copying in my offices next week when you are here for the depositions of MGA's employees. We again ask you to work with us to streamline the admission of this evidence. *There can be no genuine argument by Hasbro as to the authenticity of any of this publicly available evidence, all of which Hasbro, you, and any other of Hasbro's counsel could go out and buy, find, or read.*

## 5. <u>YOUR THREAT TO DEPOSE ME.</u>

No good deed goes unpunished in our dealings with you. In order to avoid having to subject the Court to the submission of testimony and declarations from 15 to 20 people to authenticate all of the publicly available games, books, website content, toys, and articles that

MGA submitted in opposition to Hasbro's motion and with its request for judicial notice, and to avoid having to force you to examine them at the evidentiary hearing and at depositions, *and in reliance on our agreement to work together to solve any authentication issues*, I provided a declaration that indexed all of that publicly available evidence, merely for the convenience of the court, never suspecting that you would then use that as a hook to try to harass MGA by taking my deposition. I could have had others—who had equal, if not greater, knowledge of the day-to-day efforts to collect this evidence—index that material, but expected you to honor our agreement and work with me on any evidentiary issues.

In your August 2 letter, you state:

> "The reason we plan to take your deposition is simply because you submitted a declaration on the merits (not on procedural issues). I have not submitted a declaration and do not plan to be a witness at the hearing."

You make three errors in your statement. *First*, my declaration was on procedural matters, not on the merits. It was merely an index of publicly available information, the authentication of which you had agreed to work out with me. *Second*, I, too, do not plan to be a witness at the hearing. I am confident that Judge Smith is not going make me sit on the stand to authenticate all of this publicly available evidence. And what do you expect to learn from deposing me, in any event? Do you really think that any of that evidence was manufactured, that someone created out of whole cloth books from the 1950s to make them look like they were in a library, or created out of whole cloth games distributed by third parties and then snuck them into toy stores, put them on shelves, and then pretended to buy them in order to try to fool you? *Third*, should I be deposing you about what you have done, or failed to do, on behalf of Hasbro in policing (or failing to police) its "Memory" marks? I see your name on the few opposition proceedings that Hasbro has filed, in the few cease and desist demands made by Hasbro, and in the one lawsuit that Hasbro has filed, all of which shows what you have done in that regard. Given that these acts or omissions on your part go to the merits of MGA's defenses, MGA would certainly be entitled to inquire what you have not done in connection with such policing efforts cited by Hasbro. We have not sought your deposition, and I urge you to focus on more productive efforts than pursuing mine.

So I have the following 5 alternatives for you, each of which will require Hasbro to bear the costs associated with your refusal to work out this authentication issue:

a. We will make the 15 or 20 witnesses who can first-hand authenticate all of the publicly available evidence MGA submitted available for your examination during the evidentiary hearing. You will pay the costs for all of their travel to and stay in Providence, and the attorneys' fees and costs incurred in getting them ready for and conducting their examinations.

b. We will provide declarations from all of those 15 to 20 witnesses to authenticate all of that evidence, and you then will stipulate to authenticity and foundation. You will pay the attorneys' fees and costs incurred in putting all of that together.

c. We will make those 15 to 20 witnesses available for deposition to authenticate all of that evidence, and you then will stipulate to authenticity and foundation. You will pay the attorneys' fees and costs incurred in preparing them for and defending them at their depositions.

d. We will substitute my declaration with a declaration from someone else who is equally or more knowledgeable than I about all of the evidence indexed in my declaration, but who is not lead counsel for MGA, and you can depose that person.

e. You will examine the games, books, and other items we will make available next week in my offices for your inspection, and will conduct your own Internet searches for the website content evidence that we submitted to you (which evidence also contained the addresses of the websites from which the materials were taken), and then, if you have any genuine concerns about the authenticity of any of that evidence, we will discuss how to resolve those concerns, as you and I agreed to do, either through an affidavit, declaration, deposition, or testimony in court from the appropriate person or persons.

Please let me know how you want to proceed. If you are reneging on our agreement and still want my deposition, you will need a Court order.

6. **<u>YOUR PURPORTED "CONFIRMATION" E-MAIL</u>.**

There are several mistakes in your August 2 e-mail to me, including the following:

a. I did *not* state that we would make the Marvel Style Guide MGA has available as an exhibit for the depositions. I said that we would make it available for your inspection at my office, but that we are *not* at liberty to give it to you. I said that we would need Marvel's approval to give this Confidential material to you, and that I would try to get that approval.

b. You did *not* inform me that Mr. Nagler was Hasbro's General Counsel. Until your e-mail to me, I had no idea who Hasbro's General Counsel is (or if there is, indeed, only one). You merely told me that Mr. Nagler was

a Hasbro Senior Vice President. As to our earlier agreement concerning "apex" depositions, that agreement concerned executives who had nothing to do with the games or trademarks at issue in this lawsuit, which category to date looks like it includes Al Verecchia and Isaac Larian. Mr. Nagler, however, was personally involved with obtaining at least one of the trademarks that Hasbro is prosecuting in this lawsuit and his sworn statement to the USPTO, which MGA quoted in its counterclaim and opposition to the preliminary injunction, formed the basis of the application that ultimately matured into the registration at issue.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400050237.1

cc: Jeffrey K. Techentin, Esq.
George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 3, 2006

***BY E-MAIL AND U.S. MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA; MGA v. Hasbro

Dear Mr. Landsman:

This letter responds to your August 3 letter to me, which responded to the August 2 telephone discussion you and I had.

**1. YOUR PURPORTED "CONFIRMING" E MAIL.**

As stated in my earlier letter to you from today, your August 2 e-mail misstated several items, and did not, in fact, confirm our conversation.

**2. DEPOSITIONS OF MGA EMPLOYEES.**

Contrary to the second paragraph in your most recent letter, you did *not* state your preferred order of the depositions in our August 2 conversation. You did not state anything about the order of the witnesses you want to depose. You acknowledged that I would have to work with the witnesses based on their availability. We have tentatively arranged for the witnesses to be available in the following order due to a variety of commitments, although it could still change. We cannot lock in a couple of people due to current and upcoming vacations precluding us from coordinating them all, and we are still trying to confirm whether Mr. Lumabao can be made available at the end of his vacation, so that the depositions of all MGA personnel could be concluded next week:

| | |
|---|---|
| Tuesday, August 8: | Yuval Caspi<br>Courtney Werner |
| Wednesday, August 9: | Alex Kossian<br>Kristen Zimmer |
| Thursday, August 10: | Jeremy Anderson<br>Rich Daniels |

Friday, August 11: Bo Lumabao
Nick Contreras
Sam Khare

Depending on how the depositions on Tuesday, Wednesday, and Thursday proceed, we might be able to move Sam Khare up to follow one of the other depositions, or may be able to have another of the other witnesses available to step in should you conclude any witnesses more quickly than anticipated. Given that people have on-going business obligations during the week, including tentative out-of-town commitments, their schedules cannot all be flexible or interchanged.

Contrary to your letter, you did *not* state anything about any deposition perhaps taking more than three hours. You stated that you expected *all* of them to take no longer than three hours.

With regard to my deposition, I wrote to you about that separately earlier today, and provided you with several alternatives. I will not reiterate them here.

3. **YOUR SUBSTITUTION OF A HASBRO WITNESS.**

You state that you are going to substitute Hasbro employee Jill Hambley in place of Hasbro employee Mark Stark for both the evidentiary hearing and the deposition of Mark Stark. You have not stated that you are withdrawing Mr. Stark's declaration, so apparently you still intend to rely it. He is Hasbro's key witness, and he will have to be deposed and then appear at the hearing. As stated in my August 3 letter to you, we should be able to complete his testimony on September 11 and he can then go on his trip. If you plan to also have Ms. Hambley testify at the evidentiary hearing, we will depose her as well, *but we are not waiving our right to also depose Mr. Stark, Hasbro's primary declarant in support of its motion for preliminary injunction against my client.*

4. **PRIVILEGE LOGS.**

Provide yours. We will provide ours.

I do not understand your argument on Page 2 of your letter. To begin with, you state that "The only justification for . . . distinction" ["between inside and outside counsel in connection with the protective order governing confidential information"] "is inside counsel's role in competitive decision-making". You also state that "We specifically created the Outside Counsel Only designation to deal with Marvel-related information". These statements are not only inherently contradictory, but are also specious. The latter suggests that the Marvel information is the only reason that designation was created, yet I do not recall *any* discussion

relating to this confidentiality tier being premised just on Marvel specifically. I mentioned the Marvel license merely as an example of material that would likely be designated at the higher tier. We simply did not want either of our respective clients to be privy to certain highly confidential items of business information belonging to a competitor. It is neither appropriate nor necessary for the conduct of this litigation for *anyone* in-house to have highly confidential, commercially sensitive information belonging to the other party. Contrary to your statement, it is not just MGA that has distinguished between inside and outside counsel in connection with the protective order. It is a *stipulated* protective order, so Hasbro has made the same distinction.

You then state, "[i]f MGA's inside counsel are involved in business decisions, their alleged privileged communications and work product should be logged so that Hasbro may assess whether they are truly privileged." Do you really want every statement and piece of work product that any MGA in-house counsel has ever done to be logged? Since Mr. Goldner contacted MGA about MGA's game name in April, any communications about this matter between in-house counsel and ourselves as well as between in-house counsel and others at the company relate *solely* to this litigation, including things as mundane as trying to determine persons' availability to be deposed by you. It would be a monumental waste of time and expense and would serve no purpose *or* lead to the discovery of relevant, non-privileged evidence for either of us to spend the time during this expedited discovery period leading up to the injunction motion logging the numerous communications of our respective clients' in-house lawyers about this dispute simply because they are in-house counsel. The fact that they may help their client make decisions about other issues, or the fact that they research, communicate and provide advice, just as outside counsel do, does not waive privilege or work product for what they do and have done in connection with this matter.

**5. <u>MGA'S DOCUMENT PRODUCTION</u>.**

I will send the promised color copies of the documents that I produced in black and white last Friday.

Concerning the sell sheet referenced by Ms. Werner in her declaration, *Hasbro did not ask for it in its expedited discovery requests.*

With regard to the Marvel license agreement, *Hasbro did not ask for it in its expedited discovery requests either.*

Contrary to your letter, I did *not* state that I will have two samples of MGA's game for use as exhibits, one of which you can take. They are publicly available and can easily be bought. In fact it looks like you already have two samples, one of which you brought to the July 13 conference with Judge Smith. MGA also sent Hasbro a sample before this suit was initiated.

Contrary to your letter, I did *not* state that I could have the Marvel Style Guide marked as an exhibit. I said that MGA was not at liberty to copy it for you, but that we could make it available for your inspection on a confidential basis.

With regard to the disclosure of MGA's clearance opinion work, which you have asked us to produce in discovery, you agreed to a limited scope of waiver flowing from the production of that information, and you then changed your mind and now refuse to agree. I outlined in my August 2 letter that we will have to instruct the witnesses not to answer. We will make our record, and will then ask the Court for a protective order pursuant to FED. R. CIV. P. 26(c).

**6. <u>HASBRO'S DISCOVERY RESPONSES</u>.**

You accuse me of "churning the file" because I pointed out defects and failures to follow the Federal Rules of Civil Procedure in your responses to MGA's discovery. You have no basis for charging me with an ethics violation. We will continue to expect Hasbro to comply with the Federal Rules of Civil Procedure; pointing out when Hasbro fails to meet that obligation is not "churning". It is trying to get the facts and the truth on the table so Judge Smith is fully able to make the appropriate decision.

With regard to the heavily redacted 2001 survey produced by Hasbro, it is not sufficiently complete to show what was surveyed, the methodology for the survey, and the results of the survey for the Memory game. It is useless in its present state, and any testimony about it will likely be stricken.

With regard to MGA's requests for admission, as pointed out in my August 2 letter, Hasbro, and its counsel, are obligated to make a "reasonable inquiry," and to undertake a "good faith" investigation of sources reasonably available to it in formulating answers to requests for admission. *See* FED. R. CIV. P. 36(a); the ADVISORY COMMITTEE NOTES to Rule 36(a); *Asea, Inc. v. Southern Pacific Transportation Company*, 669 F.2d 1242, 1245-46 (9th Cir. 1981). Hasbro has not satisfied that burden. Your characterization of the extensive third-party uses cited by MGA as being "alleged evidence of third-party use of the term 'memory' [and] dubious, at best" is nothing short of shocking. For you to then state that "[t]he only example cited by MGA that [you] have found on store shelves is Sababa's Angelina Ballerina Memory game" is further evidence of your and your client's failure to properly police your client's alleged "exclusive" rights. It appears that you are going to assert the ostrich defense—if you put your head in the sand then you can say you did not see anything. You clearly are not looking—whether on store shelves or anywhere else—and you have not taken the trouble to review any of the numerous websites whose addresses were contained in MGA's filings. Yet, you have found time to send a recent cease and desist letter to Briarpatch over its "I Spy Memory Game" and to oppose a pending trademark application for MEMORY MAGIC. Do those products not exist?

I do not have the time to continue to point our your misstatements and mischaracterizations or to argue with you on paper. I have a case to win against Hasbro, and I intend to do so. I will have someone else respond to any further communications.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400050887.1

cc: Jeffrey K. Techentin, Esq.
George E. Lieberman, Esq.

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]
**Sent:** Monday, August 28, 2006 2:11 AM
**To:** Mike Daly; Beth Richmond
**Cc:** Janene Bassett; Brooks Magratten; George Lieberman; Daphne Gronich; gronich@aol.com; Sam Khare
**Subject:** FW: Hasbro v. MGA

---

**From:** Kent Raygor
**Sent:** Saturday, August 05, 2006 3:21 PM
**To:** 'Landsman, Kim J. (x2980)'
**Cc:** Sant'Ambrogio, Michael (x2436); Techentin, Jeffrey; George Lieberman; Janene Bassett
**Subject:** Hasbro v. MGA

I have an MGA game for you. I assume you will arrive on Monday. I will have that and the color copies of documents previously produced to you in B&W sent to your hotel if you tell me where you are staying.

Please produce color copies of the documents that you produced to us in B&W, and in particular the Marvel Style Guide that Hasbro produced.

Kent R. Raygor
Intellectual Property and Media Law
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Phone: (310) 228-3700
Direct Phone: (310) 228-3730
Fax: (310) 228-3701
Direct Fax: (310) 228-3930
E-mail: kraygor@sheppardmullin.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
**Sheppard, Mullin, Richter & Hampton LLP**
Please visit our website at www.sheppardmullin.com

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]

**Sent:** Monday, August 28, 2006 2:14 AM

**To:** Beth Richmond; Mike Daly

**Cc:** Brooks Magratten; George Lieberman; Janene Bassett; Sam Khare; Daphne Gronich; gronich@aol.com

**Subject:** FW: Hasbro v. MGA - Hasbro's Privilege Log

---

**From:** Kent Raygor

**Sent:** Monday, August 07, 2006 7:54 PM

**To:** 'Landsman, Kim J. (x2980)'

**Cc:** Sant'Ambrogio, Michael (x2436); Techentin, Jeffrey; George Lieberman; Janene Bassett

**Subject:** Hasbro v. MGA - Hasbro's Privilege Log

<<Privilege Log.pdf>>

Kim,

Attached is MGA's privilege log. George Lieberman's office will serve signed copies on you and Jeff tomorrow.

We have briefly looked through your privilege log, and find some initial problems with it:

1. You identify in-house and outside counsel and paralegals for Hasbro in the footnote on page 1 of your log. But there are many names in the log that are not listed there and with which we are unfamiliar. If the person sending a communication is not an attorney and it is not going to an attorney, then it is not privileged. If the person sending it is an attorney and it is going to or copied to someone who is not part of Hasbro, then it is not privileged. If someone who is not part of Hasbro was copied on the communication, then it is not privileged. For this reason, Hasbro needs to identify who each of the authors and recipients is and, at a minimum, who his or her employer is. I can send you law that such identification is required if you need to see it.

2. You have at least one communication going to Isaac Larian, MGA's CEO, but claim it is privileged. That, of course, cannot be correct.

3. You have a paralegal sending a document to "File", and assert attorney-client privilege. That is not a privileged communication.

4. You reference a communication about a settlement with Judy Willis, a Mattel attorney. That communication would not be privileged, but it is unclear exactly what you are claiming is privileged. Is it just someone else's handwritten notes on the communication? If so, have you produced the communication without those notes?

Also, it would really help if you can re-order your log so that it is in chronological order, as is ours.

Can you check your log and fix the problems noted above?

Kent R. Raygor
Intellectual Property and Media Law

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]
**Sent:** Monday, August 28, 2006 2:15 AM
**To:** Mike Daly; Beth Richmond
**Cc:** Janene Bassett; Sam Khare; Daphne Gronich; gronich@aol.com; Brooks Magratten; George Lieberman
**Subject:** FW:

---

**From:** Kent Raygor
**Sent:** Monday, August 07, 2006 8:46 PM
**To:** 'Landsman, Kim J. (x2980)'
**Cc:** Sant'Ambrogio, Michael (x2436); Techentin, Jeffrey; George Lieberman; Janene Bassett
**Subject:**

Kim,

1. Upon your arrival in the morning, please ask the receptionist to send you and your reporter to Conference Room C (on the south side of the 16th floor).

2. Attached hereto are additional documents being produced by MGA, bearing production numbers M288-345. Note that M324 is designated **CONFIDENTIAL** under the Protective Order. That is the Spider-Man & Friends Memory Match-Up sell sheet that you requested.

3. I have put the color copies of the documents MGA produced to Hasbro on July 28 in black-and-white in the deposition conference room for you (Conference Room C).

4. I have put your three boxes of deposition documents in that same conference room.

5. I have examined most of the documents that Hasbro produced on July 28. I suggest that you withdraw H1242-1411, the Marvel Style Guide that Hasbro produced. Pages H1409 and H1411 state that it is "highly confidential", and that Hasbro is prohibited from reproducing or providing any part of it to "any other party for any purposes whatsoever." It also states that "Unauthorized use may subject the user to civil or criminal liability under applicable law." I am confident that the manual that Hasbro produced is the same online manual to which Marvel provided MGA and other licensees access by way of a confidential personal login name and password, so that there is no need for us to exchange this highly confidential document and subject you to potential liability.

Kent R. Raygor
Intellectual Property and Media Law
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Phone: (310) 228-3700
Direct Phone: (310) 228-3730
Fax: (310) 228-3701
Direct Fax: (310) 228-3930
E-mail: kraygor@sheppardmullin.com

This message is sent by a law firm and may contain information that is privileged

**Mike Daly**

**From:** Kent Raygor [KRaygor@sheppardmullin.com]
**Sent:** Monday, August 28, 2006 2:16 AM
**To:** Beth Richmond; Mike Daly
**Cc:** Janene Bassett; Brooks Magratten; George Lieberman; Daphne Gronich; gronich@aol.com; Sam Khare
**Subject:** FW: Deposition Notice To Hasbro

---

**From:** Kent Raygor
**Sent:** Wednesday, August 09, 2006 7:35 PM
**To:** Techentin, Jeffrey; Sant'Ambrogio, Michael (x2436)
**Cc:** 'Landsman, Kim J. (x2980)'; Janene Bassett; George Lieberman
**Subject:** Deposition Notice To Hasbro

<<Depo Notice.pdf>>

Attached is an unsigned copy of a signed deposition notice that I served on Kim Landsman today by hand. I will have Vetter and White serve another copy, signed by it, on your firms tomorrow.

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.
**Sheppard, Mullin, Richter & Hampton LLP**
Please visit our website at www.sheppardmullin.com

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 10, 2006

**By Hand Delivery**

The Honorable William E. Smith
United States District Court, Rhode Island
One Exchange Terrace
Providence, Rhode Island 02903-1779

Re: Hasbro, Inc. v. MGA Entertainment, Inc., Case No. 1:06-cv-262

Dear Judge Smith:

Defendant/Counterclaimant MGA Entertainment, Inc. ("**MGA**") sends this letter in connection with the scheduled August 11, 2006, 2:30 p.m. (EDT) telephone conference. We identify the following issues for discussion.

## 1. THE EXAMINATION OF HASBRO WITNESS MARK STARK.

The evidentiary hearing on Plaintiff/Counterclaim-Defendant Hasbro, Inc.'s ("**Hasbro**") motion for a preliminary injunction, recall, and expedited discovery is presently set to commence on Monday, September 11, 2006. Hasbro has asked that it instead commence on Friday, September 8 so that one of its witnesses, Mark Stark, who has a previously scheduled trip, can be examined before he leaves on his trip. Subject to the resolution of the following matters, some of which may impact when the evidentiary hearing takes place and how long it will take, Defendant/Counterclaimant MGA Entertainment, Inc. ("**MGA**") does not object to having Mr. Stark examined on September 8, if that date is convenient for the Court.

## 2. DEPOSITIONS OF WITNESSES.

Hasbro requested that MGA make nine (9) (out of a possible 11) witnesses available for depositions in Los Angeles during the week of August 7, 2006. MGA has done so.

MGA has asked Hasbro to make six (6) witnesses available for depositions in Providence from August 15-18. Hasbro, however, states that only its lead counsel (Kim J. Landsman, Esq.) can defend those depositions, and that he is only available on Thursday and Friday, August 17-18 and Thursday and Friday, August 24-25 (and "maybe" on August 23). MGA has offered to have certain witnesses deposed by MGA's Rhode Island counsel the following week, but on August 24-25 both of MGA's Rhode Island counsel (Brooks Magratten and George Lieberman) have previously scheduled plans to be in Nevada at a conference.

Because of the nature of the expected testimony, which involves hotly contested trademark legal and factual issues, MGA's Los Angeles trademark counsel needs to take some of those depositions. However, as previously advised, such counsel has long-standing plans to be out of the country the weeks of August 21 and 28. If Hasbro's lead counsel cannot change his plans, then MGA submits that Hasbro should be able to have one of the other four outside counsel it has working on this case defend the depositions on August 15-16 when Mr. Landsman is unable to do so. If this will not occur, MGA will not be able to present its opposition to the injunction as of September 8, since it will have been substantially prejudiced by the inability to depose Hasbro witnesses in a timely enough fashion.

Hasbro also objects to MGA's Rule 30(b)(6) deposition notice directed at Hasbro, even though it was limited to issues raised by Hasbro in its moving papers, reply brief, and documents produced in expedited discovery. Hasbro also refuses to produce for deposition Hasbro employee Jill Hambley, noticed by MGA. Ms. Hambley is currently in charge of Hasbro's Memory product (and has been for the past year), and Hasbro has identified her as a knowledgeable witness in response to MGA's discovery. Hasbro refuses to produce the Hasbro employee (Walker Mitchell) responsible for relations with Wal-Mart, a retailer that sells both Hasbro's and MGA's games (and other parties' "memory"-entitled games) and who likely knew about MGA's game long before this case was filed. Hasbro also refuses to commit to producing Hasbro employee Barry Nagler, noticed by MGA, even though he was identified as a knowledgeable witness in MGA's opposition papers (and counterclaim), having signed the declaration that allowed Hasbro to get its trademark registration. MGA intends to call these witnesses to appear as the evidentiary hearing. MGA needs these issues resolved so that it can depose these witnesses before they appear at the hearing.

## 3. <u>USE OF DEPOSITIONS DURING THE EVIDENTIARY HEARING</u>.

MGA submits that some of the potential witnesses (some of whom reside in Los Angeles) should not need to testify in Court at the hearing. MGA requests that other options for presenting their testimony be considered, including (a) stipulated designations of their deposition testimony that can be read into the record, (b) affidavits or declarations from them that can be made a part of the record, or (c) examinations that can be conducted using video-conference equipment.

## 4. <u>AUTHENTICATION AND ADMISSION OF BOOKS AND GAMES PURCHASED, AND INTERNET SITES ACCESSED, BY MGA</u>.

In this case, Hasbro claims that MGA's marketing of a game called "Memory Match-Up" (not a card game) infringes Hasbro's claimed exclusive right to use "Memory" for a card-matching game. As part of its defense, MGA intends to show that the marketplace is crowded with many historical and current uses of the term "memory" with memory games,

thereby making Hasbro's mark weak or unenforeceable. MGA has collected a great deal of such evidence. MGA submitted a lot of it to this Court in its July 17 opposition papers.

A dispute has arisen over how that evidence was collected and whether it is authentic and admissible. Hasbro has stated that such evidence is "dubious, at best." Essentially, 15 to 20 MGA employees and its inside and outside attorneys and their staffs, both here and in Los Angeles, have (a) gone to stores and purchased many non-Hasbro "memory"-related games and books describing Memory games, (b) ordered such games and books from Internet sellers, and (c) found references to such games in books at public libraries. MGA's lead counsel indexed all of that evidence in MGA's submission to this Court on July 17 for the Court's convenience, expecting that Hasbro's counsel would work with him in stipulating to authenticity, foundation, and admissibility. Hasbro, however, now will not commit to accepting those 15 to 20 affidavits, or to authenticity, foundation, and admissibility of the purchased items or for materials found in public libraries. It appears that Hasbro may want to require that many of these witnesses be brought from Los Angeles or the Vetter and White firm to this Court to testify about what they found and did, and, if MGA fails to do so in response to such request, assert that all such evidence should be barred.

MGA submits that counsel for the parties should be able to stipulate to the authentication of, foundation for, and admission of these publicly-available purchased and copied items, or should be able to stipulate that this Court take judicial notice of them, or should be able to agree that declarations from all of these individuals can be accepted into evidence in order to avoid having to take up this Court's time with in-court testimony from these individuals.

## 5. <u>THE USE OF LIVE INTERNET EVIDENCE AT THE HEARING</u>.

As part of its defense to Hasbro's claims, MGA intends to introduce evidence of the many non-Hasbro memory card-matching games one can find on many different Internet sites, thereby also showing extensive, common third-party use of the term to refer to memory games, to which Hasbro apparently has never objected. .To do this, MGA intends to use a new software program called *SnagIt* that records all actions done when one opens an Internet browser and surfs to various sites on the Internet and then explores content on those sites.

Essentially, how the program would work is, as follows: MGA will open an Internet browser. MGA will then link to a particular web page in a live website. That page will appear on-screen. MGA will then navigate to particular parts of the content on that page that show a memory card-matching game, that display text about how the game is played, uses of the word "memory" on the page, and, if the page shows a card-matching game that can be played online, the playing of the game. MGA will examine the witness as this is going on, and the software will record everything that is being shown on the monitor. The recorded data can then be burned onto a disk and made a part of the record and provided to all parties. If the Court

desires, MGA can demonstrate how it works. MGA raises this matter so that the Court is informed and may provide guidance as to the use of this software.

6. **DISCOVERY DISPUTES.**

The parties exchanged expedited written discovery requests and responses. MGA believes that Hasbro's responses are deficient and is sending "meet-and-confer" letters to Hasbro that outline all of the defects and asks it to cure them. If it fails to receive a satisfactory response to those letters and proper responses and document productions, MGA may have to pursue motions to compel the requested discovery before it can proceed with the evidentiary hearing.

7. **HASBRO'S DEPOSITION OF MGA IN-HOUSE COUNSEL SAM KHARE.**

In July and August 2005, MGA in-house attorney Sam Khare and MGA's paralegal staff conducted an in-house analysis of the product name at issue in this case—Memory Match-Up. Hasbro has asked for all of his communications, and work product concerning that work, in Hasbro's discovery requests. MGA informed Hasbro that MGA was willing to waive the privilege and work product protection for *that* material if Hasbro would stipulate to a limited scope of that waiver—namely, (a) that the waiver would extend only to the subject matter of the work that Mr. Khare did and that it would not cover any other non-Hasbro-related work he has done as legal counsel for MGA, and (b) that the waiver would extend only until April 19, 2006 when Hasbro first made its claim against Hasbro that led to the filing of this lawsuit. After April 19, 2006, Mr. Khare has been heavily involved in MGA's defense of the claims in this action and in working with MGA's outside counsel to present its case.

Believing that an agreement would be reached with regard to the scope of the limited waiver, MGA submitted a factual declaration from Mr. Khare as part of its opposition to the injunction motion.[1] Hasbro, however, has refused to stipulate to a limited waiver and, instead, demands that MGA disclose the privileged and work product material before it will consider whether to agree to a limit on the scope of the waiver.

Hasbro took Mr. Khare's deposition on August 9, 2006 at which, among other things, it asked Mr. Khare to talk about legal work he has done after the filing of this lawsuit. It

---

[1] In Footnote 28 on page 30 of its opposition brief filed with this Court on July 17, MGA stated the following about Mr. Khare's declaration:

> "MGA cannot presently proceed with disclosing any attorney-client communications with its attorney *or* his conclusions, without an agreement or order that limits the scope of the necessary privilege waiver that would result therefrom. MGA is presently discussing with Hasbro's counsel a stipulation that would define the scope of that waiver, and failing agreement being reached, will file a motion asking the Court to define that scope. Unless and until the scope of the proposed waiver is defined, MGA will preserve the attorney-client privilege and cannot disclose the substance of those communications and opinions."

is apparent that Hasbro intends to attempt to use a waiver of the privilege and work product protections to interfere with MGA's defense of this case. MGA had to instruct Mr. Khare not to answer such questions. MGA hopes that counsel for the parties will be able to work out an acceptable limitation on the scope of the waiver resulting from the disclosure of Mr. Khare's work but, failing that, MGA may have to seek appropriate protection from this Court pursuant to FED. R. CIV. P. 26(c).

Respectfully yours,

Kent R. Raygor

cc: George E. Lieberman, Esq. (by email) (counsel for MGA)
Jeffrey K. Techentin, Esq. (by email) (counsel for Hasbro)
Kim J. Landsman, Esq. (by email) (counsel for Hasbro)

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Suite 1600 | 1901 Avenue of the Stars | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 11, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
Michael Sant'Ambrogio, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Jeffrey K. Techentin, Esq.
ADLER POLLOCK & SHEEHAN PC
2300 Financial Plaza
Providence, Rhode Island 02903

Re: Hasbro v. MGA; MGA v. Hasbro—Hasbro's Interrogatory Responses

Dear Counsel:

We have reviewed PLAINTIFF'S RESPONSE TO DEFENDANT MGA ENTERTAINMENT, INC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF HASBRO, INC., served on or about July 28, 2006. Hasbro, Inc.'s ("**Hasbro**") responses are deficient in numerous respects, as further described below.

## A. HASBRO FAILED TO PROPERLY INVOKE AND COMPLY WITH FED. R. CIV. P. 33(d).

In response to **Interrogatory Nos. 2, 5, 7, 10, and 11**, rather than fully answering the requests Hasbro instead points to FED. R. CIV. P. 33(d), without properly invoking *or* complying with the rule. Rule 33(d) states:

> "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the ***burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served***, it is a sufficient answer to such interrogatory to ***specify the records*** from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification ***shall be in sufficient detail*** to permit the interrogating party to ***locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.***"

(Emphasis added.) Hasbro is under a duty to search its records to provide the answers. *See, e.g., Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992). ***Only*** if the information is contained in business records, ***and*** the burden of searching those records is "substantially the same" for MGA as it is for Hasbro may Hasbro then answer by ***specifying*** the records from which the answer may be derived and then making those records reasonably available for inspection. *See* FED. R. CIV. P. 33(d); *Daiflon, Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 225-26 (10th Cir. 1976).

Here, the burden of searching records certainly is not substantially the same for MGA as it is for Hasbro, as these interrogatories seek information related to Hasbro's advertising (**Interrogatory No. 2**), allowing third parties to use "memory" (**Interrogatory No. 5**), legal proceedings relating to "memory" (**Interrogatory No. 7**), unauthorized uses of "memory" (**Interrogatory No. 10**), and failed attempts to stop others from using "memory" (**Interrogatory No. 11**). Hasbro is intimately familiar with this information about itself, while MGA is *not* familiar with that information about Hasbro. Consequently, the burden of searching Hasbro's own records is not substantially the same, so Hasbro is not permitted to invoke Rule 33(d) at all.

Moreover, Hasbro failed to specify the documents corresponding to its invocation of Rule 33(d). "The final sentence [of Rule 33(d)] is added to make it clear that a responding party has ***the duty to specify, by category and location***, the records from which answers to interrogatories can be derived." ADVISORY COMMITTEE NOTES, RULE 33(c), 1970 Amendment. *See also* 1980 Amendment (emphasis added). Hasbro has failed to identify any production numbered documents pursuant to Rule 33(d).

Furthermore, for **Interrogatory No. 5** Hasbro identified (without specificity or production numbers) ***redacted*** documents. Hasbro's heavy redaction of much of its discovery is inappropriate, especially given that a two-level protective order is in place to address concerns about confidentiality. Hasbro's heavy redactions make the documents difficult, if not impossible, to decipher and MGA has no way to determine Hasbro's basis for the redactions.

In light of the foregoing, Hasbro must immediately supplement its responses and provide full and complete answers under oath. At a minimum, Hasbro must identify the production numbers of the responsive documents pursuant to Rule 33(d). Where Rule 33(d) is invoked but Hasbro then produced or is relying on redacted documents, Hasbro must provide unredacted documents immediately, or provide a privilege log for them or explain why the information cannot be disclosed even with the CONFIDENTIAL – OUTSIDE COUNSEL ONLY designation available to Hasbro under the July 31, 2006 Stipulated Protective Order.

**B. HASBRO FAILED TO PROVIDE INFORMATION ABOUT WITNESSES.**

Numerous interrogatories asked Hasbro to identify witnesses by name, address, and telephone number. (*See* **Interrogatory Nos. 1, 3, and 9**.) Instead, Hasbro simply states they the witnesses are employees of Hasbro and may be contacted only through Hasbro's counsel (**Interrogatory Nos. 1 and 9**) or Hasbro provides no information at all (**Interrogatory No. 3**). Obviously, the need for addresses and phone numbers is so MGA may find the witnesses in order to serve subpoenas on them if necessary. In the spirit of compromise, if Hasbro will agree that you are authorized to accept service of subpoenas on behalf of these witnesses (and, for witnesses who later are no longer employed by Hasbro, to provide the witnesses' contact information for the time period immediately after the witnesses' employment with Hasbro ended), then MGA would accept Hasbro's present identification of witnesses. Otherwise, Hasbro must immediately provide that information.

**C. HASBRO ASSERTED BASELESS OBJECTIONS WITHOUT SUPPORT.**

In response to several interrogatories, Hasbro asserted various baseless, boilerplate objections without sufficient explanation or support. (*See* **Interrogatory Nos. 1, 3, 7, 9, 10, and 11**.) All grounds for objection to an interrogatory must be stated "with specificity." FED. R. CIV. P. 33(b)(4); *see Nagele v. Electronic Data Systems Corp.*, 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (objection that interrogatories were "burdensome" overruled because the objecting party failed to "particularize" the basis for objection). In order to be proper, the objection must state specifically how the interrogatory is overly broad and burdensome by evidence that reveals the nature of the alleged burden. *Mitchell v. National R.R. Passenger Corp.*, 208 F.R.D. 455, 458, n.4 (D.D.C. 2002); *Chubb Integrated Systems v. National Bank of Washington*, 103 F.R.D. 52, 60 (D.D.C. 1984). Where an interrogatory allegedly is overbroad, Hasbro must answer whatever part of the question is proper, object to the balance, and provide some meaningful explanation of the basis for the objection. *See* FED. R. CIV. P. 33; ADVISORY COMMITTEE NOTES, 1993 Amendments; *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 512-13 (N.D. Iowa 2001) (objections must explain how a request or interrogatory is overbroad or unduly burdensome). *See also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) ("[O]bjections to interrogatories must be specific and supported by detailed explanations of why the interrogatories are objectionable."). Because of Hasbro's vague objections, MGA generally is unable to determine whether Hasbro has withheld information based on those objections. Please immediately advise us as to whether Hasbro has withheld responsive information based on these objections.

If Hasbro is withholding responsive information based on these objections, they should be withdrawn. In response to **Interrogatory No. 1**, which concerns the circumstances surrounding when Hasbro first learned about MGA's product that Hasbro has accused of

infringement, Hasbro asserts a relevance objection. Clearly, the circumstances surrounding Hasbro's discovery of MGA's product at issue in this lawsuit is pertinent to the issue of laches, for example. *See, e.g., Affirmative Defense No. 7; Counterclaim, Count I.*

In response to **Interrogatory No. 3**, which concerns communications about MGA's use of the word "memory," Hasbro asserts breadth, vagueness, ambiguity, and relevance objections. Clearly, communications about the conduct accused of infringement is relevant. Moreover, there is nothing overbroad or unclear about the interrogatory, as shown by Hasbro's failure to identify any such defects in the interrogatory.

In response to **Interrogatory No. 7**, which concerns legal proceedings involving Hasbro that concern "memory," Hasbro asserts breadth, burden, and relevance objections. Given that a major issue in this case is MGA's assertion with regard to Hasbro's lack of enforcement of its alleged trademark, and the resulting in widespread generic and descriptive use of the word "memory" for memory games—whether resulting therefrom or otherwise—Hasbro's legal proceedings over "memory" are obviously highly relevant. Moreover, Hasbro's protests about its alleged mark being in exclusive use by it for 40 years are misplaced. Such information is highly pertinent to this suit to show Hasbro's failure to police its alleged mark during the lifetime of that that alleged mark. Hasbro's breadth and burden objections are not made in good faith given that documents from only two legal proceedings have been provided or identified (*e.g.*, with Kellogg and Creative Action). Two proceedings hardly justifies breadth or burden objections.

In response to **Interrogatory No. 8**, which concerns any Hasbro "memory" games that are not a card-matching game, Hasbro asserts breadth and relevance objections. Yet, Hasbro has identified only a single game in response. Again, MGA is at a loss to understand how a single game justifies a breadth objection. Also, given that Hasbro's registration relates to a card-matching game and MGA's game does not involve cards at all, the scope of Hasbro's "memory" games is certainly relevant to this suit.

In response to **Interrogatory No. 9**, which concerns identification of people with managerial responsibility for marketing Hasbro's "memory" game since 2000, Hasbro asserts a breadth objection. Yet, Hasbro has identified only two people in response, which hardly justifies a breadth objection. Given that MGA limited its interrogatory to Hasbro's "memory" game and to the time period of 2000 to present, the interrogatory is not overly broad and must be answered.

In response to **Interrogatory No. 10**, which concerns unauthorized uses of "memory" in connection with games or toys, Hasbro asserts a litany of objections, including breadth, vagueness, ambiguity, relevance, burden, and privilege. Hasbro's admission that there has been so much unauthorized third party use of "memory" that it would be unduly burdensome to identify such uses, certainly is relevant to this action where MGA has charged Hasbro with

failing to police its alleged mark. There is nothing overbroad or unclear about the interrogatory, as shown by Hasbro's failure to identify any such defect in the interrogatory. Hasbro's privilege objection is improper given that the interrogatory does not call for privileged information – it seeks identification of third party uses of "memory" and information related thereto. There is nothing privileged about such information.

In response to **Interrogatory No. 11**, which concerns failed efforts to police Hasbro's alleged "memory" mark, Hasbro asserts a privilege objection. Again, Hasbro's privilege is improper given that the interrogatory does not call for privileged information – it seeks information about third party uses of "memory" and actual efforts to stop such use. There is nothing privileged about that information.

For the foregoing reasons, if Hasbro is withholding responsive information on the basis of the objections cited above, those objections must be withdrawn and Hasbro's responses must be supplemented with full and complete answers under oath.

## D. HASBRO FAILED TO FULLY RESPOND TO THE SUBSTANCE OF THE INTERROGATORIES.

**Interrogatory No. 3** specifically requests identification of contact information of persons with whom Hasbro has had communications about MGA's use of the word "memory," but Hasbro did not provide address or telephone information. Please immediately provide such information. Moreover, Hasbro has failed to identify responsive communications with any people or entities, other than Marvel. Please disclose that immediately or confirm under oath that no other responsive communications took place.

**Interrogatory No. 9** specifically requests identification of people with managerial responsibility for marketing Hasbro's "memory" game since 2000. Hasbro appears to have unilaterally narrowed the interrogatory to those with "***principal*** managerial responsibility" (emphasis added) for Hasbro's "memory" game, which is improper. MGA is entitled to learn the identity of all people with any managerial responsibility for marketing Hasbro's "memory" game, as those people may have information pertinent to this lawsuit. In an effort to narrow the scope of the interrogatory, MGA limited this interrogatory by time. Consequently, the number of people responsive to this interrogatory likely is not large. Therefore, Hasbro has no basis to withhold responsive information, and it must supplement its answer.

* * *

MGA hereby requests that Hasbro immediately amend its responses to provide full and complete answers under oath that satisfy the defects stated above. Otherwise, MGA will be forced to seek an order from the Court compelling such responses and requiring Hasbro to

reimburse MGA for the costs and fees it has incurred and will incur in having to seek that order. FED. R. CIV. P. 33(b); 37(a)(4)(A). Given that MGA has no desire to trouble the Court with these issues and MGA believes that the proof of Hasbro's insufficient responses is readily apparent, MGA urges Hasbro to immediately provide amended responses.

Otherwise, pursuant to FED. R. CIV. P. 37, we will be forced to file a motion to compel, which will need to be brought on shortened time due to the expedited schedule in this case. Please contact me immediately to discuss the issues herein.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400051835.1

cc: George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Suite 1600 | 1901 Avenue of the Stars | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 11, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
Michael Sant'Ambrogio, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Jeffrey K. Techentin, Esq.
ADLER POLLOCK & SHEEHAN PC
2300 Financial Plaza
Providence, Rhode Island 02903

Re: Hasbro v. MGA—Hasbro's RFA Responses

Dear Counsel:

We have reviewed PLAINTIFF'S ***AMENDED*** RESPONSE TO DEFENDANT MGA ENTERTAINMENT, INC'S FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF HASBRO, INC., served on or about August 4, 2006. Hasbro, Inc.'s ("**Hasbro**") responses are deficient in numerous respects, as further described below.

**Request for Admission ("RFA") Nos. 5 and 6** seek admissions that Hasbro has no documents related to actual confusion, which Hasbro denies. Hasbro, however, has produced no documents evidencing even a single instance of actual confusion, despite document requests seeking such documents (*i.e.*, **RFA Nos. 11-12**). Either Hasbro must produce those documents or it must amend its answers to **RFA Nos. 5 and 6** to "admitted" from "denied."

**RFA Nos. 17-18** seek admissions that MGA's game is not a card-matching game and does not use cards in its game play. Hasbro provides an evasive response, stating that MGA's game "does not appear to use cards." Hasbro certainly knows by now that the game is not a card-matching game and does not use cards in its game play. Hasbro must fairly respond to the request, and not engage in word play to avoid an admission.

**RFA No. 23** asks Hasbro to admit that the "TM" symbol on MGA's packaging follows the word or phrase "match-up" and not the word "memory". Hasbro gratuitously responds by referring to "the trademark MEMORY MATCH-UP™" when MGA did not ask anything concerning that. Hasbro's response is evasive and does not respond to the request.

**RFA Nos. 24-29** seek admissions concerning third-party uses of "memory" for games and toys. MGA has provided Hasbro with hundreds of such examples, including online games, which Hasbro concedes in some of its responses. Hasbro cannot fairly or in good faith deny these requests given MGA's overwhelming showing of such evidence. Furthermore, lead

counsel for Hasbro, Kim J. Landsman, has been given an opportunity to inspect and review many examples of such third-party use in MGA's outside counsel's offices in Los Angeles, and he did such an inspection and review on August 8 and 10, 2006. MGA has now raised this issue with Hasbro three times, without Hasbro's cooperation. (*See* Letter from Raygor to Landsman of 8/1/06 at pp. 6- 8, ¶ 9; Letter from Raygor to Landsman of 8/3/06 at p. 4, ¶ 6.) Hasbro must now amend its answers to these requests. If Hasbro fails to admit these requests, MGA will seek the recovery of all of its costs and attorneys' fees incurred in having to prove such third-party use of "memory". *See* FED. R. CIV. P. 36(a); 37(a)(4)(A).

**RFA Nos. 45-46** seek admissions that "memory" games were known before Hasbro or its predecessor began marketing its game, which Hasbro denies with respect to activity in the U.S. MGA has provided Hasbro with numerous examples of publicly available books predating Hasbro's alleged 1966 first use, which specifically reference a memory game where like cards are matched. Hasbro cannot fairly or in good faith deny these requests given MGA's overwhelming showing of evidence. As noted above, lead counsel for Hasbro, Kim J. Landsman, was given an opportunity to inspect and review these publications in MGA's outside counsel's Los Angeles office, and he did that review on August 8 and 10, 2006. Those books, published before 1966, show use of the term "memory" as the name of a card-matching game. Hasbro, therefore, must amend its answers to **RFA Nos. 45-46**. For generally the same reason, Hasbro must amend its answers to **RFA Nos. 47-54** as well. Likewise, given the evidence presented by MGA, Hasbro cannot fairly or in good faith deny or refuse to admit that "memory," "concentration," and "pelmanism" are interchangeable terms, so Hasbro must amend its answers to **RFA Nos. 55-58**.

**RFA Nos. 59-60** seek admissions concerning the definition of "classic," to which Hasbro has objected based on relevance. However, Hasbro has challenged MGA's reference to a "Classic Memory Matching Game." *See* COMPLAINT ¶ 1. Consequently, Hasbro made the definition of "classic" highly relevant by virtue of its pleading. Hasbro is obligated to admit or deny any requests or portions thereof that were not objectionable. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (responding parties "should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted"); *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) ("If the objection is only to a portion of the request, the responding party is required to unambiguously answer that portion of the request to which the objection does not apply."). "Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, ***not evasion*** and word play." *Marchand*, 22 F.3d at 936 (emphasis added). "[T]o aid in the quest for relevant information parties ***should not seek to evade disclosure by quibbling and objection***." *Id.* at 938 (emphasis added). Because the objection is without merit, Hasbro must respond to the requests.

**RFA Nos. 62 [first and second]** seek admissions that MGA's reference to a "Classic Memory Matching Game" ***is capable of referring*** to something other than Hasbro's game, which Hasbro denied. Hasbro cannot credibly or in good faith deny that the phrase is capable of referring to something else. Hasbro must amend its answers to **RFA Nos. 62 [first and second]**.

* * *

MGA hereby requests that Hasbro immediately amend its responses to provide full and complete answers that satisfy the defects stated above. Otherwise, MGA will be forced to seek an order from the Court compelling such responses and requiring Hasbro to reimburse MGA for the costs and fees it has incurred and will incur in having to seek that order. FED. R. CIV. P. 36(a); 37(a)(4)(A). Given that MGA has no desire to trouble the Court with these issues and MGA believes that the proof of Hasbro's insufficient responses is readily apparent, MGA urges Hasbro to immediately provide amended responses.

Otherwise, pursuant to LOCAL RULE 37 and FED. R. CIV. P. 37, we will be forced to file a motion to compel, which will need to be brought on shortened time due to the expedited schedule in this case. Please contact me immediately to discuss the issues herein.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400052870.1

cc: George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Suite 1600 | 1901 Avenue of the Stars | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 11, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
Michael Sant'Ambrogio, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Jeffrey K. Techentin, Esq.
ADLER POLLOCK & SHEEHAN PC
2300 Financial Plaza
Providence, Rhode Island 02903

Re: Hasbro v. MGA—Hasbro's Responses To MGA's Document Requests

Dear Counsel:

We have reviewed PLAINTIFF'S RESPONSE TO DEFENDANT MGA ENTERTAINMENT, INC'S FIRST SET OF DOCUMENT REQUESTS TO PLAINTIFF HASBRO, INC., served on or about July 28, 2006. Hasbro, Inc.'s ("**Hasbro**") responses and its document production are deficient in numerous respects, as further described below.

**A. Hasbro Failed to Certify That It Would Produce *All* Responsive Documents**

Throughout many of Hasbro's responses, it states that it will produce responsive documents, rather than ***all*** responsive documents. (*See* **Response Nos. 4-7, 9, 11, 14-15, 23, 25-28, 30-33, 36-37, 40-44, 48-56, and 58**.) Please confirm that Hasbro's responses are intended to be interpreted as indicating that it will produce ***all*** responsive documents, rather than just some undisclosed subset of all responsive documents.

**B. Hasbro Failed to Specify Whether Responsive Documents Exist At All**

Throughout numerous other responses, Hasbro states that it will produce responsive documents, "if any." (*See* **Response Nos. 14-15, 25-27. 30-33, 37, 40-44, 48-56, and 58-59**.) Please advise whether any responsive documents exist, *i.e.*, either delete reference to "if any" (where all responsive documents have been produced), *or* amend the response to indicate that no responsive documents exist (where appropriate). If documents exist, please confirm that *all* responsive documents have been produced where Hasbro has represented that it will do so. For example, **Request Nos. 49-56 and 61-62** seek information related to the stylized "memory" mark shown in Hasbro's Reg. No. 834,282, yet Hasbro appears to have stopped using that stylized version at least as early as 1987 when it filed its renewal application and submitted a specimen showing a different stylized version. Consequently, it is unlikely that Hasbro has any responsive documents. If none exists Hasbro must so inform MGA.

C. **Hasbro Failed to Identify Production Numbers Corresponding to Each Request**

Hasbro's responses do not include production numbers corresponding to each request. (*See generally* **Responses**.) Where documents are not produced "as they are kept in the usual course of business," FED. R. CIV. P. 34(b) requires that the producing party "shall organize and label [the documents] to correspond with the categories in the request." Here, with the exception of some file folder notations indicating that certain documents came out of a new specific files, documents were not produced as they are kept in the usual course of business, so Hasbro is obligated to organize the documents and to provide production numbers corresponding to each request for production. Please supplement Hasbro's responses immediately.

D. **Hasbro's Citation to the Protective Order Must Be Withdrawn**

Throughout Hasbro's responses, it conditions production of the documents on the protective order. (*See* **Response Nos. 13, 16-18, 20-21, and 23-24**.) Now that the protective order is entered, we trust that no responsive documents have been withheld on that basis. Please confirm.

E. **Hasbro's Objections Are Improper**

MGA sought production of documents concerning or reflecting Hasbro's contentions in its COMPLAINT, to which Hasbro objected as overly broad, unduly burdensome, vague, and/or ambiguous, without any explanation or support. (*See* **Response Nos. 1-5, 15, 17-18, 20-35, 37, 40-41, and 57-58**.) MGA is entitled to see Hasbro's documents concerning or reflecting its claims in order for MGA to be able to meaningfully challenge and defend against Hasbro's claims. Consequently, the objections are not well taken.

With respect to **Request Nos. 1-2, 29, and 57**, which relate to civil actions, opposition proceedings before the TTAB, or other proceedings relating to "memory," MGA is entitled to documents beyond the complaint or initial pleading. MGA is entitled to receive copies of the entire non-privileged litigation or opposition files for such actions. Based on Hasbro's document production to date, there are few such actions, so these are hardly unduly burdensome or overly broad, as Hasbro claims. Given Hasbro's counsel's trademark experience, Hasbro's vagueness and ambiguity objections defy credibility and are not made in good faith—what could you possibly not understand about the request at issue? *See* http://www.pbwt.com/landsman_kim_bio/; http://www.pbwt.com/santambrogio_michael_bio/; www.uspto.gov (over 50 trademark records list Kim Landsman as attorney of record). Any privilege objection is improper to the extent it includes documents sent to third parties, which cannot be privileged.

With respect to **Request No. 3**, which seeks documents concerning or reflecting attempts to pursue alleged infringers relating to "memory," MGA is entitled to documents beyond cease and desist letters. MGA is entitled to the entire non-privileged enforcement file for such matters, including any correspondence from the accused infringers and any monitoring done by Hasbro. Based on Hasbro's document production to date, there are only a small number of such matters, so this is hardly unduly burdensome or overly broad. Again, given Hasbro's counsel's trademark experience, the vagueness and ambiguity objections are improper.

With respect to **Request Nos. 30-33, 40-41, and 47**, which relate to unauthorized or other uses of "memory" and failed attempts to stop such use by Hasbro, by its answer, Hasbro clearly admits that there has been a great deal of unauthorized or other third-party uses of "memory", and widespread failure to police Hasbro's alleged mark, by asserting an "unduly burdensome" objection. Hasbro's relevance objection concerning "memory" registrations is misplaced as this evidence goes to Hasbro's widespread failure to police its alleged mark and weakness of Hasbro's alleged mark. The existence of widespread third-party use of memory and corresponding failure to police by Hasbro is at the heart of MGA's defense and counterclaims in this action and all responsive documents must be produced.

With respect to **Request Nos. 4-5 and 25-27**, which relate to Hasbro's first knowledge of MGA's conduct at issue in this case, Hasbro's relevance objections are misplaced as such documents certainly are relevant to issues like laches. Also, Hasbro's breadth objection is likewise misplaced as the volume of documents certainly cannot be large given that the pertinent time periods are recent and the subject matter is directed to a single company (*i.e.*, MGA). Likewise, **Request No. 28**, which relates to Hasbro's providing notice of alleged infringement to MGA, is relevant to laches as well. If Hasbro is withholding any responsive documents based on these objections, Hasbro must advise MGA of that and Hasbro must now produce all such documents because the objections are improper.

With respect to **Request No. 15**, which seeks documents concerning or reflecting quality control over licensees, Hasbro's overbreadth and burden objections are misplaced given the paucity of licenses that Hasbro produced, which hardly justifies objection on the basis that such requests are unduly burdensome or overly broad. If Hasbro is withholding any responsive documents based on these objections, Hasbro must advise MGA of that and Hasbro must now produce all such documents because the objection is improper.

With respect to **Request Nos. 17-18, and 20-21**, which seek documents concerning or reflecting the Ravensburger and other licenses or communications relating thereto, MGA is entitled to documents beyond the licenses themselves. MGA is entitled to documents concerning negotiations for the licenses, interpretations of the licenses, disputes over the licenses, communications about the licenses, or any other documents concerning the licenses.

Based on Hasbro's document production to date, given that this relates to very few licenses, this request is hardly overly broad. Moreover, given that these licenses are pleaded in Hasbro's own COMPLAINT, they certainly are relevant. No settlement agreements have been produced notwithstanding Hasbro's reference to such settlements. Hasbro cannot rely on such settlements and then not produce the agreements concerning them. Also, given that Hasbro claims rights to "memory" from Ravensburger and MGA refutes Hasbro's rights to "memory," documents concerning that license are pertinent to MGA's defenses in this action. Documents related to the other licenses and/or settlement agreements are related to MGA's claims that Hasbro failed to police its alleged mark.

With respect to **Request No. 22**, which seeks documents concerning or reflecting Hasbro's license with Marvel, MGA is entitled to documents beyond the license itself, SEC filing, and press release. MGA is entitled to documents concerning negotiations for the license, interpretations of the license, any disputes over the license, communications about the license, Hasbro's reasons for obtaining the license, or any other documents concerning the license. Based on Hasbro's document production to date, given that this relates to a single license, this request is hardly overly broad or burdensome. MGA is willing to limit the scope of this request to matter concerning Spider-Man & Friends.

With respect to **Request Nos. 23-24**, which seek documents concerning or reflecting development of Hasbro's own Spider-man & Friends game (an issue raised by Hasbro in its own papers submitted to the Court), MGA is entitled to all responsive documents, not just documents cherry-picked by Hasbro. Given that these relate to a single game, these requests certainly are not overly broad or burdensome. As far as the timing of Hasbro's first development of the game, that is relevant as to whether Hasbro saw MGA's success with its Spider-man & Friends game and then Hasbro decided to engage in uncompetitive conduct to remove MGA from the marketplace. This also pertains to balancing the equities, which is necessary for evaluating a preliminary injunction motion.

With respect to **Request Nos. 34-35**, which relate to "concentration" and "pelmanism," Hasbro's refusal to produce documents based on burden, breadth, and relevance objections is misplaced. Such documents are relevant to this action as those terms are synonyms for "memory," and numerous reference books produced by MGA identify all three as synonyms for a generic term for a memory match game. As these requests are limited to these two terms, Hasbro cannot credibly contend that the requests are overbroad or burdensome. Given the lack of merit of Hasbro's objections, Hasbro must produce all responsive documents immediately.

With respect to **Request No. 37**, which relate to Ravensburger's use of "memory," Hasbro asserted breadth and burden objections, which are improper. If Hasbro is withholding

any responsive documents based on these objections, Hasbro must advise MGA of that and Hasbro must now produce all such documents because the objections are improper.

With respect to **Request No. 58**, which relates to communications about this lawsuit, Hasbro's objections are misplaced. The request is limited to this lawsuit so it is neither overly broad nor burdensome. Moreover, the request clearly identifies its scope, so it is not vague or ambiguous.

Because the foregoing objections are improper, Hasbro should withdraw the faulty objections and, instead, fully and completely produce all responsive documents.

**F. Hasbro Has Inappropriately Redacted Excessive Portions of its Production**

Hasbro heavily redacted much of its document production, which is inappropriate, especially given that a two-level protective order is in place to address concerns about confidentiality. In fact, Hasbro produced two studies wherein almost all of the text on 112 of 151 pages is redacted, essentially leaving the cover, some chapter title pages, and some definitional pages. (H1-H151.) Given that Hasbro is relying on these studies in its moving papers to allegedly substantiate the alleged awareness of its game, MGA is entitled to see such studies in their entireties and test the alleged conclusions drawn therefrom by Hasbro, potentially including by deposing the parties responsible for such studies. Also, the license agreements produced appear to have more than financial information redacted. (H1138-H1241.) In addition, Hasbro produced a project list and related documents that are almost entirely redacted. (H1729-H1738.)

Hasbro's heavy redactions make the documents difficult to decipher and MGA has no way to determine Hasbro's basis for the redactions. Hasbro did not bother to provide a privilege log for the redactions with the exception of notes on documents asserted to contain attorney-client communications, which is the only permissible basis to redact. Hasbro must supplement its production with replacement, unredacted pages.

**G. Hasbro Has Refused to Produce Color Documents Where They Exist**

MGA produced documents to Hasbro in black and white (for easier electronic transmission), with duplicates provided in color. Despite requests for similar production of color documents, Hasbro has not responded. Consequently, several obviously color documents have not been produced in color, such as the Marvel Style Guide (H1242-H1411), the Milton Bradley game catalogs (H1412-H1555), ads (H1556-H1561), Hasbro's mock-up of its Spider-man & Friends game (H1562, H1717-H1719, and H1723-H1724). Hasbro must produce its documents in color.

## H. Hasbro Has Failed to Produce Certain Documents That It Promised To Produce

**Request No. 10** seeks a representative sample of advertisements since 1996, which Hasbro promised to provide, yet Hasbro produced only a few pages of seeming advertisements and it is unclear if those advertisements were ever actually used. Such documents must be produced immediately. Additionally, Hasbro should also provide information confirming that theses advertisements were used.

**Request No. 11** seeks communications concerning actual confusion, which Hasbro promised to provide, yet Hasbro produced no such communications. Such documents must be produced immediately.

**Request No. 63** seeks samples of Hasbro's products that have memory in the name or full color copies of the packaging. Hasbro has done neither. Despite Hasbro's repeated insistence for reciprocal treatment from MGA, Hasbro produced a handful of front covers only. Hasbro must supplement its production immediately.

* * *

MGA hereby requests that Hasbro immediately amend its responses and supplement its document production to satisfy the defects stated above. Otherwise, MGA will be forced to seek an order from the Court compelling such responses and production and requiring Hasbro to reimburse MGA for the costs and fees it has incurred and will incur in having to seek that order. FED. R. CIV. P. 33(b); 37(a)(4)(A). Given that MGA has no desire to trouble the Court with these issues and MGA believes that the proof of Hasbro's insufficient responses and production is readily apparent, MGA urges Hasbro to immediately provide amended responses.

Otherwise, pursuant to LOCAL RULE 37 and FED. R. CIV. P. 37, we will be forced to file a motion to compel, which will need to be brought on shortened time due to the expedited schedule in this case. Please contact me immediately to discuss the issues herein.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400052873.1

cc: George E. Lieberman, Esq.

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 14, 2006

***BY E-MAIL AND U.S. MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro/MGA—Motion To Compel Hasbro To Provide Deponents

Dear Mr. Landsman:

We write to you in an attempt to convince you to make the Hasbro employees noticed by MGA available for their depositions. While you may have only received the formal deposition notices last Wednesday, we had been speaking about MGA's desire to depose several of these employees, in both conversations and written communications, since prior to last week and had hoped that Hasbro would, as MGA did, make such parties available without the need for formal deposition notices, including on mutually convenient dates. If Hasbro fails to make them available, we will most likely be forced to ask the Court to continue the hearing on Hasbro's motion for a preliminary injunction and recall order until after all such employees are deposed or, in the alternative, to deny Hasbro's injunction motion *sua sponte* as a sanction for failing to provide the requested deponents. We have repeatedly tried to work this out with you, but you have refused to fully cooperate.

## A. MGA CAN CALL HASBRO EMPLOYEES AS ADVERSE WITNESSES.

For some reason, you continue to assert that MGA must limit itself in the expedited discovery being conducted by the parties before the evidentiary hearing on Hasbro's motion to only those witnesses that Hasbro might elect to bring to the hearing.

It is not Hasbro's position to decide for MGA how MGA should defend itself against Hasbro's motion. MGA has a due process right to gather the evidence that *MGA*—not Hasbro—decides it needs in order to defeat Hasbro's injunction request. The liberal discovery rules set forth in the Federal Rules of Civil Procedure provide a mechanism to exercise that right. Contrary to your repeated assertions, most recently misrepresented to Judge Smith in our August 11, 2006 telephone conference with him, you and I *never* agreed that MGA could only depose the witnesses that Hasbro might decide to bring to the hearing. You know that that assertion is false, particularly since you have stated, *in writing*, your understanding that other persons with pertinent knowledge can be deposed.

On July 11, 2006, you wrote to me to confirm a discussion you and I had about depositions. You stated:

> "As discussed last week, the parties will take the depositions of the witnesses that the adverse party intends to bring to the hearing, *with the possibility of a deposition [*sic*] one or more additional witnesses if the opposing party thinks it necessary to depose someone else with pertinent knowledge*."

(Emphasis added.) The italicized text shows that you acknowledged that the parties may depose, not just those persons who might be declarants or witnesses at the evidentiary hearing, but also others who might have pertinent knowledge of the matters that will be the subject of that hearing.

I again wrote to you on July 21 about depositions. You responded in a July 24 letter, in which you *again* confirmed that persons other than declarants may be deposed. In fact, you asked me to let you know "if there is a declarant you do not want to depose *and if there is anyone else you do*." (Emphasis added.)

Despite those two letters from you, and my August 3 letter to you that reminded you of those statements, which even quoted your statements back to you, on August 11 you once again stated that you and I had allegedly agreed that MGA could only depose the witnesses Hasbro decided to bring to the hearing. You even repeated that false statement to Judge Smith during our 2:30 p.m. (Eastern time), August 11 hearing with him.

MGA has the right to call Hasbro as an adverse party at the evidentiary hearing. MGA can call also any employee of Hasbro as a "witness identified with an adverse party", whether or not Hasbro wants (or plans to have) that person at the hearing. *See* FED. R. EVID. 611(c); *Rodriguez v. Banco Central Corporation*, 990 F.2d 7, 13 (1st Cir. 1993); *Elgabri v. Lekas*, 964 F.2d 1255, 1260 (1st Cir. 1992); *Elgabri v. Lekas*, 964 F.2d 1255, 1260 (1st Cir. 1992); *Haney v. Mizell Memorial Hospital*, 744 F.2d 1467, 1478 (11th Cir. 1985); *Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681, 682 (5th Cir. 1979). Pursuant to our agreement and the law, Hasbro must provide all of the employees we have requested for deposition in advance of the hearing.

## B. MGA HAS COOPERATED WITH HASBRO IN HASBRO'S DEPOSITIONS OF MGA EMPLOYEES.

We have made many accommodations to you to allow Hasbro to depose all of the MGA employees that Hasbro indicated that it wanted:

1. You asked me to let you depose MGA's employees before MGA would depose Hasbro's employees. I granted your request.

2. You asked to depose nine (9) MGA employees (**Yuval Caspi, Courtney Werner, Alex Keossian, Kristen Zimmer, Jeremy Anderson, Sam Khare, Richard Daniels, Bo Lumabao,** and **Nick Contreras**) during the week of August 7 on a single trip by you to Los Angeles. I granted your request. You then deposed all nine (9) of them in four (4) consecutive days (August 8-11). (You elected not to depose 2 others, whom MGA had on standby for deposition until you advised us of your intent not to depose them.)

3. I could not defend all of the MGA deponents. Fortunately, however, I have associates working with me on the case. One of them, Janene Bassett, defended some of the depositions, so you would not be hampered by my availability.

4. You came to Los Angeles without having issued any notices of deposition. As a result, you did not have the right under FED. R. CIV. P. 30(b)(2) to videotape the depositions. You arrived in my offices with a videographer. I pointed out that you had never provided any notice of videography, and that MGA's employees had not been prepared or dressed to appear on tape. You apologized to me for not having given me proper notice, and asked me to allow you to videotape the depositions anyway. I granted your request, and you were able to record all of them on videotape.

5. In your August 2, 2006 letter to me, you stated that you did not expect any deposition to last more than about three hours. You were unable to complete several of them in three hours, and I nevertheless let you finish all of them.

6. You failed to ask for certain documents in your document requests that during the depositions you realized you wanted. You asked me to produce the Marvel *Style Guide*, even though none of your document requests had asked for it. I granted your request. You asked me to produce Marvel approval forms, even though none of your document requests had asked for them. I granted your request. You asked me to produce another sample of MGA's memory game, even though we had already given you one and you had another on your own. I granted your request.

7. You asked me to provide you with office space, a printer, and high-speed Internet access while you were in my offices. I granted your request.

8. You accused me of not providing certain documents to you about MGA employee Bo Lumabao's creation of the phrase "classic memory matching

game". I told you I had. You demanded that I tell you the production numbers. Although you clearly had not read what we had produced, I granted your request and took the time to find them for you and gave you the MGA production numbers so you could proceed with your deposition.

9. You asked me to give you color copies of documents that we had produced to you on July 28 in black-and-white so you could use them for the depositions. I granted your request. I have asked you to reciprocate and provide me with color copies of the black-and-white documents you have produced. You have not even bothered to respond.

10. While you were in my offices in Los Angeles, I provided you with access to all of the third-party memory games and books concerning the history of non-Hasbro memory games that we have collected, as well as receipts for our purchase of those items, so you could see for yourself that the materials we submitted to the Court in opposition to Hasbro's motion were authentic, genuine, properly represented, and publicly available. I left all of those materials available for your review at any time for all of the four days you were in our offices.

Despite all of this effort on MGA's part to accommodate you, you have refused to provide MGA the most basic of due process, namely provide the deponents MGA needs to defend itself against Hasbro's injunction motion in an efficient, orderly fashion.

## C. <u>MGA'S ATTEMPTS TO SECURE HASBRO'S COOPERATION IN SCHEDULING MGA'S DEPOSITIONS OF HASBRO EMPLOYEES</u>.

You have repeatedly denied MGA the opportunity to depose all of Hasbro's employees in Providence in the week following the week in which you deposed all of MGA's employees. Instead, you have repeatedly told me that MGA can only depose two Hasbro employees who had submitted declarations—Paul Vanasse and Mark Stark—and that MGA could only do depositions on two days—August 17-18. (On August 3, Hasbro filed reply papers, in which it added a third declarant, Millens Taft, and you subsequently added him as a possible third deponent.) As you know, since the outset, I have advised you that MGA believed that it needs to also depose Mr. Barry Nagler, who had executed a declaration in connection with an application to register one of the trademarks on which Hasbro's case is premised and which trademark registration MGA is challenging and seeking to have cancelled as part of its defense of Hasbro's claims. In response to your refusal to allow MGA to depose whom it decided it needed to depose in order to defend against the injunction, I wrote to you *on August 1* and stated:

"1. **DEPOSITION SCHEDULING**. . . .

We are not presently in a position to commit to deposing all of the necessary Hasbro employees and/or witnesses on just August 17 and 18 as proposed by you. We presently expect to depose **Paul Vanasse**, **Mark Stark**, and **Barry Nagler**. You have stated that Hasbro's documents will likely dissuade MGA from deposing Mr. Nagler. I have reviewed them. They do not. We also intend to serve a Rule 30(b)(6) notice concerning some of the matters mentioned in Hasbro's motion and discovery responses, and in particular Hasbro's communications with third parties, including Marvel, about this dispute and Hasbro's knowledge through Hasbro's Target and Wal-Mart category managers, or similar such employees, of MGA's game. We also will likely want to depose several witnesses mentioned in Hasbro's discovery responses served on July 28, including, but not limited to, **Jason Eastman**, **Darrell Merino**, **Robert Ellis**, **Cathy Meredith**, **Eric Nyman**, and **Jill Hambley**. Once we see Hasbro's reply papers, we will be in a position to let you know exactly who we will depose. Hasbro and its counsel should make plans to be available for depositions during the week of August 14-18, or during the week of August 7-11 for deposition at the same time that Hasbro is deposing MGA's witnesses, or both."

You responded on August 2, and again only allowed MGA two days for the depositions of just two employees, denying that MGA had any need to depose anyone else and denying that MGA had the right to depose anyone else. I responded to you on August 3:

"1. **DEPONENTS**.

Contrary to your letter, we have *not* '[f]rom the beginning [] agreed to depose the witnesses who submitted declarations and would therefore be part of the hearing'. Even if that was our agreement (which it was not), I note that you do not state that we agreed that *only* such persons would be deposed. You and I have always contemplated deposing persons who might not be used as declarants or affiants in the parties' written submissions to the Court. You and I also have discussed our mutual intention to leave open the possibility of deposing such other persons. You and I on several occasions have spoken about MGA's intention to depose Barry Nagler, and you have never maintained that his deposition is not *permitted*. You have only stated that, once I saw Hasbro's documents, I would not *want* to depose him. As you know, I still want to depose him, including about the affidavit he signed in support of the 200[4] registration that MGA contends is invalid and that MGA has asserted is being improperly relied upon by Hasbro as 'proof' of its alleged exclusive rights. Hasbro is relying upon the 200[4] registration in its preliminary injunction motion and MGA is entitled to depose Mr. Nagler about the papers he filed in support of the application.

During our July 6 discussion, you and I addressed deposing each other's witnesses, *as well as other persons that the parties believe might have pertinent information, even if not disclosed in declarations or affidavits*. You stated that after seeing our opposition papers, you might want to depose MGA's witnesses whom you believe had relevant knowledge and that MGA might not have disclosed. That led to an agreement that we would not take "apex" depositions of each other's senior executives who had no involvement with the trademarks or games at issue (we expressly discussed Isaac Larian of MGA and Al Verrechia of Hasbro as falling within that category). I confirmed this in my July 7 letter to you.

On July 11, you wrote to me. Your August 2 letter, however, now mischaracterizes what you wrote in your July 11 letter. Your July 11 letter stated:

> 'As discussed last week, the parties will take the depositions of the witnesses that the adverse party intends to bring to the hearing, *with the possibility of a deposition* [sic] *one or more additional witnesses if the opposing party thinks it necessary to depose someone else with pertinent knowledge*.'

(Emphasis added.) The italicized text shows that you acknowledged that the parties may depose persons who might not be declarants or witnesses at the evidentiary hearing, but who might have pertinent knowledge of the matters that will be the subject of that hearing.

I then wrote to you on July 21 about depositions, generally. You responded in a July 24 letter, in which you *again* confirmed that persons other than declarants may be deposed. In fact, you asked me to let you know 'if there is a declarant you do not want to depose *and if there is anyone else you do*.' (Emphasis added.)

Finally, it was always contemplated by both of us that we would be conducting mutual expedited discovery directed at matters raised by Hasbro's preliminary injunction motion and MGA's response thereto. On July 28, Hasbro responded to MGA's written discovery and identified additional people (**Jason Eastman**, **Darrell Merino**, **Robert Ellis**, **Cathy Meredith**, **Brian Goldner**, **Eric Nyman**, and **Jill Hambley**) who have pertinent knowledge of the matters at issue in the motion. Hasbro's documents disclose other potential witnesses. Even if Hasbro elected not to provide declarations from these Hasbro employees and has no present plans to have them testify at the hearing, MGA is entitled to present its defense to Hasbro's motion, MGA does not have to rely on just whom Hasbro elects to present, and MGA can present these and other employees of Hasbro as adverse witnesses at the hearing, if it chooses. In order to make that decision, MGA may need to depose them first to learn what the scope of their knowledge is. (Please note that in deference to his position, MGA did not suggest that it might wish to depose Mr. Goldner at this time.) . . . .

**3. <u>DEPOSITIONS OF HASBRO EMPLOYEES</u>.**

Once we analyze Hasbro's reply papers, that are being served and filed today, we will let you know whom we intend to depose. Yes, we will depose Messrs. Vanasse and Stark on August 17 and 18. We might be able to do others on those days, but will likely also need you to make August 14-16 available for other witnesses. While you have indicated that you are not available on those three days, one of your co-counsel—Messrs. Sant'Ambrogio, Avanzato or Techentin or Ms. Choi—could defend them.

With respect to your statement to me yesterday about Mr. Stark's absence during the week of September 11, unfortunately his declaration is the key declaration that Hasbro submits in support of its injunction motion so he is going to have to appear. We note that Hasbro's July 28 letter to Judge Smith, *in which Hasbro asked that the hearing take place during the week of September 11*, did not mention anything about Hasbro's key witness not being available that week. You are the one who requested the date—MGA should not be penalized by your chief witness being unavailable for cross-examination. Hopefully, we can get him off the stand on the first day, so he can go on his anniversary trip, but we will expect him to be there if the hearing indeed proceeds on September 11."

In light of the statements in this exchange of correspondence, you have no basis for any longer insisting that MGA can only depose the employees Hasbro intends to bring to the hearing, or just those who submitted declarations.

## D. MGA'S DEPOSITION NOTICE.

On Wednesday, August 9, 2006, I personally served a deposition notice on you for the following depositions to be taken by MGA (this chart appeared in MGA's notice):

| WITNESS | POSITION | DATE AND TIME |
|---|---|---|
| Millens W. Taft, Jr. | Former Milton Bradley employee; present Hasbro declarant | Tuesday, August 15, 2006, commencing at 9:00 a.m. (EDT) |
| Paul Vanasse | Hasbro employee; Hasbro declarant | Tuesday, August 15, 2006, commencing at the conclusion of the deposition of Mr. Taft |
| | | |
| Plaintiff Hasbro, Inc. | Pursuant to FED. R. CIV. P. 30(b)(6) [*see testimony categories below*] | Wednesday, August 16, 2006, commencing at 9:00 a.m. (EDT) |
| | | |
| Barry Nagler | Hasbro employee | Thursday, August 17, 2006, commencing at 9:00 a.m. (EDT) |
| Jill Hambley | Hasbro employee; identified as a witness by Hasbro | Thursday, August 17, 2006, commencing at the conclusion of the deposition of Mr. Nagler |
| | | |
| Mark Stark | Hasbro employee; Hasbro declarant | Friday, August 18, 2006, commencing at 9:00 a.m. (EDT) |

Despite this notice, Hasbro has only agreed to produce Hasbro declarants Taft, Vanasse, and Stark for deposition, and has refused to allow depositions on any days other than August 17-18 next week.

On August 3 you wrote to me and stated that Mr. Stark, whom you previously stated would be available for deposition on August 17-18, would now no longer be available then. Instead, you told me that he was no longer in charge of Hasbro's memory game product and that you would instead provide his successor:

> "We intend to substitute Jill Hambley, [Mark Stark's] successor on the product, and will make her available (in place of Mr. Stark) for the deposition [*sic*] August 18."

But now that the Court has agreed to start the hearing on September 8, Mr. Stark is again available, and on August 11 you told me and MGA's General Counsel that you now refuse to produce Ms. Hambley for deposition. That is unacceptable, particularly now that you have told us that she is the person *currently* in charge of Hasbro's memory game, and that Mr. Stark no longer is. We are entitled to both depositions—Mr. Stark's because he submitted the primary declaration upon which Hasbro is relying in this case, and Ms. Hambley's because she is the Hasbro employee who has the current knowledge about Hasbro's game.

With respect to Hasbro employee Barry Nagler, on August 11, you informed me and MGA's General Counsel that you refuse to produce him for deposition.

With respect to the six (6) testimony categories in MGA's Rule 30(b)(6) notice, on August 10 you informed me and MGA's General Counsel that you refuse to produce anyone in response to MGA's notice, and instead would only produce a Hasbro employee who works with Target, and then only if MGA withdrew its Rule 30(b)(6) notice.

On August 11, you informed me and MGA's General Counsel that you "might" agree to produce Hasbro employee Walker Mitchell for deposition, but only by telephone for a short period of time.

So, to date, you have only agreed to produce three (3) employees for deposition by MGA: Messrs. Taft, Vanasse, and Stark, and then only on August 17 and 18. You have repeatedly refused our suggestion that one of the other counsel of record working on this case with you defend the depositions MGA needs to take when you are unavailable:

| | |
|---|---|
| Michael D. Sant'Ambrogio | PATTERSON BELKNAP WEBB & TYLER LLP |
| Irene Choi | PATTERSON BELKNAP WEBB & TYLER LLP |
| Joseph Avanzato | ADLER POLLOCK & SHEEHAN PC |
| Jeffrey K. Techentin | ADLER POLLOCK & SHEEHAN PC |

You apparently believe that none of your co-counsel should defend a deposition because on August 11 you informed me and MGA's General Counsel that you refused to have anyone other than you defend any of the other Hasbro employees MGA wished to depose, particularly Mr. Nagler, even if that meant that MGA had to make two trips to Rhode Island. (While you indicated that Mr. Sant'Ambrogio and yourself were both tied up at the start of this week and that Ms. Choi was relatively junior, you have never advised us that either Mr. Avanzato or Mr. Techentin are likewise unavailable this coming week *or* on any of the other days when you are unavailable.)

You are needlessly interfering with MGA's attempt to take depositions. You are needlessly making MGA's attempts at getting discovery unduly expensive. MGA should not have to make multiple trips to Rhode Island to depose just six (6) deponents for a motion *you* have brought and are making MGA defend. You only agreed to produce deponents on August 17 and 18 because you were not available on August 14-16. I then asked for you to make yourself available on Monday and Tuesday of the following week (August 21-22), even though I would have to stay in Rhode Island over the weekend and change my vacation plans. Knowing that I had longstanding plans to be out of the country, you then refused me those dates and stated that you were only available on Thursday, August 24 and Friday, August 25. I again asked you to have one of your four other co-counsel defend the depositions, and you refused. You then said that "maybe" you could be available on Wednesday, August 23, again knowing that I would

be on vacation with my family. I even offered to have George Lieberman take depositions so I would not have to change my vacation plans and could meet your refusal to accommodate MGA, but the only dates you allowed (August 24-25) happen to be dates that Mr. Lieberman and his co-counsel, Mr. Magratten, will be tied up on business matters away from Rhode Island. You have never offered any other days.

When you completed all of your depositions of MGA on Friday, August 11 in my offices, you then flat-out refused to produce Mr. Nagler, Ms. Hambley, or the Rule 30(b)(6) deponents noticed by MGA. We discussed why MGA needs these deponents. You maintained your refusal. These employees are necessary for MGA's defense to the requested injunction for at least the following reasons.

1. **Barry Nagler.**

Hasbro is suing MGA for infringement of two registered trademarks owned by Hasbro: (1) a 1967 registration for a unique stylized design mark—**memory**; and (2) a 2004 registration for the word mark MEMORY. Hasbro has admitted in discovery that it has not used the 1967 registration since at least 2000, so that registration is no longer an issue in this litigation. As a result, only its 2004 registration is at issue.

Mr. Nagler signed a declaration that Hasbro filed with the United States Patent & Trademark Office ("**USPTO**"). His declaration resulted in the issuance of the 2004 registration. In that declaration, Mr. Nagler failed to disclose that Hasbro is operating under a license from Ravensburger to use the alleged mark "Memory", failed to provide a specimen to the USPTO showing the part of Hasbro's packaging that disclosed that license, and stated, under oath, that "he believes [Hasbro] to be the owner of the trademark/service mark sought to be registered", and that "*to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce*". In light of the statements on Hasbro's packaging about the Ravensburger license *and* the overwhelming evidence of third-party use of "memory" with card-matching games, including uses that predate Hasbro's claimed first use, *both* statements appear to be false.

In addition, in response to MGA's Interrogatory No. 3, Hasbro states that Mr. Nagler has contacted MGA's licensor, Marvel, about this lawsuit and sent Marvel copies of the Hasbro's injunction papers. Hasbro knows that Marvel and MGA have a license relationship, and such conduct constitutes intentional interference with that contractual relationship. Mr. Nagler's conduct in seemingly interfering with MGA's license relationship with Marvel and Hasbro's on-going communications with Marvel, as set forth in Hasbro's interrogatory responses, support MGA's unclean hands defense to the issuance of an injunction in this matter. Marvel has been aware of MGA's position in response to Hasbro's claims, since the initial claim letter and was, in fact, openly copied on MGA's letter to Hasbro in response to such claim. On-going communications by Hasbro with Marvel and other third parties since the outset of this action are

inappropriate and MGA has the right to explore what was said by Hasbro's representatives to such third parties and to determine how such contacts and communications may have interfered with MGA's contractual and other relations with such parties.

2. **Jill Hambley.**

In response to MGA's Interrogatory No. 9, Hasbro states: "Hasbro identifies the following employees who have had principal managerial responsibility for the marketing of Hasbro's games using the Memory® mark: Mark Stark **and Jill Hambley**." In your August 3 letter to me (quoted above), you state that Ms. Hambley has succeeded Mr. Stark in responsibility at Hasbro for Hasbro's game. Obviously, Ms. Hambley's knowledge of Hasbro's Memory game is essential, as her knowledge is the most current. The fact that you were willing to substitute her testimony entirely for that of Mr. Stark's is further evidence that her testimony is essential.

3. **Plaintiff Hasbro, Inc.—By Rule 30(b)(6).**

MGA's Rule 30(b)(6) notice requires Hasbro to provide witnesses on the following six categories. The relevance of each category is described after each quoted category.

"TESTIMONY CATEGORY NO. 1:
With respect to the statement that '*[o]ver the past three and a half decades, sales of MEMORY® games have exceeded $130 million*' in paragraph 10 of the DECLARATION OF MARK STARK submitted by Hasbro in support of its MOTION FOR A PRELIMINARY INJUNCTION, RECALL, AND EXPEDITED DISCOVERY, information concerning the sales described in that statement, including, but not limited to, (a) the geographic distribution of those sales, (b) the titles of the various games that make up those sales, (c) the number of units sold under each such title, (d) when the sales under each such title were made, and (e) where records supporting the statement can be found."

> Relevance: Hasbro submitted this statement in its moving papers in support of its injunction motion in an effort to show the alleged strength of Hasbro's alleged mark and its alleged secondary meaning. MGA is entitled to test the statement's foundation in defending against Hasbro's request for an injunction.

"TESTIMONY CATEGORY NO. 2:
With respect to the statement that '*[i]n the past eight years, Hasbro has spent over $20 million advertising and promoting the line of MEMORY® card matching games, both separately and with a group of other Hasbro games collectively called "My First Games®" and as part of the "Games Make Great Gifts" campaign*' in paragraph 10 of the DECLARATION OF MARK STARK submitted by Hasbro in support of its MOTION FOR A PRELIMINARY INJUNCTION, RECALL, AND EXPEDITED DISCOVERY, information concerning the advertising and promotion described in that

statement, including, but not limited to, (a) the geographic distribution of that advertising and promotion, (b) the type of advertising and promotion that was done, (c) where such advertising and promotion was published and conducted, (d) the length of time such advertising and promotion was published and conducted, (e) how much of the cost for such advertising and promotion that was done for 'My First Games®' and for the 'Games Make Great Gifts' campaign can be allocated just to the MEMORY® game that was part of that advertising and promotion, if more than just that game was the subject of that advertising and promotion, and (f) where records supporting the statement can be found."

> Relevance: Hasbro submitted this statement in its moving papers in support of its injunction motion in an effort to show the alleged strength of Hasbro's alleged mark and its alleged secondary meaning. MGA is entitled to test the statement's foundation in defending against Hasbro's request for an injunction. MGA believes that the statement is misleading in that the alleged sum spent on advertising was *not* spent just on advertising Hasbro's Memory-named game.

"TESTIMONY CATEGORY NO. 3:
Hasbro's interaction with the game buyer (or buyers) for Wal-Mart during the period from June 1, 2005 to July 31, 2006, including, but not limited to, the development of planograms, modules, visual depictions, or other displays for games that Wal-Mart is considering purchasing as they might appear on a Wal-Mart retail shelf if the games are purchased. (*MGA is informed that the Hasbro employee most knowledgeable about this is Walker Mitchell.*)"

> Relevance: As stated in MGA's opposition to Hasbro's injunction motion, MGA believes that Hasbro has unreasonably delayed taking action against MGA (laches), and such delay should deny Hasbro the provisional equitable relief it is seeking. MGA believes that Hasbro employees in charge of its relationship with Wal-Mart knew about MGA's game as long as a year ago. (Additionally, MGA believes that such employees would likely also be aware of third party memory-named games sold at Wal-Mart during the same period of time against which Hasbro has taken no action.) If Hasbro refuses to produce Mr. Mitchell for deposition in Providence, Rhode Island, but is willing to allow him to be deposed where he lives, MGA will depose him in Arkansas where it understands he resides.

"TESTIMONY CATEGORY NO. 4:
Hasbro's interaction with the game buyer (or buyers) for Target during the period from June 1, 2005 to July 31, 2006, including, but not limited to, the development of planograms, modules, visual depictions, or other displays for games that Target is considering purchasing as they might appear on a Target retail shelf if the games are purchased."

> Relevance: As stated in MGA's opposition to Hasbro's injunction motion, MGA believes that Hasbro has unreasonably delayed taking action against MGA, and that delay should

deny Hasbro the provisional equitable relief it is seeking. MGA believes that Hasbro employees in charge of its relationship with Target knew about MGA's game as long as a year ago. (Additionally, as with the prior category, MGA believes that such employees would likely also be aware of third party memory-named games sold at Target during the same period of time against which Hasbro has taken no action.)

"<u>TESTIMONY CATEGORY NO. 5</u>:
How Hasbro became aware of MGA's Spider-Man & Friends-themed Memory Match-Up product, and what Hasbro then did with that information. *(MGA is informed by Hasbro's interrogatory responses that Hasbro employees Jason Eastman, Darrell Merino, Robert Ellis, Cathy Meredith, Brian Goldner, Eric Nyman, Al Verrecchia, and Barry Nagler were involved in learning of and then passing on that information.)*"

<u>Relevance</u>: As stated in MGA's opposition to Hasbro's injunction motion, MGA believes that Hasbro has unreasonably delayed taking action against MGA (laches), and such delay should deny Hasbro the provisional equitable relief it is seeking. As further stated in MGA's opposition papers, MGA believes that Hasbro is asserting this claim against MGA for anticompetitive purposes. Hasbro has admitted that it has informed Marvel on numerous occasions about Hasbro's suit against MGA and had several discussions with Marvel about that suit. Marvel and MGA have a contractual relationship. Hasbro knows that. If Hasbro unreasonably delayed its action against MGA and then has been engaging in intentional interference with MGA's contractual relationship with Marvel, or with MGA's retail customers (*e.g.*, Target and Wal-Mart), then such conduct would be grounds for denying Hasbro the provisional equitable relief it is seeking.

"<u>TESTIMONY CATEGORY NO. 6</u>:
The 2001 GAME AWARENESS & PENETRATION STUDY and the 2004 GAME AWARENESS & PENETRATION STUDY, redacted copies of which were produced by Hasbro to MGA bearing document production numbers H1-26 and H27-151, respectively, including, but not limited to, (a) the design of the studies, (b) any testing or pre-testing of the studies, (c) who the targeted respondents were, (d) who the respondents were, (e) what was studied, (f) the purpose of the studies, and (g) the results and conclusions drawn from the study."

<u>Relevance</u>: Hasbro relies in its injunction papers on alleged surveys concerning its Memory-named game. Hasbro argues that those alleged surveys show a certain level of recognition of the game on the consuming public's part. MGA asked for the production of these alleged "surveys" in the expedited discovery agreed upon by the parties. Hasbro then produced these two "studies", but heavily redacted them to such an extent that it is virtually impossible to determine what was studied and how. MGA is entitled to test the foundation for these studies (and to establish whether these studies, as claimed by Hasbro, actually demonstrate any public recognition of Hasbro's Memory-named game as opposed to third party games) in defending against Hasbro's request for an injunction.

* * * * *

We urge you to reconsider your refusals to provide MGA the discovery it has requested. Please confirm by **5:00 p.m., Wednesday, August 16** whether Hasbro will provide *all* of the witnesses identified above for deposition by MGA and, if it will, the dates on which they can be made available. If we do not get that confirmation by then, we will promptly file a motion to compel. Please communicate with George Lieberman *and* me when you send your response.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400057003.1

| | | |
|---|---|---|
| cc: | Jeffrey K. Techentin, Esq. | (counsel of record for Hasbro) |
| | Joseph Avanzato, Esq. | (counsel of record for Hasbro) |
| | Michael D. Sant'Ambrogio, Esq. | (counsel of record for Hasbro) |
| | Irene Choi, Esq. | (counsel of record for Hasbro) |
| | George E. Lieberman, Esq. | (counsel of record for MGA) |
| | Brooks Magratten, Esq. | (counsel of record for MGA) |
| | Janene P. Bassett, Esq. | (counsel of record for MGA) |

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Suite 1600 | 1901 Avenue of the Stars | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 16, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
Michael Sant'Ambrogio, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Jeffrey K. Techentin, Esq.
ADLER POLLOCK & SHEEHAN PC
2300 Financial Plaza
Providence, Rhode Island 02903

Re: Hasbro v. MGA—Hasbro's Discovery Responses

Dear Counsel:

We have written four letters to you concerning Hasbro's responses to MGA's discovery requests, and the deficiencies we find in Hasbro's responses. You have not responded to our three letters directed at Hasbro's responses to MGA's Rule 33 interrogatories, Rule 34 document requests, or Rule 36 requests for admission. Today Mr. Landsman responded to our letter concerning Hasbro's refusal to provide the Rule 30 deponents MGA needs in order to adequately defend itself against Hasbro's injunction request.

In that letter, Mr. Landsman states that he will produce *some*, but not all, of the requested deponents. Hasbro, in its responses to date to MGA's discovery, has indicated that the following Hasbro employees (in the case of Mr. Taft, a former Hasbro employee) have pertinent information concerning Hasbro's motion:

1. **Hasbro, Inc.**
2. **Paul Vanasse** (who submitted a declaration to the Court)
3. **Mark Stark** (who submitted a declaration to the Court)
4. **Millens Taft** (who submitted a declaration to the Court)
5. **Jill Hambley** (who succeeded Mark Stark as the manager of the Hasbro game at issue in Hasbro's motion)
6. **Barry Nagler** (who signed the declaration given to the USPTO that resulted in issuance of the trademark registration on which Hasbro is suing MGA, and who has been communicating with MGA's licensor, Marvel, about this suit)
7. Sean Wiggins (who submitted a declaration to the Court)
8. Jason Eastman
9. Darrell Merino

10. Robert Ellis
11. Cathy Meredith
12. Brian Goldner
13. Eric Nyman

Of those 13 potential witnesses, we only asked to depose Nos. 1-6. For Witness No. 1 (Hasbro, Inc.), we sent a Rule 30(b)(6) deposition notice containing 6 categories of testimony for which Hasbro is required to designate a witness, limited to issues raised by Hasbro's injunction papers and injunction-related discovery responses.

In Mr. Landsman's August 16 letter to me, however, he states that Hasbro will not comply with MGA's deposition notice. Of the 5 individual witnesses noticed for deposition, he states that Hasbro will only produce **Messrs. Vanasse**, **Stark**, and **Taft**, and will *not* produce **Ms. Hambley** or **Mr. Nagler**. As to MGA's Rule 30(b)(6) testimony categories, Mr. Landsman states:

> Category No. 1, 2, and 6: Individually noticed Mr. Stark "is knowledgeable" about these three categories. Mr. Landsman fails, however, to indicate that Hasbro will designate him as a Rule 30(b)(6) witness on those categories, and bear the responsibility that Rule 30(b)(6) imposes to make sure he is fully capable of acting as such a witness on each of those categories.
>
> Category No. 3: Mr. Landsman only offers to make a witness available for a telephonic deposition, but again does not state that Hasbro will designate that person as a Rule 30(b)(6) witness. If Hasbro wants to attend by telephone, it can. MGA will travel to Arkansas for the deposition. Please provide the name of the witness and where he or she resides so we can make arrangements.
>
> Category No. 4: Mr. Landsman offers to make a witness available for a telephonic deposition on this topic, but again does not state that Hasbro will designate that person as a Rule 30(b)(6) witness.
>
> Category No. 5: Mr. Landsman denies us a witness, and instead states that we should rely just on Hasbro's limited interrogatory responses.

With respect to Category Nos. 1,2, and 6, please confirm that Mr. Stark will be designated as a Rule 30(b)(6) witness to speak on behalf of Hasbro, Inc. on each of those categories. We expect Hasbro to ensure that he is fully knowledgeable about those three categories as a Rule 30(b)(6) witness.

With respect to Category No. 3, please confirm that that witness will likewise be designated as a Rule 30(b)(6) witness to speak on behalf of Hasbro, Inc. and that Hasbro will ensure that he or she is fully knowledgeable about that category as a Rule 30(b)(6) witness.

Because Hasbro has failed to provide MGA with the discovery it needs in order to adequately defend itself at the evidentiary hearing, MGA is filing a motion to compel full compliance with MGA's interrogatories, document requests, requests for admission, and deposition notice, and is filing a second motion asking the Court to deny Hasbro's motion *sua sponte* for failure to provide MGA with the discovery it needs, or, in the alternative, to continue the date for the hearing on Hasbro's motion until after Hasbro has fully complied with its discovery obligations.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400058690.1

| | | |
|---|---|---|
| cc: | Joseph Avanzato, Esq. | (counsel of record for Hasbro) |
| | Irene Choi, Esq. | (counsel of record for Hasbro) |
| | George E. Lieberman, Esq. | (counsel of record for MGA) |
| | Brooks Magratten, Esq. | (counsel of record for MGA) |
| | Janene P. Bassett, Esq. | (counsel of record for MGA) |

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

1901 Avenue of the Stars | Suite 1600 | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 22, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA

Dear Mr. Landsman:

We are increasingly concerned about your behavior in this case, all of which seems aimed at denying MGA a fair opportunity to defend itself against Hasbro's motion for a preliminary injunction and recall order.

You knew that I had long-standing vacation plans with my family. You requested, I arranged, and you took nine (9) MGA depositions during the week of August 8-11. After having previously notified you of its intentions with regard to the need to take depositions of percipient witnesses relative to MGA's presentation of its case, MGA noticed 6 Hasbro depositions for the following week, August 15-18 in Rhode Island. But you refused to provide three of them and only agreed to make yourself available for the other three on August 17-18. You refused to allow any of the other four attorneys of record representing Hasbro to defend any of the depositions we noticed, thereby limiting us to just the two days ***you*** were available. Faced with your refusal to allow MGA to take the depositions it needs to defend itself against Hasbro's motion, I had to cancel my family's vacation. I asked you to make the other three Hasbro deponents available for deposition on August 21-22. You refused, and stated you were not available then either, and that you would permit no one other than you to defend depositions. Forget about my family's vacation. You were simply trying your best to interfere with MGA's defense.

Today, we had a discussion with Magistrate Judge Martin about the motions to compel that have been filed by MGA:

1. A motion to compel Hasbro to provide all of the interrogatory and request for admission responses requested by MGA, and to produce all of the documents requested by MGA; and

2. A motion to compel Hasbro to provide all of the other deponents noticed by MGA, and to put Hasbro witnesses Paul Vanasse and Mark Stark back

up for deposition in light of the three hundred or so instructions not to answer that you made on the record at their depositions.

During the hearing, instead of saying something like, "Your Honor, we have seen what MGA is complaining about and, in light of the fact that Hasbro is seeking extraordinary relief here, we will immediately give them what they ask for so we can proceed with a hearing on Hasbro's motion," you instead stated that you intend to oppose MGA's motions, thereby forcing the Court to hold a hearing. This, too, is an unreasonable interference with MGA's attempts to defend itself against Hasbro's motion.

The discovery hearings are now set for Tuesday, August 29. If Judge Martin finds that MGA's motions should be granted, I suspect that the earliest he will mandate that Hasbro provide all of the requested responses and documents will be by Friday, September 1. I then would have Saturday and Sunday to review those materials. The earliest that Judge Martin then is likely to order depositions to commence would be Tuesday, September 5 (following Labor Day) and Wednesday, September 6. So, while MGA gave you an entire week, well in advance of the Friday, September 8 evidentiary hearing, to prepare for and take MGA's depositions, thereby giving you the next almost four (4) weeks (from August 12 to September 8) in which to get ready for the hearing, by refusing to give MGA the discovery that it seeks, and instead forcing MGA to have to bring motions to compel, you are forcing MGA to potentially take Court-ordered depositions in the few days immediately before the commencement of the Friday, September 8 hearing, thereby forcing MGA to still be doing discovery instead of preparing its evidence, witnesses, and argument for the hearing. In fact, it is likely that the transcripts will not even be completed by the time Judge Smith's evidentiary hearing commences, further unfairly prejudicing MGA.

This is not only unfair, it is a denial of MGA's fundamental due process rights.

On top of this, I was shocked to hear you tell Judge Martin in today's conference that you think you can justify the 300 or so instructions not to answer that you made to Hasbro witnesses Paul Vanasse and Mark Stark on the ground that MGA had instructed its in-house counsel, Sam Khare, who you deposed on August 9, not to answer questions that would have invaded the attorney-client privilege. The two situations have nothing to do with each other.

*First*, Mr. Vanasse is a *paralegal* at Hasbro, not a lawyer. Mr. Khare is one of MGA's in-house *attorneys*.

*Second*, Hasbro filed a declaration from Mr. Vanasse in support of its motion. In ¶ 2, Mr. Vanasse testifies that he is responsible for enforcing the alleged MEMORY trademark rights on which Hasbro is suing MGA in this action. In ¶¶ 6-7, Mr. Vanasse testifies that Hasbro expends considerable resources protecting its mark from infringement, polices infringers that enter the market, monitors trademark applications, and files enforcement actions concerning that mark. In response to those assertions, I then showed Mr. Vanasse many, many memory games

that are available on the open market today, all of which state "Memory" in one form or another on them, and that show that neither Hasbro nor Mr. Vanasse is enforcing or policing Hasbro's trademark rights. I asked Mr. Vanasse if he had seen any of those games or if he knew of anyone at Hasbro who had seen them. You instructed him not to answer either question for any of the almost 100 games I showed him, asserting that the answer was subject to the attorney-client privilege. Asking Mr. Vanasse—a *paralegal* for Hasbro who is in charge of allegedly enforcing Hasbro's so-called MEMORY mark (in which Hasbro claims exclusive rights in the area of card games)—if he had simply seen these publicly available games, or if he knew if anyone at Hasbro had, comes nowhere near the attorney-client privilege.

You also instructed Mr. Vanasse not to answer questions about actual confusion evidence. One of the key factors in any likelihood of confusion analysis—the linchpin for every trademark infringement case—is whether there has been any evidence of *actual* confusion. MGA, in its Interrogatory No. 4, asked Hasbro to identify any instances of actual confusion. Mr. Vanasse verified the answer, "None". But when I asked him about that answer and about any evidence of actual confusion, you instructed him not to answer on the ground of attorney-client privilege. You are not permitted to launder percipient facts by having them seen by or presented to a paralegal. You certainly cannot rely on those facts in support of your request for extraordinary relief from the Court and then deny MGA the ability to conduct discovery concerning them.

Your instructions to Messrs. Vanasse and Stark not to answer 300 or so questions have nothing in common with Mr. Khare's deposition that you took. MGA submitted a declaration from Mr. Khare concerning information he had seen as a percipient witness. He did not describe any legal work he might have done for MGA in connection with that information, or any conclusions he might have drawn therefrom. I allowed him to answer all questions directed at those factual statements. However, when you departed from what Mr. Khare had stated in his declaration and instead asked him—an *attorney* for MGA—about his legal conclusions, the communication of such legal conclusions, and his legal advice, I had to instruct him not to answer.[1]

---

[1] As you know, we filed the declaration on a conditional basis and allowed you to notice Mr. Khare's deposition in the hope that we would be able to reach agreement and enter into a stipulation that would have allowed Mr. Khare to disclose certain information and evidence without being deemed to have waived the attorney-client privilege for everything he has done up through working on the defense of this lawsuit. As we have gathered from prior discussions and correspondence, it now seems clear that you had no intention of negotiating the scope of a stipulated waiver in good faith once you believed that any information disclosed thereby might potentially be helpful to MGA. Instead, you made us waste time on fruitless discussions and preparing and making our witness available for deposition. For you to then misstate the facts in your comments to the Magistrate Judge, in an effort to insulate yourself from charges of inappropriate instructions when *you* would not permit examination of your witnesses on subject matter that is in no way privileged, is highly questionable. This is not the first time that you misstate the facts to the Court. In fact, we first noted it in Hasbro's COMPLAINT, and then again at the July 13 conference in

*Third*, we are withdrawing Mr. Khare's declaration from consideration by the Court. You have not withdrawn Mr. Vanasse's declaration.

You also have timed your production of documents in order to interfere with MGA's defense of Hasbro's motion. You forced me to take depositions in Rhode Island only on August 17 and 18. At 6:25 p.m. and 8:02 p.m. on August 16, the night before I was to depose Hasbro witnesses Paul Vanasse and Millens Taft, you produced documents to me by e-mail. You then e-mailed more documents to me at 4:26 p.m. on August 17, just as I was finishing Mr. Vanasse's deposition and had already finished Mr. Taft's, that I would have used if they had been timely provided. You then provided additional documents to me on August 22, *after* I had already come back from Rhode Island, that, if timely received, I would have used in examining Messrs. Vanasse and Stark the week before.

You also are using confidentiality designations to interfere with MGA's defense. Halfway through the Mark Stark deposition on August 18, you designated the *entire* deposition transcript CONFIDENTIAL – OUTSIDE COUNSEL ONLY, thereby preventing MGA's in-house counsel from seeing it. If you had limited your designation to Hasbro's future product plans, which were under discussion at the deposition when you made your designation, I would have had no problem with your designation, but you instead did a blanket designation of *everything* in the deposition, including such exceedingly confidential matter like the witness' name, what his job is, how long he has worked for Hasbro, and what Target stores he shops at. You even stated at the deposition, on the record, that you will have ten court days following your receipt of the transcript in which to reconsider your designations, knowing that that ten-day period will not expire until after the evidentiary hearing commences. You did this solely to prevent MGA's in-house counsel from assisting us in preparing MGA's defense to Hasbro's motion.

Paragraphs 1-2 of Judge Smith's July 31, 2006 PROTECTIVE ORDER state that you can make a CONFIDENTIAL – OUTSIDE COUNSEL ONLY designation *only* if you have a "good faith belief that the Discovery Material so designated contains or constitutes: trade secrets, confidential research, development, and /or confidential commercial information," *and* it "contain[s] or constitute[s] confidential information that is especially sensitive that, given its nature, if disclosed to inside counsel . . . could reasonably surrender a competitive advantage, disclose trade secrets, or foster a competitive disadvantage . . . ." Paragraph 3 of Judge Smith's PROTECTIVE ORDER expressly prohibits you from designating anything as CONFIDENTIAL – OUTSIDE COUNSEL ONLY if it is public, or acquired from someone else who is not under an obligation of confidentiality. Your blanket designation of each and every word in the deposition,

---

Judge Smith's chambers when you told the Judge that Hasbro's and MGA's games were identical, and again in the August 17 conference with Judge Smith when you stated that we had allegedly agreed that we would only depose those witnesses Hasbro elected to bring to the hearing. This conduct must cease immediately.

and in particular the material that you know to be publicly available and not in the least confidential, violates that ORDER.

I urge you once again to stop this interference and provide MGA with the fair opportunity to obtain the discovery it needs in order to defend itself against Hasbro's motion.

As for your proposed schedule, which provides for filings this week and next, it was received late in the afternoon on my last day in the office before my vacation *and* before MGA has received Hasbro's complete discovery *or* completed the depositions to which it is entitled. Because MGA has been forced to seek the Court's intervention in order to make Hasbro fulfill its discovery obligations prior to the hearing so MGA can properly present its opposition, your proposal is not acceptable to MGA. It is premature to expect us to agree to it because it provides no opportunity for MGA to complete discovery *before* the proposed pre-hearing filings must be made. Had you agreed to comply with your discovery obligations rather than oppose MGA's motions, there might be something to discuss. As I will be on vacation and am unavailable for the next week, as you were on Monday to Wednesday of last week and over the last two days—at least for the depositions requested by MGA—we will have to wait until after the Court has ruled on our motions to respond to your letter's proposed schedule.

Very truly yours,

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400063080.1

| | | |
|---|---|---|
| cc: | Michael Sant'Ambrogio, Esq. | (counsel of record for Hasbro) |
| | Joseph Avanzato, Esq. | (counsel of record for Hasbro) |
| | Jeffrey K. Techentin, Esq. | (counsel of record for Hasbro) |
| | Irene Choi, Esq. | (counsel of record for Hasbro) |
| | George E. Lieberman, Esq. | (counsel of record for MGA) |
| | Brooks Magratten, Esq. | (counsel of record for MGA) |
| | Janene P. Bassett, Esq. | (counsel of record for MGA) |

SHEPPARD MULLIN
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Suite 1600 | 1901 Avenue of the Stars | Los Angeles, CA 90067-6017
310-228-3700 *office* | 310-228-3701 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: (310) 228-3730
kraygor@sheppardmullin.com
File No.: 03FD-125329

August 23, 2006

***BY E-MAIL AND MAIL***

Kim J. Landsman, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710

Re: Hasbro v. MGA—Response To August 23 Letter

Dear Mr. Landsman:

This letter responds to Mr. Sant'Ambrogio's August 23 letter to me.

1. Please provide the supplemental information responding to MGA's Interrogatory No. 9 in the form of a verified supplemental response. You must also provide the addresses and telephone numbers for the additional persons you are now identifying in response to the interrogatory, as requested by the interrogatory. As we have previously stated, we will allow you to not include those individuals' addresses and telephone numbers in the response, but only if Hasbro informs us in writing that your firm is authorized to accept the service of subpoenas on behalf of all persons named in response to the interrogatory.

2. I will take all of the remaining depositions of Hasbro employees. I am available to take depositions from Saturday, September 2 through Wednesday, September 6. As previously stated to you, we will depose **Mr. Mitchell** in Arkansas, and Hasbro's counsel can attend by telephone if they wish. I will stop by Arkansas on the way to Providence for the remaining depositions and the evidentiary hearing. The other deponents, I presume, will be made available in Providence.

3. You have not responded to my requests in my August 16 letter to you. Will **Mr. Mitchell** be designated by Hasbro as a Rule 30(b)(6) witness for it on MGA's Testimony Category No. 3? Mr. Sant'Ambrogio's August 23 letter states that he will testify on that category, but does not state that he will be a Rule 30(b)(6) designee. We need that clarified. Likewise for **Mr. Sullivan**. Will he be a Rule 30(b)(6) designee for Hasbro on Testimony Category No. 4?

4. We still need Rule 30(b)(6) designees for **Testimony Category Nos. 1** (Hasbro's statement that "*[o]ver the past three and a half decades, sales of MEMORY® games have exceeded $130 million*"), **2** (Hasbro's statement that "*[i]n the past eight years, Hasbro has*

*spent over $20 million advertising and promoting the line of MEMORY® card matching games, both separately and with a group of other Hasbro games collectively called 'My First Games®' and as part of the 'Games Make Great Gifts' campaign*"), **5** (how Hasbro became aware of MGA's Spider-Man & Friends-themed Memory Match-Up product, and what Hasbro then did with that information), and **6** (Hasbro's 2001 and 2004 GAME AWARENESS & PENETRATION STUDIES). Neither Mr. Stark nor Mr. Vanasse were designated as Rule 30(b)(6) witnesses on any of these categories.

5. We also still need dates for the depositions of Hasbro employees **Jill Hambley** and **Barry Nagler**, whose depositions we have noticed.

6. With respect to the dates for these depositions, unfortunately the witnesses will need to be made available in the above-stated date range (Saturday, September 2 through Wednesday, September 6). If Hasbro had cooperated and produced them for deposition before, when requested, they would not now have to be made to appear on those dates. But you demanded that we work around your personal availability for the Vanasse, Stark, and Taft depositions, and then refused our requests to depose the other deponents, so you are now going to have to adjust your and the witnesses' schedules to my availability. The fault for any inconvenience they might suffer is yours.

7. As stated in my August 22 letter to you, your conduct is forcing MGA to take these depositions right up to the evidentiary hearing, thereby unreasonably interfering with MGA's ability to get its arguments, evidence, and witnesses ready for the September 8 evidentiary hearing. Therefore, even if you finally produce all of the noticed deponents for their depositions in the date range of September 2-6, MGA reserves the right to still press its motion before Judge Smith that Hasbro's injunction motion be denied or the evidentiary hearing be continued due to the unfair interference by Hasbro with MGA's ability to get properly prepared for the hearing, presently set to commence on September 8. Again, if you had simply cooperated in discovery and made the witnesses available when requested, none of this would have been necessary. Any consequences with respect to the denial of Hasbro's motion or a continuance of the hearing will lie with you.

Very truly yours,

/s/ *Kent R. Raygor*

Kent R. Raygor

for SHEPPARD MULLIN RICHTER & HAMPTON LLP

400063934.1

| | | |
|---|---|---|
| cc: | Michael Sant'Ambrogio, Esq. | (counsel of record for Hasbro) |
| | Joseph Avanzato, Esq. | (counsel of record for Hasbro) |
| | Jeffrey K. Techentin, Esq. | (counsel of record for Hasbro) |
| | Irene Choi, Esq. | (counsel of record for Hasbro) |
| | George E. Lieberman, Esq. | (counsel of record for MGA) |
| | Brooks Magratten, Esq. | (counsel of record for MGA) |
| | Janene P. Bassett, Esq. | (counsel of record for MGA) |