UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC.,<br><br>Plaintiff,<br><br>- against -<br><br>MGA ENTERTAINMENT, INC.,<br><br>Defendant. | C.A. No. 06-262S |

**DECLARATION OF BRUCE WHITEHILL**

I, Bruce Whitehill, declare and state as follows:

1. I submit this declaration disclosing my expert opinion on the MEMORY trademark. I understand that it will be used by plaintiff Hasbro, Inc. ("Hasbro") in support of its motion for a preliminary injunction and recall and that I may be called to testify at the preliminary injunction hearing and at trial.

2. Attached as Plaintiff's Exhibit 129 is my biography from the website I run called "TheBigGameHunter.com."[1] Attached as Plaintiff's Exhibit 130 is my resumé, which is reasonably up to date except for the fact that I no longer live in Rhode Island, but now reside instead in Hamburg, Germany. I have worked in the games industry since 1982 as an inventor and consultant. I am the author of a book entitled "Games: American Games and Their Makers," as well as "Americanopoly: A View of America Through its Games," as well as numerous articles about games, which are listed in Plaintiff's Exhibit 130.

---

1 For convenience of reference, counsel has asked me to use the exhibit numbers intended for the preliminary injunction hearing.

3. I am also an avid collector of games. In 1985, I founded the organization dedicated to that avocation, the American Game Collectors Association, which has grown into the world's foremost organization dedicated to the collection and preservation of games and puzzles; it is now known as the Association of Game & Puzzle Collectors (AGPC). As an international, nonprofit association, the AGPC is chartered to conduct research and explore the history of games and puzzles from ancient times up to the present, and to disseminate information about games and puzzles to the broadest audience possible, including the general public, the media, libraries, museums, scholars, and others. I was the president of the organization at its founding and for several years later.

4. I have been asked to provide my opinion as to whether "Memory" was the commonly known name of a card game at the time Milton Bradley introduced its game called "Memory" in 1966. In my opinion, it was not. I have also been asked to provide my opinion whether the word "memory" describes the game that Hasbro sells under that name. In my opinion, it does not.

5. As set forth below, I base that opinion on my own knowledge and recollection, the testimony of Mel Taft, a conversation with Phil Orbanes, a well-known game historian who worked for Parker Brothers, as well as a review of various books about card games, many of which have been submitted by the defendant MGA Entertainment, Inc. ("MGA"). I have also reviewed Exhibits A.1 - A.26 that, I am informed were attached to MGA Entertainment, Inc.'s Third Set of Requests for Admission to Plaintiff Hasbro, Inc.

**The MEMORY Trademark Was Not Generic When Milton Bradley Introduced Its Game in 1966.**

6. I am now 60 years old. I was 20 years old in 1966 and very interested in all forms of games at that time. I was not aware of any game called "Memory" in 1966, commercial or otherwise. I have asked Mr. Orbanes, who is 59, and he likewise was not aware of any such game.

7. Mel Taft, who was in charge of research and development at Milton Bradley in 1966, testified that at that time he was not aware of any game, whether sold commercially or played with a standard deck of cards, called "Memory."

8. MGA appears to be relying on some pre-1966 editions of a book about card games that uses the name Hoyle. Edmond Hoyle was an 18th Century English writer who codified the rules for the card game known as Whist. Attached hereto as Plaintiff's Exhibit 131 is a brief entry on him from the Encyclopedia of World Biography. Attached as Plaintiff's Exhibit 132 is the cover page through the Table of Contents for a book called The New Complete Hoyle published in 1964. It contains a section entitled "Who Is Hoyle." The real Mr. Hoyle died in the 18th Century. Various authors now use that name for books about card and other games, but those books were not written by him and have little relation to Hoyle himself.

9. The first reference in a Hoyle book to a game that has the basic game-play of the MEMORY game appears to be in a 1946 edition, which has an entry for a game called Concentration. I have an entry in my own database from the 1930s for such a game. It appears to have essentially the same game play as Milton Bradley's MEMORY game, but is played with a standard deck of cards.

10. "Concentration" appears as the principal name for the game. Under that name, in parentheses and smaller type, are the words "Memory, Pelmanism." To understand the

significance of this, and what it does and does not mean, requires some understanding of the role played by the Hoyle books.

11. The Hoyle books are generally compendiums that strive to be exhaustive. "Concentration" is one of hundreds of games with a principal entry in a Hoyle book. However, the fact that a game has a principal entry in the Hoyle book does not mean that the game was commonly known or played or that the name of the game was commonly known. Many of the entries in Hoyle are for games I have never heard of. For example, Plaintiff's Exhibit 132 references over 500 in its table of contents. There are 57 titles, listed below, with which I am completely unfamiliar.

Ambigu
Barbudi
Beast
L Belle Lucie
Bierspiel
Biritch
Blucher
Butcher Boy
Calabrasella; Callabra
Cayenne
Chouette
Conquian
Crag
Devil and the Tailors
Earl of Coventry
Enflé
The Farm
Farmer
Flip
Four Seasons
Freezeout
Gillet
Hoc
Jacquet
Kalaber; Kalabrias; Klaberjass
Klob
Lame Brains
Lanterloo
Lift Smoke

The Losing Game
Midnight Oil
La Nivernaise
Noddy
One Pile
Panguingue
Parliament
The Peasant's Revolt
Pedro
Plafond
Pochen
Polignac
Puff
Rans
Ranter Go Round
Revertier
Rickey de Laet
Romestecq
Schwellen
Slobberhannes
Snoozer
Stuss
Tapp
Tokkadille
Van John
Vive L'Amour
Thje Wild Widow
Zioncheck

12. I am not certain that I am familiar with many other games listed in the book's table of contents, and there are many others for which I am familiar with the names of the game but am not certain of how they are played.

13. Furthermore, several other books about games contain no reference to either Concentration or Memory. For example, Scarne on Cards published in 1973 and The Penguin Book of Card Games published in 1979 have no such entry. Attached hereto as Plaintiff's Exhibits 127A and 128A, respectively, are the cover pages and table of contents for those books.

14. "Memory" is one of two alternate names provided in the Hoyle book. The other is "Pelmanism." I had never heard that name before this litigation, but it appears to be a fairly obscure reference limited to use in England. That "Memory" appears alongside and in the same parenthetical and type size as "Pelmanism" indicates that it too could be an obscure regional variation, and that it would not necessarily be a name used in the United States.

15. In sum, the references from Hoyle books that MGA has submitted tell you nothing about whether there was a game commonly known by the name "Memory" in the United States at all, or, if used in the United States, whether such a name was used throughout the country or just in a specific region of it.

**The Word "Memory" Does Not Describe Hasbro's Game.**

16. I am informed that the courts have defined a descriptive trademark as one that "forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." The word "memory" does not do that in relation to Hasbro's game. You do, of course, use very short-term memory skills to play the game, but the use of memory skills does not differentiate Hasbro's game from numerous other games such that it would immediately convey the nature of the game. Indeed, many games employ memory to a much greater extent.

17. For example, one of my game books, called Games to Make and Play at Home by Joseph Leeming and published in 1943, refers to a game called "Kim's Game," which, it says, was also sometimes referred to as "Memory." See Plaintiff's Exhibit 133 hereto. The name and the nature of the game derive from the Rudyard Kipling novel Kim and the training he was given to serve in the British intelligence service. Numerous objects are put under a cloth and then briefly uncovered. The players must then write down as many of the objects as they can remember.

18. Hasbro's MEMORY game uses much simpler memory skills. It is essentially a matter of short-term visual recall. Other games, such as SIMON, also sold by Hasbro, employ short-term recall to play. In SIMON, each player watches a sequence of colored lights and then tries to repeat the sequence. Other popular games, like Trivial Pursuit, require much more sophisticated recollection of factual knowledge.

19. The word "memory" alone does not tell you what type of product is being referred to – i.e., that it is a game. If you knew that it referred to a game, the word "memory" also would not tell you anything about the type of game. The word does not, for example, communicate that it refers to a preschool game, a card game, or the matching of images. The most appropriate descriptive term for the game would be "matching," because you play it by matching pairs of identical images.

20. The word "memory" therefore is not descriptive when used in this context. It does not "forthwith convey an immediate idea of the ingredients, qualities or characteristics of the goods."

21. I have not previously testified as an expert by deposition or at trial in any case.

22. I expect to be compensated for providing my expert opinions at a rate of $50/hour and at a rate of $125/hour for time spent testifying.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2006, in Hamburg, Germany.

10/16/06

Bruce Whitehill