UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC., Plaintiff, - against - MGA ENTERTAINMENT, INC., Defendant. | C.A. No. 06-262S |

**DECLARATION AND PRELIMINARY EXPERT REPORT OF DAVID YERKES**

I, David Yerkes, D. Phil., declare and state as follows:

1. I submit this declaration disclosing my expert opinion on the MEMORY trademark. I understand that it will be used by plaintiff Hasbro, Inc. ("Hasbro") in support of its motion for a preliminary injunction and recall and that I may be called to testify at the preliminary injunction hearing and at trial.

**Expert Qualifications**

2. Attached as Plaintiff's Exhibit A is my curriculum vita.

3. I am a professor of English at Columbia University and am the author of three books and more than fifty articles, published in eight countries, contributing to the study of the English language. I received a B.A. from Yale University in 1971, a B.A. from Oxford University in 1973 (Special Course in English Language), and an M.A. and a D.Phil. from Oxford in 1976. I taught at Oxford from 1973 to 1976 and have taught at Columbia since 1977, receiving tenure in 1982 and becoming a full professor in 1984. I was Director of Composition at Columbia for five years and have served as a consultant on many dictionaries and grammars.

4. Many state and federal courts, and courts in other countries, have qualified me as an expert on the English language. These courts qualified me to give opinions about the form and meaning of words and phrases, and to give opinions about the use and value of dictionaries. The United States Court of Appeals quoted my expert report at length in *Mead Data Central, Inc. v. Toyota Sales U.S.A., Inc.*, and in *United States v. Sun-Diamond Growers of California* the Supreme Court adopted my linguistic analysis unanimously.

**Purpose of This Report**

5. I have been retained by counsel for Hasbro to evaluate the expert report of Sandra Ferrari Disner and to research, evaluate, and provide an opinion on what dictionaries may be able to tell us about whether the MEMORY trademark was generic for a card game in 1966 or is now.

**Materials Considered**

6. I have reviewed and considered the following materials in forming my opinion:

A. The Declaration and Amended Preliminary Expert Report of Sandra Ferrari Disner submitted by MGA, together with its exhibits

B. More than a hundred dictionaries published from the 1960s to the present

**Summary of Opinion**

7. Dictionaries show that MEMORY was not a commonly used term for a card game in 1966 and is not now.

**Basis for Opinion**

8. Of the many dictionaries published since the 1960s, only two have ever defined the word MEMORY as referring to a card game: *Webster's Third New International Dictionary*, first published in 1961, and the *Random House Dictionary*, first published in 1966.

These are the only two dictionaries that are given in Sandra Ferrari Disner's Declaration and Amended Preliminary Report; others listed there are just later printings or editions of these two dictionaries. After my own search through more than a hundred different dictionaries published from the 1960s to the present, I have come to the same conclusion that Ms. Disner did: *Webster's Third New International Dictionary* and the *Random House Dictionary* are the only two dictionaries that have the card game definition for MEMORY. This fact alone shows that MEMORY was not a commonly used term for a card game in 1966 and is not now. Only two dictionaries in a hundred have the card game definition.

9. Further, *Webster's Third New International Dictionary* and the *Random House Dictionary* are also the two largest dictionaries published in the United States since the 1960s; Ms. Disner says as much in ¶ 10 of her report, and I agree with her. This fact confirms that MEMORY was not a commonly used term for a card game in 1966 and is not now, because a word's least common meanings are the ones that appear only in the largest dictionaries. None of the smaller dictionaries—which have only the more common meanings, the meanings that people are likely to use—ever defines the word MEMORY as referring to a card game.

10. Even the largest abridged versions of *Webster's Third New International Dictionary* and the *Random House Dictionary*—namely, *Webster's Collegiate Dictionary* and the *Random House College Dictionary*—both drop the card game definition for MEMORY. Attached as Plaintiff's Exhibit B are photocopies from editions ranging from the 1960s to now of *Webster's Collegiate Dictionary* and the *Random House College Dictionary*. One edition says that it "is intended to meet the needs both of the college student and of the general reader" and that "[u]sefulness is the criterion" of selection (*Webster's Seventh New Collegiate Dictionary*, copyright 1967, page 4a); another edition says that it is the "most complete, most authoritative storehouse of information on the English language ever published as a one-volume desk

dictionary" (*Random House Dictionary, College Edition*, copyright 1968, dust jacket); another edition says that it has "[o]ver 207,000 clear definitions with full coverage of the words you need" (*Random House Webster's College Dictionary*, copyright 2001, dust jacket) or that it has "the words you need today—anytime, anywhere" (*Merriam-Webster's Collegiate Dictionary*, eleventh edition, copyright 2005, dust jacket). Yet none of these editions has the card game definition for MEMORY. This fact shows that MEMORY was not a commonly used term for a card game in 1966 and is not now.

11. Likewise the largest dictionary of all, the gigantic *Oxford English Dictionary*—which aims to give, not just all the current words and meanings, but all the words and meanings that have ever been in the language—does not define the word MEMORY as referring to a card game. Attached as Plaintiff's Exhibit C is the printout of the entire 28-page entry for MEMORY from the *Oxford English Dictionary*.

12. Further, in the only two dictionaries that do have the card game definition for MEMORY—*Webster's Third New International Dictionary* and the *Random House Dictionary*—the card game definition comes at or near the end of their entries for MEMORY. The *Random House Dictionary*'s entry for MEMORY has twelve definitions and the card game definition comes last, the twelfth of the twelve definitions. That the card game definition comes last indicates that MEMORY most certainly is not a commonly used term for a card game, for here is the opening of the *Random House Dictionary*'s statement about the sequence of definitions within entries:

> Definitions within an entry are individually numbered in a single sequence, regardless of any division according to part of speech. The most common part of speech is listed first, and the most frequently encountered meaning appears as the first definition for each part of speech. Specialized senses follow, and rare, archaic, and obsolete senses are usually listed at the end of their part of speech group. ("A Guide to the Dictionary", page xxix, underlining added; photocopies are attached as Plaintiff's Exhibit D)

According to the *Random House Dictionary*, as a term for a card game MEMORY is "rare, archaic, [or] obsolete".

13. Further, the card game definition for MEMORY in the *Random House Dictionary* consists solely of a cross-reference to another entry, CONCENTRATION (photocopies are in Exhibit D):

**12.** *Cards*. concentration (def[inition] 7).

14. That the card game definition for MEMORY is a cross-reference to the entry for CONCENTRATION, where a full definition is given, indicates that as a term for a card game MEMORY is less common than CONCENTRATION is. Then, in the *Random House Dictionary*'s entry for CONCENTRATION, the card game definition once again comes last—it is the seventh of seven definitions for CONCENTRATION (photocopies are in Exhibit D). Thus as a term for a card game CONCENTRATION is rare but MEMORY is even rarer.

15. Likewise in *Webster's Third New International Dictionary* the card game definition comes near the end of the entry for MEMORY (only technical definitions from electronics and materials science follow it); the card game definition consists solely of a cross-reference to another entry, CONCENTRATION; and then the card game definition comes at the end of the CONCENTRATION entry—it is the fifth of five definitions for CONCENTRATION (photocopies are attached as Plaintiff's Exhibit E). Thus once again, this time according to *Webster's Third New International Dictionary*, as a term for a card game MEMORY is less common than CONCENTRATION, and CONCENTRATION is rare. So once again, as a term for a card game MEMORY is rarer than the rare, less common than the uncommon.

**Prior Testimony**

16. Since 2002, I have been deposed or have testified at trial as an expert witness on the English language in these cases:

Smith & Nephew v. Applied Medical (deposed in New York City, February 2002)
Malaco Leaf v. Promotion in Motion (deposed in New York City, June 2002)
Health Net, Inc. v. Provider HealthNet Services (deposed in Los Angeles, June 2003)
Connex v. Connexus (deposed in New Haven, Conn., March 2004)
Verizon v. Nextel (deposed in New York City, August 2004)
Life Services v. Natural Organics (deposed in New York City, September 2004)
Sanofi v. Advancis (deposed in New York City, October 2004, and testified in Wilmington, Del., May 2005)
Powell & Powell Supply v. MDM Products (deposed in Stamford, Conn., July 2005)

**Compensation**

17. I expect to be compensated for providing my expert opinion at a rate of $400 an hour for testifying and $300 an hour for all other work.

I declare under penalty of perjury of the laws that the foregoing is true and correct.

Executed on November 6, 2006, in Saratoga Springs, New York

David Yerkes

David Yerkes, D. Phil.